No. 22-55063

# In the United States Court of Appeals
### FOR THE NINTH CIRCUIT

ISLAND INDUSTRIES, INC., Relator,

*Plaintiff - Appellee*,

and

UNITED STATES OF AMERICA *ex rel.* Island Industries, Inc.,

*Plaintiff*,

v.

SIGMA CORPORATION,

*Defendant - Appellant*,

and

VANDEWATER INTERNATIONAL, INC.; NEIL REUBENS;
ANVIL INTERNATIONAL, LLC; SMITH COOPER INTERNATIONAL;
ALLIED RUBBER AND GASKET COMPANY; JOHN DOES, 1-10,

*Defendants*.

On Appeal from the U.S. District Court for the Central District of California
No. 17-cv-4393 (Hon. R. Gary Klausner)

**BRIEF OF *AMICI CURIAE* NATIONAL ASSOCIATION OF
MANUFACTURERS AND CHAMBER OF COMMERCE OF THE
UNITED STATES OF AMERICA IN SUPPORT OF APPELLANT**

Tara S. Morrissey
Andrew R. Varcoe
U.S. CHAMBER LITIGATION CENTER
1615 H Street, NW
Washington, DC 20062
(202) 463-5337
*Counsel for the Chamber of Commerce
of the United States of America*

Erica Klenicki
NAM LEGAL CENTER
733 Tenth Street, N.W., Suite 700
Washington, DC 20001
(202) 637-3100
*Counsel for National Ass'n of Manufacturers*

Douglas W. Baruch
Jennifer M. Wollenberg
James D. Nelson
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
(202) 739-3000
douglas.baruch@morganlewis.com

*Counsel for Amici Curiae
National Ass'n of Manufacturers and
The Chamber of Commerce of the
United States of America*

# CORPORATE DISCLOSURE STATEMENT

In accordance with Rule 26.1 of the Federal Rules of Appellate Procedure, the undersigned states the following with respect to *amici curiae*:

1. National Association of Manufacturers states that it has no parent corporation and no publicly held corporation owns 10% or more of its stock; and

2. The Chamber of Commerce of the United States of America ("Chamber") states that it is a non-profit, tax-exempt organization incorporated in the District of Columbia. The Chamber has no parent corporation, and no publicly held company has 10% or greater ownership in the Chamber.

Dated: June 9, 2022
        *s/ Douglas W. Baruch*
        Douglas W. Baruch

        *Counsel for National Association of Manufacturers and the Chamber of Commerce of the United States of America*

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT.................................................i

STATEMENT OF INTEREST.........................................................1

INTRODUCTION .....................................................................4

ARGUMENT...........................................................................7

I.    Businesses that Act Consistent with an Objectively Reasonable Interpretation of an Ambiguous Regulation Lack the Requisite False Claims Act Scienter. .........................................................7

        A.    *Safeco*'s Objective Reasonableness Test Applies to the FCA.................................................................................8

        B.    FCA Scienter Is Absent Where a Company Acts in Accordance with an Objectively Reasonable Interpretation without Contrary Authoritative Guidance........11

        C.    Subjective Intent Is Irrelevant to Objective Reasonableness under *Safeco*............................................14

        D.    The Objective Reasonableness Test Serves FCA Purposes and Preserves Due Process Rights.........................16

II.    Given the Agency's Determination that Duties Are Not Owed on the Imports at Issue, the District Court Should Have Determined that There Was No Obligation—No "Established" Duty—to Pay for FCA Purposes. ..............................................19

        A.    The Lack of an Established Duty to Pay Precludes Reverse False Claims Liability. .........................................20

        B.    The Agency's Determination to Not Assess the Duty and to Refund Deposited Payments Is Further Proof that There Was No Established Duty to Pay..............................22

**TABLE OF CONTENTS**
(continued)

**Page**

III.  Where the Agency Has Made Clear No Payment Is Owed, Due
to Ambiguity or Otherwise, FCA Materiality Is Absent as Well. ......24

CONCLUSION ............................................................................................25

FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS ...........................27

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adomitis v. San Bernardino Mountains Cmty. Hosp. Dist.*,
  816 F. App'x 64 (9th Cir. 2020)..................................................................8

*United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC*,
  878 F.3d 1224 (10th Cir. 2017)................................................................21

*United States ex rel. Berg v. Honeywell Int'l, Inc.*,
  740 F. App'x 535 (9th Cir. 2018) .............................................................25

*United States ex rel. Campie v. Gilead Scis., Inc.*,
  862 F.3d 890 (9th Cir. 2017)....................................................................25

*United States ex rel. Donegan v. Anesthesia Assocs. of Kansas City*,
  833 F.3d 874 (8th Cir. 2016)................................................................ 9, 12

*FCC v. Fox Television Stations, Inc.*,
  567 U.S. 239 (2012) .................................................................................18

*Gates & Fox Co. v. OSHRC*,
  790 F.2d 154 (D.C. Cir. 1986)..................................................................17

*Halo Electronics, Inc. v. Pulse Electronics, Inc.*,
  579 U.S. 93 (2016). .................................................................................10

*United States ex rel. Kasowitz Benson Torres LLP v. BASF Corp.*,
  929 F.3d 721 (D.C. Cir. 2019)..................................................................22

*United States ex rel. Kelly v. Serco, Inc.*,
  846 F.3d 325 (9th Cir. 2017)....................................................................25

*United States ex rel. Kuriyan v. Health Care Servs. Corp.*,
  No. 16-1148, 2020 WL 8079811 (D.N.M. Sept. 9, 2020)...........................23

*United States ex rel. Landis v. Tailwind Sports Corp.*,
  51 F. Supp. 3d 9 (D.D.C. 2014).........................................................20, 21

*United States ex rel. McGrath v. Microsemi Corp.*,
  690 F. App'x 551 (9th Cir. 2017) ...............................................................9

iv

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*United States ex rel. Petras v. Simparel, Inc.*,
  857 F.3d 497 (3d Cir. 2017)..............................................................21, 22

*United States ex rel. Purcell v. MWI Corp.*,
  807 F.3d 281 (D.C. Cir. 2015)............................................................*passim*

*Safeco Ins. Co. of Am. v. Burr*,
  551 U.S. 47 (2007).............................................................................*passim*

*United States ex rel. Schutte v. SuperValu Inc.*,
  9 F.4th 455 (7th Cir. 2021) ................................................................ 9, 10

*United States ex rel. Sheldon v. Allergan Sales, LLC*,
  24 F.4th 340 (4th Cir. 2022), *en banc review granted*, No. 20-
  2330, ECF No. 74 (4th Cir. May 10, 2022) ........................................*passim*

*United States ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*,
  843 F.3d 1033 (5th Cir. 2016)...........................................................21, 22

*United States ex rel. Steury v. Cardinal Health, Inc.*,
  625 F.3d 262 (5th Cir. 2010)................................................................. 16

*United States ex rel. Streck v. Allergan, Inc.*,
  746 F. App'x 101 (3d Cir. 2018) ..............................................................9

*Tex. Indus. v. Radcliff Materials, Inc.*,
  451 U.S. 630 (1981) .............................................................................. 16

*Trinity Broadcasting of Florida, Inc. v. FCC*,
  211 F.3d 618 (D.C. Cir. 2000)................................................................ 19

*United States v. Corinthian Colleges*,
  655 F.3d 984 (9th Cir. 2011)...................................................................8

*United States v. Mead Corp.*,
  533 U.S. 218 (2001) .............................................................................. 13

*United States v. Southland Gaming of the Virgin Islands, Inc.*,
  182 F. Supp. 3d 297 (D.V.I. 2016)......................................................... 22

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*United States v. United Healthcare Ins. Co.*,
848 F.3d 1161 (9th Cir. 2016) ..................................................................... 9

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
579 U.S. 176 (2016) ............................................................. 16, 19, 24, 25

*Vandewater Int'l, Inc. v. United States*,
476 F. Supp. 3d 1357 (Ct. Int'l Trade 2020) ........................................ 12, 14

*Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*,
529 U.S. 765 (2000) ................................................................................. 2, 16

*United States ex rel. Williams v. Renal Care Grp. Inc.*,
696 F.3d 518 (6th Cir. 2012) ..................................................................... 16

**Statutes**

Fair Credit Reporting Act ....................................................................... 9, 10

False Claims Act .................................................................................. *passim*

Patent Act ...................................................................................................... 10

**Other Authorities**

19 C.F.R. § 351.225(l) ................................................................................. 23

Federal Rule of Appellate Procedure 29 .......................................................... 1

*Justice Department's False Claims Act Settlements and Judgments
Exceed $5.6 Billion in Fiscal Year 2021*, Dept. of Justice (Feb. 1,
2022), https://www.justice.gov/opa/pr/justice-department-s-false-
claims-act-settlements-and-judgments-exceed-56-billion-fiscal-
year. ......................................................................................................... 17

Sean Elameto, *Guarding the Guardians: Accountability in Qui Tam
Litigation Under the Civil False Claims Act*, 41 Pub. Cont. L.J.
813, 824, 826 (2012) ............................................................................... 18

## STATEMENT OF INTEREST

Pursuant to Federal Rule of Appellate Procedure 29, *amici curiae* the National Association of Manufacturers ("NAM") and the Chamber of Commerce of the United States of America ("Chamber") submit this brief in support of Defendant-Appellant and reversal.[1]

The NAM is the largest association of manufacturers in the United States, representing small and large manufacturers in every industrial sector and in all 50 states. Manufacturing employs more than 12.7 million men and women, contributes $2.71 trillion to the U.S. economy annually, has the largest economic impact of any major sector, and accounts for nearly two-thirds of all private-sector research and development in the nation. The NAM is the voice of the manufacturing community and the leading advocate for a policy agenda that helps manufacturers compete in the global economy and create jobs across the United States.

The Chamber is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function

---

[1] *Amici curiae* state that no counsel for any party authored this brief in whole or in part and no entity or person, aside from *amici curiae*, their members, or their counsel, made any monetary contribution intended to fund the preparation or submission of this brief. All parties consented to the filing of this brief.

of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus curiae* briefs in cases, like this one, that raise issues of concern to the nation's business community.

*Amici* have a strong interest in this appeal because it concerns the scope of False Claims Act ("FCA") liability and damages. *Amici*'s members, many of which are subject to complex and detailed regulatory schemes, have successfully defended FCA cases arising out of import duties, government contracts, grants, and participation in federal programs. With alarming frequency, relators (only rarely joined by the government itself) have asserted that objectively reasonable interpretations of ambiguous statutes, regulations, and contract provisions can give rise to FCA liability and trigger the statute's "essentially punitive" treble damages and penalties regime. *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 784–85 (2000). That is not how the FCA was intended to work. Exposing companies to draconian penalties for behaving in conformance with reasonable interpretations of legal requirements would create untold liability traps and unmoor the FCA from its narrow fraud-prevention purpose.

Proper application of the principles established by the Supreme Court in *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007), precludes this outcome by protecting *amici*'s members from substantial liability for acting reasonably in their

efforts to comply with an ever-increasing number of complex and indeterminate rules. Where companies have taken an "objectively reasonable" position regarding a regulation or contract term that they were not warned away from by authoritative guidance, the FCA's scienter requirement simply is not satisfied. *Amici*'s members have a strong interest in this Court correcting the district court's refusal to apply *Safeco* on its own terms to find an absence of scienter as a matter of law. A reasonable interpretation of an ambiguous regulation also should defeat any claim that there is an "established" duty (*i.e.*, an obligation) to pay the government, or that the failure to adhere to a different reasonable interpretation is material to any payment to the government.

Moreover, application of the FCA's "punitive" damages to this case is of particular interest and concern to *amici* and their members, since the FCA is being used to collect treble damages for unpaid antidumping order duties despite the fact that the Department of Commerce—the agency responsible for establishing such orders and determining when such duties should be assessed—declared that no such duties are owed precisely because the scope of the order was not clear when the goods were imported. Permitting FCA liability and damages here—given these circumstances and in a case brought by an industry competitor in which the government itself declined to intervene—is difficult to fathom. A federal court has determined that the scope of the antidumping order at issue was unclear, and the

3

federal agency charged with imposing and collecting duties has stated that no duties are owed on the transactions. Allowing the judgment to stand would defy Supreme Court precedent and transform the FCA into a blunt enforcement instrument, and would impose unwarranted risks and uncertainties on manufacturers and other businesses that must navigate complex regulatory terrains. *Amici* request that the Court reject such a gross and unwarranted expansion of FCA liability.

## INTRODUCTION

Where a business acts in accordance with an objectively reasonable interpretation of an ambiguous government regulation or contract provision and the government has not issued authoritative guidance otherwise, that conduct does not fall within the ambit of the FCA. Yet, in this case, a business has been found liable—and subjected to punitive statutory damages and penalties—solely on the basis of alleged non-compliance with a regulation that the responsible agency and a federal court have recognized is ambiguous with respect to the conduct at issue, namely whether a certain product fell within the scope of an antidumping duty order. The well-recognized principle of rejecting liability where conduct conforms to an objectively reasonable interpretation of the regulation is tied to key FCA elements, principally scienter, falsity (or in the reverse false claims act context, an "established duty"), and materiality. This objective limitation on liability makes eminent sense

4

and serves to protect against enforcement overreach, particularly through aggressive and self-interested *qui tam* enforcement of the FCA.

The FCA allegations here—advanced and pursued by a business competitor of the defendant Sigma Corporation—are based on so-called "reverse" false claims liability under 31 U.S.C. § 3729(a)(1)(G). As a general matter, the relator claimed that the defendant's import of certain products fell within the scope of an antidumping duty order imposed by the Commerce Department and that the defendant falsely stated that the product was not subject to the order, thereby avoiding an obligation to pay the duties imposed by the order at the time of product import and, hence, defrauding the United States. A reverse false claim violation occurs when a person:

> knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.

*Id.* Thus, liability here depends on establishing that the defendant acted "knowingly" in avoiding a material "obligation" to pay the import duties on the product at issue. But an objectively reasonable interpretation of the antidumping order would exclude the product at issue—indeed, a federal court has held the order to be ambiguous on this issue. And the responsible federal agency has determined that, although the product does fall within the scope of the order, no such duty is

5

owed on the imports at issue. Under these circumstances, there is no basis for imposing reverse false claim liability.

**First**, under the Supreme Court's decision in *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007), a person lacks the requisite scienter when his or her actions are consistent with an objectively reasonable interpretation of the relevant rule and the government has not issued authoritative guidance contrary to that interpretation. Several courts of appeals, including this Court, have correctly applied *Safeco*'s holding to the False Claims Act.

**Second**, the FCA defines an obligation for purposes of reverse false claim liability as an "established duty" to pay the government. 31 U.S.C. § 3729(b)(3). Where the antidumping order that is the basis for reverse false claim liability is ambiguous as to its application to the product at issue, and the government has not issued authoritative guidance to the contrary, there can be no *established* duty for FCA purposes. On the record below, where the agency determined that no antidumping duties are owed on the imports in question, the necessary obligation to pay is absent.

**Third**, FCA liability based on a false statement may not be imposed unless that statement is material to the government decision at issue. With respect to the reverse false claim's theory in this case, that means that the defendant's determination that the product was not subject to the antidumping duty order must

have been material to the government's decision whether to collect that duty on the defendant's imports. Given the undisputed record evidence that Commerce has determined that duties are not owed on these imports, the defendant's interpretation of the order, even if incorrect, cannot have been material. This result is bolstered by the agency's determination that it would refund to importers duties paid on this same product during the period in question.

The result below has serious consequences for businesses seeking, in good faith, to comply with applicable government regulations. Imposing harsh monetary punishment in a situation such as this is grossly unfair. If not reversed, the decision below will harm businesses, add regulatory risk to business-government interactions, and ultimately lead to increased costs of goods and services. *Amici* respectfully submit that this Court should rein in the unwarranted expansion of the FCA's reach in this case and make clear that FCA liability does not exist in these circumstances.

## ARGUMENT

## I. Businesses that Act Consistent with an Objectively Reasonable Interpretation of an Ambiguous Regulation Lack the Requisite False Claims Act Scienter.

FCA liability requires that a defendant act "knowingly," which the FCA defines as "actual knowledge of the information" alleged to be false, acting in "deliberate ignorance of the truth or falsity of the information," or acting in "reckless

disregard of the truth or falsity of the information." 31 U.S.C. §§ 3729(a)(1), 3279(b)(1); *see also United States v. Corinthian Colleges*, 655 F.3d 984, 996 (9th Cir. 2011) (FCA scienter requires proof that the defendant either knew "that its statements were false," or was "deliberately indifferent to or acted with reckless disregard of the truth of the statements"). Importantly, "[u]nder the False Claim Act's scienter requirement, innocent mistakes, mere negligent misrepresentations, and *differences in interpretations* will not suffice to create liability." *Adomitis v. San Bernardino Mountains Cmty. Hosp. Dist.*, 816 F. App'x 64, 67 (9th Cir. 2020) (quoting *Corinthian Colls.*, 655 F.3d at 996) (emphasis added).

### A. *Safeco*'s Objective Reasonableness Test Applies to the FCA.

In *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007), the Supreme Court addressed when differences in interpretation of a statute or regulation do (and do not) amount to scienter, holding that when the governing statute or regulation is ambiguous, a company's action is neither reckless nor knowing if it is consistent with an "objectively reasonable" interpretation of that statute. *Id.* at 70 n.20 ("Where, as here, the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator.").

*Safeco* interpreted the scienter requirement in the Fair Credit Reporting Act ("FCRA"), but every Circuit to consider the issue—including this Court—has held that *Safeco* applies with "equal force" to the FCA's scienter requirement. *United States ex rel. Sheldon v. Allergan Sales, LLC*, 24 F.4th 340, 344 (4th Cir. 2022) ("each and every circuit that has considered *Safeco*'s applicability to the FCA" holds that it does apply), *en banc review granted*, No. 20-2330, ECF No. 74 (4th Cir. May 10, 2022); *see also United States ex rel. McGrath v. Microsemi Corp.*, 690 F. App'x 551, 552 (9th Cir. 2017); *United States ex rel. Schutte v. SuperValu Inc.*, 9 F.4th 455, 459 (7th Cir. 2021); *United States ex rel. Streck v. Allergan, Inc.*, 746 F. App'x 101, 106 (3d Cir. 2018); *United States ex rel. Donegan v. Anesthesia Assocs. of Kansas City, PC*, 833 F.3d 874, 879–80 (8th Cir. 2016); *United States ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 290–91 (D.C. Cir. 2015).

In *McGrath*, 690 F. App'x 551, this Court cited *Safeco* as governing FCA scienter questions and held "as a matter of law" that the relator could not establish scienter because the defendant's interpretation of the regulation "was reasonable." *Id.* at 552 (citing *Safeco*, 551 U.S. at 70 n.20); *see also United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1178 (9th Cir. 2016) (citing *Safeco*'s holding that a reasonable interpretation of an ambiguous regulation precludes a finding of FCA scienter, but determining regulation was unambiguous). This conclusion makes eminent sense: both the FCRA and the FCA identify "reckless disregard" as

the threshold level of scienter, and both incorporate the same common law standard for recklessness that was interpreted in *Safeco*. *See, e.g.*, *Allergan Sales*, 24 F.4th at 348; *Supervalu*, 9 F.4th at 465.

In this case, the government filed a statement of interest in the district court arguing that "*Safeco*'s analysis does not control under the FCA," and instead advocating for the standard discussed in *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 579 U.S. 93 (2016). Dkt. 254 at 9. But *Halo* does not undermine the application of *Safeco*'s objective reasonableness standard to the FCA. *Halo* involved the Patent Act, which (unlike the FCA or FCRA) does not specify a knowing scienter requirement for liability. 579 U.S. at 104–06. The provision of the Patent Act at issue in *Halo* concerned a district court's discretion to "issue a particular amount of damages after finding liability," rather than the question of "whether liability exists at all." *Allergan Sales*, 24 F.4th at 349. For these reasons, the "gap between the FCA and the Patent Act is much wider than that between the FCA and the FCRA— both of which include an explicit scienter standard (covering both knowledge and recklessness) that speaks to liability rather than damages." *Id.* With no circuit-level precedent to the contrary anywhere, this Court should reaffirm that *Safeco*'s objective reasonableness test applies to the FCA.

## B. FCA Scienter Is Absent Where a Company Acts in Accordance with an Objectively Reasonable Interpretation without Contrary Authoritative Guidance.

The *Safeco* Court established a two-step analysis for the "loosest standard of knowledge"—reckless disregard. *Purcell*, 807 F.3d at 288; *see Allergan Sales*, 24 F.4th at 349 ("[I]f a defendant has not acted with reckless disregard in its view of the statute, 'it follows a fortiori' that it has not acted with deliberate ignorance or actual knowledge, which 'plainly demand[] even more culpability.'") (quoting *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1058 n.15 (11th Cir. 2015)). The court first must decide the legal question whether the defendant's acts were in accordance with an "objectively reasonable" interpretation of an ambiguous regulation. *Safeco*, 551 U.S. at 69–70 & n.20. If so, the remaining question is whether "authoritative guidance might have warned [the] defendant away" from those acts. *Allergan Sales*, 24 F.4th at 347 (citing *Safeco*, 551 U.S. at 69–70). If this two-step framework is met, no FCA liability can attach even if the interpretation supporting defendant's actions is ultimately determined to be erroneous. *Safeco*, 551 U.S. at 69.

Under this test, Defendant-Appellant Sigma plainly lacked the requisite scienter. A contrary holding would undermine *Safeco* and upset the FCA's scienter framework for all defendants.

First, there is dispositive evidence that Sigma's interpretation of the scope of the antidumping order—*i.e.*, that it did not apply to the imports in question—was objectively reasonable. That is because the Court of International Trade held that application of the relevant Order to the products at issue was "not plainly apparent from the language of the Order." *Vandewater Int'l, Inc. v. United States*, 476 F. Supp. 3d 1357, 1360 (Ct. Int'l Trade 2020). Both the company's and the government's interpretations of the Order were permissible. *Id.* ("They may be covered[,] . . . [t]hey also may not be covered[,]" the "language of the Order itself simply does not resolve the issue."). Thus, either interpretation is objectively reasonable.

Second, the record includes no evidence of any "authoritative guidance" that "might have warned [Defendant-Appellant] away." *Safeco*, 551 U.S. at 70; *see Donegan*, 833 F.3d at 879 (explaining that relator has burden of producing evidence that defendant was warned away from its reasonable interpretation of an ambiguous statute). Although whether guidance warned the defendant away from its actions is not strictly a legal question, it is easy to answer where the "government has not pointed to sufficient record evidence that there was 'guidance from the courts of appeals' or relevant agency 'that might have warned [the defendant] away from the view it took.'" *Purcell*, 807 F.3d at 289 (quoting *Safeco*, 551 U.S. at 70); *see Donegan*, 833 F.3d at 879 (noting that "summary judgment is not proper on the issue

of FCA scienter *if* a Relator (or the United States) produces sufficient evidence of government guidance that 'warn[ed] a regulated defendant away from an otherwise reasonable interpretation' of an ambiguous regulation." (citing *Purcell*) (emphasis in original)).

For agency guidance to qualify to warn a defendant away from a reasonable interpretation under this prong, it must be "authoritative"—*i.e.*, formal *and* binding. *See Safeco*, 551 U.S. at 70. As the Supreme Court has recognized, "formal administrative procedure tend[s] to foster the fairness and deliberation that should underlie a pronouncement of such force." *United States v. Mead Corp.*, 533 U.S. 218, 230 (2001). That is one reason why non-binding agency pronouncements— such as interpretations "contained in policy statements, agency manuals, and enforcement guidelines"—lack the force of law to bind defendants. *Id.* at 234. Such informal documents, like the informal agency letter at issue in *Safeco*, plainly are insufficient to satisfy the second "warn away" step. *Safeco*, 551 U.S. at 70 n.19.

Here, the record is devoid of any evidence regarding any *authoritative or binding* agency interpretation of the Order as covering the products at issue. While the district court's order denying the Rule 50(b) motion points to the 1992 ADD Order as "evidence that Sigma was 'warned away' from stating that its imports were duty-free," ER-8, the CIT deemed that same Order to be ambiguous in terms of its

application to Sigma's products. *Vandewater*, 476 F. Supp. 3d at 1360. An ambiguous order or regulation cannot act as "authoritative guidance."

Under *Safeco*, Defendant-Appellant Sigma could not have FCA scienter here as a matter of law, and the district court's determination should be reversed.

## C. Subjective Intent Is Irrelevant to Objective Reasonableness under *Safeco*.

Conduct in conformity with an objectively reasonable interpretation of an ambiguous regulation (absent authoritative guidance warning that the conduct is in violation of the regulation) ends the scienter inquiry. In other words, for FCA purposes, there is no requirement that the defendant establish that it actually held the objectively reasonable interpretation at the time of its conduct, only that the defendant's conduct, even if undertaken in disregard of the applicable regulation, in fact was consistent with an objectively reasonable interpretation of the regulation. Thus, "[t]o the extent that" a relator or the government may "argue that evidence of subjective bad faith can support a willfulness finding even when the company's reading of the statute is objectively reasonable, their argument is unsound." *Safeco*, 551 U.S. at 70 n.20. If a company's conduct follows "an interpretation that could reasonably have found support in the courts," Congress did not intend to impose FCA liability, "whatever [the defendant's] subjective intent may have been." *Id.*

Applying this holding, circuit courts have explained that evidence that a company "did not hew to its reasonable interpretation in good faith . . . is irrelevant

when a defendant seeks to defeat a finding of knowledge based on its reasonable interpretation of a regulatory term." *Purcell*, 807 F.3d at 289–90 (explaining that "evidence that employees of a regulated entity were concerned" about company's interpretation was irrelevant if that interpretation was reasonable); *see also Allergan Sales*, 24 F.4th at 348 (*Safeco*'s "objective standard precludes inquiry into a defendant's subjective intent."). Indeed, *Safeco* itself brushed off potential subjective awareness of informal agency guidance as irrelevant to the objective reasonableness test. 551 U.S. at 70 n.19. Evidence of bad faith or subjective intent simply is not part of the test.[2]

In the proceedings below, the district court, the United States, and relator mistakenly departed from this *Safeco* standard by focusing on evidence of Defendant-Appellant's supposed "subjective knowledge at the time it acted." Dkt. 254 (U.S. Stmt. Int.) at 12; *see also* Dkt. 434 (Relator Post-Trial Brief) at 15 (pointing to evidence supposedly proving what "the company actually thought when it made" the relevant statements); ER-8–9 (50(b) Order) (discussing similar evidence of Defendant-Appellant's supposed knowledge and intentions). *Amici* submit that, under an objective reasonableness inquiry, the Defendant-Appellant's subjective

---

[2] Of course, in cases where *Safeco* does not apply—because the defendant's conduct was not objectively reasonable, or there was authoritative guidance foreclosing that conduct—defendants still may have other defenses against scienter, including their subjective good faith. But for purposes of *Safeco*, *objective* reasonableness is all that matters.

intent is irrelevant. The question is whether a defendant's acts conform with an objectively reasonable interpretation of the regulation without being warned away from those acts by contrary authoritative guidance. "Bad faith" or "subjective intent" have no bearing on the objective reasonableness inquiry.

### D. The Objective Reasonableness Test Serves FCA Purposes and Preserves Due Process Rights.

*Safeco*'s objective reasonableness test serves as a reasonable and necessary check against FCA enforcement overreach. The FCA is not "a general 'enforcement device' for federal statutes, regulations, and contracts." *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 268 (5th Cir. 2010). Nor is the FCA "a vehicle to police technical compliance with complex federal regulations." *United States ex rel. Williams v. Renal Care Grp. Inc.*, 696 F.3d 518, 532 (6th Cir. 2012); *see also Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 194 (2016) (the FCA "is not 'an all-purpose antifraud statute,' or a vehicle for punishing garden-variety breaches of contract or regulatory violations").

Rather, the FCA is reserved for clear cases of fraud impacting the public fisc, as evidenced by the "essentially punitive . . . nature" of the FCA's treble damages regime. *Vt. Agency*, 529 U.S. at 784; *see also Tex. Indus. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639 (1981) ("The very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers."). The objective reasonableness test helps to curb FCA excesses by

16

shielding businesses from potentially catastrophic punitive damages for acting in accord with a reasonable interpretation of government regulations. Strict enforcement of the FCA scienter requirement is particularly important because of the complex contractual and regulatory schemes that businesses routinely face when they interact with the government. It comports with fundamental due process requirements. *See, e.g.*, *Allergan Sales*, 24 F.4th at 350 ("If the government wants to hold people liable for violating labyrinthine [regulations and statutes], it at least needs to indicate a way through the maze" in an objectively clear way.); *Gates & Fox Co. v. OSHRC*, 790 F.2d 154, 156 (D.C. Cir. 1986) (Scalia, J.) ("If a violation of a regulation subjects private parties to criminal or civil sanctions, a regulation cannot be construed to mean what an agency intended but did not adequately express.") (citation omitted).

With its *qui tam* enforcement provisions, enabling private parties—including business competitors, as is the case here—to wield governmental enforcement authority and prosecute actions where the government declines to intervene, the FCA presents added risks to businesses seeking to navigate federal regulations. Indeed, the well-documented proliferation of *qui tam* cases[3] only adds to these business

---

[3] Just last year, relators filed 598 *qui tam* suits and extracted more than $1.6 billion in settlements and judgments. *See Justice Department's False Claims Act Settlements and Judgments Exceed $5.6 Billion in Fiscal Year 2021*, DEPT. OF JUSTICE (Feb. 1, 2022), https://www.justice.gov/opa/pr/justice-department-s-false-claims-act-settlements-and-judgments-exceed-56-billion-fiscal-year.

burdens, as private parties and their counsel seek to expand the FCA's reach through creative means. Relators often capitalize on the enormous and often existential risks resulting from FCA claims to extract settlements from businesses. *See* Sean Elameto, *Guarding the Guardians: Accountability in Qui Tam Litigation Under the Civil False Claims Act*, 41 Pub. Cont. L.J. 813, 824, 826 (2012) (noting that non-meritorious FCA claims impose "social costs such as wasting taxpayer dollars by consuming the scarce resources of the courts, delaying meritorious claims, burdening legitimate businesses with defense litigation costs, and causing serious economic and reputational damage to the parties involved"). The objective reasonableness test is a necessary check against FCA overreach, and one that helps ensure that the FCA does not punish businesses whose conduct conforms to reasonable interpretations of ambiguous regulations.

Finally, the objective reasonableness test promotes clarity in government regulations, which helps to protect businesses' due process rights, by discouraging agency regulatory ambiguity and encouraging agencies to issue authoritative guidance when the governing standards are not clear. "A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). Where "regulations and other policy statements are unclear," the regulated party's "interpretation is reasonable," and "the agency itself struggles

18

to provide a definitive reading of the regulatory requirements, a regulated party is not 'on notice' of the agency's ultimate interpretation of the regulations." *Trinity Broadcasting of Florida, Inc. v. FCC*, 211 F.3d 618, 632 (D.C. Cir. 2000). Such regulated parties "may not be punished" consistent with due process. *Id.*

Just so in the FCA context. "Strict enforcement of the FCA's knowledge requirement helps to . . . avoid[] the potential due process problems posed by penalizing a private party for violating a rule without first providing adequate notice of the substance of the rule." *Purcell*, 807 F.3d at 287; *see also Escobar*, 579 U.S. at 192 ("strict enforcement" of the FCA's "rigorous" scienter requirement is necessary to alleviate "concerns about fair notice and open-ended liability").

*     *     *

Case law, sound FCA policy, and due process principles all weigh in favor of applying the objective reasonableness test in this case and reversing the judgment below on that ground.

## II.   Given the Agency's Determination that Duties Are Not Owed on the Imports at Issue, the District Court Should Have Determined that There Was No Obligation—No "Established" Duty—to Pay for FCA Purposes.

FCA reverse false claim liability depends on proof that the defendant avoided an "obligation"—defined as an "established duty"—to pay money to the Government. 31 U.S.C. § § 3729(a)(1)(G), 3729(b)(3). While there was an antidumping order at the time of the imports in question, which imposed an import

19

tax to liquidate covered imports, it was not clear that the Defendant-Appellant's products were covered by the antidumping order. The Commerce Department did not clarify the scope of the order until 2020 through a scope ruling. Under these circumstances, a defendant cannot be liable for a reverse false claim. This is because FCA liability requires that the obligation—the duty—be an *established* duty at the time of the violation. Here, precisely because the scope of the order was unclear with respect to its application to the products in question before 2020, and because the agency itself has determined that no import taxes are due for this product for entries that occurred prior to the agency's clarification, no obligation to pay the import tax ever arose with respect to the imports in question. It is anathema to the law, and to commonsense, to hold otherwise. Certainly, for businesses, the notion that a company can be punished by the government for avoiding paying a tax or duty that the government says is not due lacks any rational basis and cannot serve any permissible enforcement or deterrence interest.

## A. The Lack of an Established Duty to Pay Precludes Reverse False Claims Liability.

For purposes of reverse false claim liability, an "established duty" means a clear and presently existing duty. Indeed, as courts have emphasized, not every alleged breach of contract or regulatory breach gives "rise to the type of obligation that would serve as the basis for a reverse false claim[]." *United States ex rel. Landis v. Tailwind Sports Corp.*, 51 F. Supp. 3d 9, 56 (D.D.C. 2014) (Wilkins, J., sitting by

designation), *clarified on denial of reconsideration*, 2016 WL 3197550 (D.D.C. June 8, 2016). "Rather, the allegations must be sufficiently weighty to show that the defendant owes to 'the government an obligation *sufficiently certain* to give rise to an action of debt at common law.'" *Id.* (quoting *Am. Textile Mfrs. Inst., Inc. v. The Ltd., Inc.*, 190 F.3d 729, 736 (6th Cir. 1999)). An uncertain duty—or an ambiguous one—cannot be considered established. Similarly, courts consistently have held that certain "contingent" duties are not established. *United States ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497, 505–06 (3d Cir. 2017) (if events necessary to trigger duty have not yet happened, there is no obligation); *United States ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*, 843 F.3d 1033, 1036 (5th Cir. 2016) ("potential penalty" is not an "obligation").

These principles arise from the same legislative concern: Congress sought to "prevent relators from bringing [] speculative FCA claims" as opposed to claims that rest on a "formally established" duty. *Petras*, 857 F.3d at 505; *United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC*, 878 F.3d 1224, 1232 (10th Cir. 2017) (duty must be "formally established at the time of the improper conduct, not dependent on" future acts). Thus, where the supposed duty to pay is not clear at the time of the conduct, it cannot be considered an established duty for FCA purposes. Yet, in this very case, FCA liability has been imposed on a defendant notwithstanding a federal court determination that the antidumping order's application to the product in

question was not clear from the face of the order and, as discussed below, the agency itself has since determined that no import taxes are owed. In other words, FCA liability was imposed in the absence of an established duty at the time of the alleged violation, contravening Congress's intent. *See Petras*, 857 F.3d at 505.

## B. The Agency's Determination to Not Assess the Duty and to Refund Deposited Payments Is Further Proof that There Was No Established Duty to Pay.

The agency's affirmative finding that no duties are owed on the imports in question is further dispositive proof that the Defendant-Appellant here had no obligation to pay. The notion that a private party can be held liable for failing to pay a tax or duty that the government admits is not due is difficult to comprehend.

Indeed, liability does not exist in these circumstances. In fact, many courts have held that the fact that a fine has not yet been assessed by the government means an obligation does not exist. *See, e.g.*, *United States ex rel. Kasowitz Benson Torres LLP v. BASF Corp.*, 929 F.3d 721, 725 (D.C. Cir. 2019); *Simoneaux*, 843 F.3d at 1039; *United States v. Southland Gaming of the Virgin Islands, Inc.*, 182 F. Supp. 3d 297, 315 (D.V.I. 2016). There is even more reason in this case to hold that no obligation exists. The obligation is not contingent on future government action; rather, the government has affirmatively stated that no obligation exists at all. Thus, whereas liability cannot be imposed where it is uncertain whether the government

will require payment, it certainly cannot be imposed where the government declares, "You need not pay."

And the government went even further here. In addition to declaring that no payments are due on any of the imports in question, the agency announced that it would "refund cash deposits upon request" consistent with 19 C.F.R. § 351.225(l). *See* ER-238 (Commerce (k)(2) Order). The regulation makes clear that the "cash deposits" are for "estimated duties." 19 C.F.R. § 351.225(l)(2)(ii). The refund of estimated duties is the opposite of an established duty—it is conclusive proof that there is *no duty* to pay for the relevant time period, and thus no obligation.

Here again, *amici* note the absurdity of the result below. The trial court imposed treble damages—treble the amount of the duties that the defendant allegedly avoided—plus statutory penalties even though the federal agency itself has declared that no duties are owed and that anyone who paid those duties in the first instance is entitled to a full refund. In seeking to rationalize this outcome, the district court suggested that the obligation to pay somehow arises from the FCA, rather than the underlying regulation. ER-7. That justification is erroneous.

For a reverse false claim to be viable, the obligation must arise "from an independent legal duty." *United States ex rel. Kuriyan v. Health Care Servs. Corp.*, No. 16-1148, 2020 WL 8079811, at *7 (D.N.M. Sept. 9, 2020) (citing *United States ex rel. Barrick v. Parker-Miliorini Int'l, LLC*, 878 F.3d 1224, 1230-31 (10th Cir.

2017)).  That means that a defendant must have an obligation to pay arising from some *other* regulatory regime—like the trade regulations at issue here.  Without that obligation arising from the regulation, FCA liability cannot be established.

The result below flips the FCA on its head—allowing treble damages and penalties despite a government acknowledgement that no monies are owed on the transaction at issue.  Reversal is warranted.

## III.  Where the Agency Has Made Clear No Payment Is Owed, Due to Ambiguity or Otherwise, FCA Materiality Is Absent as Well.

Another requirement under the FCA is materiality.  *See Bourseau*, 531 F.3d at 1170–71; *see also* ER-24, 26 (Jury Instruction Nos. 11, 13 requiring a finding of materiality).  The Supreme Court made clear that the FCA's "materiality standard is demanding" and looks to whether the government likely would withhold payment if it knew about the violation or falsity.  *Escobar*, 579 U.S. at 193–94.  If a supposed requirement to pay the government is ambiguous, and a business acts in accord with an objectively reasonable interpretation of the requirement, the failure of the agency to issue authoritative agency guidance to the contrary can itself evidence a lack of materiality.  *Id.* at 194–95 (pointing to real-world evidence about government practice, such as that the government "consistently refuses to pay claims" in the circumstances at issue).

Moreover, as the Supreme Court explained, if the government "pays a particular claim in full despite its actual knowledge" of a violation, "that is very strong evidence" that that violation is not material. *Id.* This Court has applied that standard, including in affirming summary judgment, because there were no "triable issues as to the element of materiality." *United States ex rel. Berg v. Honeywell Int'l, Inc.*, 740 F. App'x 535, 538 (9th Cir. 2018); *see also United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 334 (9th Cir. 2017) (applying same standard regarding government's continued payment despite knowledge of violation); *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 906-07 (9th Cir. 2017) (same).

Here, the government has authoritatively declared that, under its regulations, no duties are owed on the imports in question, and that it will refund any payments already made. ER-238. Under these circumstances, it is not possible for the non-payment of such duties to be material to the government. The lack of materiality provides another basis for reversal of the judgment.

## CONCLUSION

For these reasons, *amici* urge this Court to reverse the judgment.

Dated: June 9, 2022                    Respectfully submitted,

                                       *s/ Douglas W. Baruch*
                                       Douglas W. Baruch
                                       Jennifer M. Wollenberg
                                       James D. Nelson
                                       MORGAN, LEWIS & BOCKIUS LLP
                                       1111 Pennsylvania Avenue, NW
                                       Washington, D.C. 20004
                                       (202) 739-3000
                                       douglas.baruch@morganlewis.com
                                       jennifer.wollenberg@morganlewis.com
                                       james.nelson@morganlewis.com

                                       *Counsel for Amici Curiae*
                                       *National Association of Manufacturers*
                                       *and the Chamber of Commerce of the*
                                       *United States of America*

                                       Erica Klenicki
                                       NAM LEGAL CENTER
                                       733 Tenth Street, N.W., Suite 700
                                       Washington, DC 20001
                                       (202) 637-3100

                                       *Counsel for National Association of*
                                       *Manufacturers*

                                       Tara S. Morrissey
                                       Andrew R. Varcoe
                                       U.S. CHAMBER LITIGATION CENTER
                                       1615 H Street, NW
                                       Washington, DC 20062
                                       (202) 463-5337

                                       *Counsel for the Chamber of Commerce*
                                       *of the United States of America*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 22-55063 _____

I am the attorney or self-represented party.

**This brief contains 5,947 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[  ] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[x] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [  ] it is a joint brief submitted by separately represented parties;
    [  ] a party or parties are filing a single brief in response to multiple briefs; or
    [  ] a party or parties are filing a single brief in response to a longer joint brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** *s/ Douglas W. Baruch* _____ **Date** June 9, 2022 _____
  *(use "s/[typed name]" to sign electronically-filed documents)*

27