**Case No. 22-55063**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

ISLAND INDUSTRIES, INC., *et al.*,

*Plaintiff-Appellee,*

v.

SIGMA CORPORATION, *et al.*,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Central District of California
L.T. Case No. 2:17-cv-04393-RGK-KS

## REPLY BRIEF OF APPELLANT
## SIGMA CORPORATION

Michael L. Yaeger
CARLTON FIELDS, P.A.
405 Lexington Avenue, 36th Floor
New York, New York 10174
Telephone: (212) 785-2577

Joseph H. Lang, Jr.
CARLTON FIELDS, P.A.
4221 W. Boy Scout Boulevard
Suite 1000
Tampa, Florida 33607
Telephone: (813) 229-4253

*Attorneys for Appellant*
*Sigma Corporation*

# TABLE OF CONTENTS

<em>Page</em>

TABLE OF CONTENTS ............................................................................... i

TABLE OF AUTHORITIES ..................................................................... iii

I.    The Remand Results establish that Sigma is entitled to judgment as a matter of law. ........................................................... 6

    A.    The customs laws and regulations give Commerce the sole authority to create, interpret, and apply the order here, and an FCA relator cannot alter Commerce's rulings. ....................................................................... 6

        1.    The governing regulation provides that scope rulings clarifying ambiguous orders do not apply to entries made before the initiation of the inquiry. ........................................................................ 6

        2.    Commerce did not apply the clarified order to pre-scope entries—whether liquidated or not—and Customs did not seek to restore liquidated entries under Section 1592. ........................................................ 9

        3.    Commerce's decision in this case is not disturbed by Section 1592(d) and cannot be altered or avoided by an FCA claim................................................ 12

        4.    An importer cannot avoid paying duties, or penalties, just by requesting a scope inquiry or proceeding through liquidation. ................................... 17

    B.    As a matter of law, the Government did not sustain any damages because there is, and was, no obligation to pay pre-scope inquiry duties. ....................................................... 20

i

# TABLE OF CONTENTS
### (continued)

*Page*

II.  Sigma's statements that no antidumping duties were owed were objectively reasonable and Sigma is also entitled to judgment as a matter of law on that basis. ...................................21

   A.  Island's assertions that Sigma failed to preserve its *Safeco* argument are wrong and miss the point. .................21

   B.  Island's argument is at odds with every circuit that has ruled on *Safeco*'s applicability to the FCA. ...........................24

   C.  *Safeco*'s objective reasonableness standard applies in this case. ................................................................................28

III.  Sigma's description of its products did not create a viable basis for liability under the FCA and, in the alternative, the product misdescription theory cannot sustain the final judgment under this Court's law relating to general verdicts. ......35

   A.  Sigma's Rule 50(b) motion should have been granted on the basis that no reasonable jury could have found falsity, scienter, or materiality in relation to Sigma's description of its products in its duty entry packets. ...........35

   B.  Island's product misdescription theory cannot sustain the final judgment under this Court's law relating to general verdicts. ....................................................................37

IV.  If the Court of International Trade reverses or vacates the Remand Results, the final judgment should be vacated. ..............40

CONCLUSION...........................................................................................40

FORM 8.  CERTIFICATE OF COMPLIANCE FOR BRIEFS................42

CERTIFICATE OF SERVICE .................................................................43

# TABLE OF AUTHORITIES

*Page*

## Cases

*AMS Assoc. v. United States,*
    737 F.3d 1338 (Fed. Cir. 2013) ................................................. 4, 9, 18

*U.S. ex rel. Complin v. N.C. Baptist Hosp.,*
    818 F. App'x 179 (4th Cir. 2020) ........................................... 33–34

*Counts v. Burlington Northern R. Co.,*
    952 F.2d 1136 (9th Cir. 1991) ...................................................... 38, 39

*U.S. ex rel. Donegan v. Anesthesia Assocs. of Kan. City, PC,*
    833 F.3d 874 (8th Cir. 2016) ...................................................... 24–25

*FCC v. Fox Television Stations, Inc.,*
    567 U.S. 239 (2012)........................................................................ 33

*Halo Electronics, Inc. v. Zimmer, Inc.,*
    579 U.S. 93 (2016)...................................................................... 26–27

*U.S. ex rel. Hamilton v. Yavapai Cmty. Coll. Dist.,*
    No. CV-12-08193-PCT-PGR, 2015 WL 1522174 (D.
    Ariz. Apr. 2, 2015), *clarified on denial of
    reconsideration sub nom. United States Hamilton v.
    Yavapai Cmty. Coll. Dist.,* No. CV-12-08193-PCT-PGR,
    2015 WL 6468211 (D. Ariz. Oct. 27, 2015) ............................. 13–14

*U.S. ex rel. Harman v. Trinity Indus., Inc.,*
    872 F.3d 645 (5th Cir. 2017) ........................................................ 25

*U.S. ex rel. Huangyan Imp. & Exp. Corp. v. Nature's Farm Prod., Inc.,*
    370 F. Supp. 2d 993 (N.D. Cal. 2005)...................................... 13, 16

*Jones v. St. Louis–San Francisco Ry. Co.,*
    728 F.2d 257 (6th Cir.1984) ......................................................... 16

# TABLE OF AUTHORITIES

(continued)

*Page*

*Jones v. Williams,*
    297 F.3d 930 (9th Cir. 2002) .......................................................... 23

*Kern v. Levolor Lorentzen, Inc.,*
    899 F.2d 772 (9th Cir. 1990) .......................................................... 38

*McCord v. Maguire*,
    873 F.2d 1271 (9th Cir.),
    *amended*, 885 F.2d 650 (9th Cir. 1989)................................37, 38, 39

*U.S. ex rel. McGrath v. Microsemi Corp.,*
    690 F. App'x 551 (9th Cir. 2017)................................................24, 27

*Nationwide Transp. Fin. v. Cass Info. Sys. Inc.,*
    523 F.3d 1051 (9th Cir. 2008) ........................................................ 23

*Olhausen v. Arriva Med., LLC,*
    No. 21-10366, 2022 WL 1203023
    (11th Cir. Apr. 22, 2022) ..........................................................25, 26

*U.S. ex rel. Oliver v. Parsons Co.,*
    195 F.3d 457 (9th Cir. 1999) ......................................................... 27

*U.S. ex rel. Phalp v. Lincare Holdings, Inc.,*
    857 F.3d 1148 (11th Cir. 2017) ................................................25, 26

*U.S. ex rel. Proctor v. Safeway, Inc.,*
    30 F.4th 649 (7th Cir. 2022) ....................................................25, 33

*U.S. ex rel. Purcell v. MWI Corp.,*
    807 F.3d 281 (D.C. Cir. 2015) .......................................25, 31, 33–34

*Safeco Ins. Co. of Am. v. Burr,*
    551 U.S. 47 (2007).................................................................. *passim*

**TABLE OF AUTHORITIES**
(continued)

*Page*

*U.S. ex rel. Schutte v. SuperValu Inc.*,
    9 F.4th 455 (7th Cir. 2021)..................................24, 25, 26, 30–31, 33

*U.S. ex rel. Sheldon v. Allergan Sales, LLC*,
    49 F.4th 873 (4th Cir. 2022) (*en banc*) ............................................ 25

*U.S. ex rel. Sheldon v. Allergan Sales, LLC*,
    24 F.4th 340 (4th Cir. 2022) (vacated) ........................................... 25

*U.S. ex rel. Streck v. Allergan, Inc.*,
    746 F. App'x 101 (3d Cir. 2018) ...................................................... 24

*U.S. ex rel. Swoben v. United Healthcare*,
    848 F.3d 1161 (9th Cir. 2016) ......................................................... 27

*Sunkist Growers, Inc. v. Winckler & Smith Citrus Products Co.*,
    370 U.S. 19 (1962).............................................................................. 38

*Sunpreme Inc. v. United States*,
    946 F.3d 1300 (Fed. Cir. 2020).....................................................8–9

*Tai-Ao Aluminum (Taishan) Co. v. United States*,
    983 F.3d 487 (Fed. Cir. 2020).....................................................3–4, 8

*Torrington Co. v. United States*,
    68 F.3d 1347 (Fed. Cir. 1995)............................................................ 1

*Trans Tex. Tire v. United States*,
    519 F. Supp. 3d 1275 (Ct. Int'l Trade 2021) ................................... 4

*Traver v. Meshriy*,
    627 F.2d 934 (9th Cir. 1980) ...................................................... 38, 39

*United States v. Blum*,
    858 F.2d 1566 (Fed. Cir. 1988)....................................................... 14

## TABLE OF AUTHORITIES
(continued)

*Page*

*United States v. Bourseau,*
    531 F.3d 1159 (9th Cir. 2008) ......................................................... 13

*United States v. Chen,*
    402 F. App'x 185 (9th Cir. 2010).................................................... 27

*United States v. Sun-Diamond Growers of California,*
    526 U.S. 398 (1999)............................................................................ 8

*United States v. Universal Fruits and Vegetables Corp.,*
    370 F.3d 829 (9th Cir. 2004) .................................................... 14, 17

*United States v. Vandewater Int'l, Inc.,*
    No. 2:17-cv-04393, 2020 WL 4372115 (C.D. Cal. June
    23, 2020) ...................................................................................... 22

*Vandewater Int'l, Inc. v. United States,*
    2022 WL 4102493 (Ct. Int'l Trade Sept. 8, 2022) ........................... 1

*Vandewater Int'l, Inc. v. United States,*
    476 F. Supp. 3d 1357 (Ct. Int'l Trade 2020) ........................ 3, 22, 28

*U.S. ex rel. Vigil v. Nelnet, Inc.,*
    639 F.3d 791 (8th Cir. 2011) .................................................... 13–14

*Wheeling-Pittsburgh Steel Corp. v. Mitsui & Co.,*
    221 F.3d 924 (6th Cir. 2000) ............................................... 7, 16–17

*White v. Ford Motor Co.,*
    312 F.3d 998 (9th Cir. 2002) ......................................................... 23

# TABLE OF AUTHORITIES
(continued)

*Page*

## Statutes

18 U.S.C. § 542 ................................................................. 17

18 U.S.C. § 545 ............................................................. 7, 17

19 U.S.C. § 1514 .......................................................... 11, 12

19 U.S.C. § 1592 ...........................9, 11, 13, 14, 15, 16, 20

19 U.S.C. § 1592(a) ........................................................ 12

19 U.S.C. § 1592(d) ...........................2, 10, 11, 12, 14, 15, 18, 20

## Rules and Regulations

19 C.F.R. § 351.225 (2018) ............................................... 6

19 C.F.R. § 351.225(k)(1) (2018) ................................... 18

19 C.F.R. § 351.225(k)(2) (2018) .............................. 19, 21

19 C.F.R. § 351.225(l) (2018) ........................................ 15

19 C.F.R. § 351.225(l)(2)(iii)(B) (2021) ..................... 19

19 C.F.R. § 351.225(l)(2) (2018) ................................... 9

19 C.F.R. § 351.225(l)(3) (2018) ........................... 8, 9, 15

Customs Procedural Reform and Simplification Act of 1978,
Pub. L. No. 95-410, 92 Stat. 888, 893-97 (1978) ........... 11

Fed. R. Civ. P. 8(a) ......................................................... 27

Fed. R. Civ. P. 9(b) ......................................................... 27

# TABLE OF AUTHORITIES
(continued)

*Page*

Fed. R. Civ. P. 50(b) .............................................................. 34, 35

Fed. R. Civ. P. 51(b)(2) ................................................................ 24

Fed. R. Civ. P. 51(d)(1)(b) .......................................................... 24

Tariff Act of 1930, amended by 19 U.S.C. § 1592 (1976) ........................ 11

## Other Authorities

86 Fed. Reg. 52300 (Dep't Commerce Sept. 20, 2021) ............................. 6

Kevin Kennedy, *Civil Penalty Proceedings Under Section 592*
    *of the Tariff Act of 1930,*
    10 Fordham Int'l L.J. 147 (1986–1987).......................................... 11

Sigma was held liable for failing to pay antidumping duties on imported products with a total value of $4,420,747. SER 232; 4-ER 638. Because the antidumping duty at issue was 182.9%, 4-ER 639, that liability translated to a verdict of $8,085,546.03. 2-ER 12. Under the terms of the FCA, that verdict was then trebled when it was reduced to a judgment. In addition, Sigma faces judgments for civil monetary penalties, attorneys' fees, and costs. *See* 1-ER 3; Appeal Case No. 22-55603 (appeal of attorneys' fees judgment).

Yet, in the Remand Results, Commerce, the government agency that is "the 'master' of the antidumping laws,"[1] decided, based on its own regulations, that it cannot retroactively order the assessment of antidumping duties on the products at issue imported before October 30, 2020, because the scope of the antidumping order was ambiguous and therefore did not provide adequate notice that such products were subject to the order until that date. Commerce's decision, affirmed by the CIT, *Vandewater Int'l Inc. v. United States*, 2022 WL 4102493 (Ct. Int'l Trade Sept. 8, 2022), means that neither Sigma nor any other importer of the

---

[1]  *Torrington Co. v. United States*, 68 F.3d 1347, 1351 (Fed. Cir. 1995).

products at issue was, is, or will be obligated to pay antidumping duties on imports entered before October 30, 2020. All of the products at issue in the case were imported before that date.

Island strains to justify its judgment in the face of Commerce's decision, relying on 19 U.S.C. § 1592(d) as authority for its FCA suit. But § 1592(d) does not create an "obligation to pay" that can ground an FCA claim; it only creates a remedy: a way to collect obligations created by independent "duties, taxes, or fees." And, on its face, § 1592(d) is a cause of action only for the Government, not a relator. It authorizes the Government, not Island, to pursue a remedy in certain circumstances, and the Government has never attempted to bring any action against Sigma under that statute. Indeed, the Government even refused to intervene in Island's FCA lawsuit.

Moreover, Island's attempts to portray Sigma as a renegade entity that knowingly evaded the antidumping duties at issue are misplaced. It bears emphasis that Island sued four other companies (thus, a total of five separate defendants representing a significant portion of the total imports of these products) in the same complaint for similar conduct, which underscores the ambiguity of the legal landscape at the time of

-2-

importation. Sigma was hardly alone in the marketplace in not appreciating the scope of the 1992 Order. Indeed, the CIT itself has held that the 1992 Order was ambiguous. *See Vandewater Int'l, Inc. v. United States*, 476 F. Supp. 3d 1357, 1362 (Ct. Int'l Trade 2020); *see id.* at 1360 ("It is therefore not plainly apparent from the language of the Order whether a steel branch outlet qualifies as a butt-weld fitting covered by the Order or not."). In reality, Island is misusing the FCA in a widespread strategy against competitors.

In this appeal, Island seeks to enforce an antidumping duty order while simultaneously ignoring the details of the statutes and regulations governing that order. In particular, the statutes and regulations in Title 19 provide that, when an antidumping order has been clarified in a scope inquiry, the order will ***not*** be applied to entries made before the scope inquiry. *See* 19 C.F.R. § 351.225 (l)(3) (2018). The governing statute and regulation do not retroactively apply (k)(2) scope rulings clarifying ambiguous orders because an importer would not have had fair notice that its entries were subject to the order in question. *See Tai-Ao Aluminum (Taishan) Co. v. United States*, 983 F.3d 487, 495 (Fed. Cir. 2020) (emphasizing that adequate notice must be provided to the

-3-

importer before the results of a Commerce scope inquiry may take effect); *AMS Assoc. v. United States*, 737 F.3d 1338, 1344 (Fed. Cir. 2013); *Trans Tex. Tire v. United States*, 519 F. Supp. 3d 1275, 1287-88 (Ct. Int'l Trade 2021).

Here, Commerce followed its regulations, stating that it would instruct Customs to liquidate pre-initiation entries "without regard to antidumping duties." 2-ER 238. In the Remand Results, it assessed antidumping duties only on entries "on or after the initiation of this scope inquiry." *Id.* Commerce's decision was affirmed by the CIT and governs the antidumping order's application in this case. A relator cannot change that ruling when it steps into the Government's shoes.

Accordingly, this FCA lawsuit is unfounded as there neither is, nor was, an actual, specific, past or current legal obligation to pay antidumping duties on entries made before October 30, 2020, the day Commerce began the (k)(2) scope inquiry. Sigma was entitled to judgment as a matter of law on this basis.

Further, the *Safeco* objective reasonableness standard applies in this case and precludes liability on the basis of Sigma's statements that antidumping duties were not owed. The CIT held that the 1992 Order was

ambiguous and did not plainly apply to the products at issue, and therefore required a full (k)(2) proceeding by Commerce to establish the 1992 Order's scope. Sigma was entitled to judgment as a matter of law on this basis, as well.

And Sigma was further entitled to judgment as a matter of law on Island's alternative product misdescription theory. The evidence was insufficient to establish that Sigma knowingly made false statements in describing the imported welded outlets, especially given that Sigma took care to adhere to Customs' Star Pipe ruling and instructions. Though Island brushes aside Sigma's notable efforts to comply (and its actual compliance) with these Customs' authorities, it avoids grappling with the fact that the Harmonized Tariff Schedule actually has a code for "butt-weld fittings," 5-ER 1058 (7307-93), and that code is indisputably ***not*** the correct code for the products at issue. Rather, Sigma used the correct code for these products in its entry packets, which were submitted by an outside customs broker, C.H. Powell. 4-ER 758.

At a minimum, a new trial is warranted because one invalid theory of liability (statements that no antidumping duties were owed) was submitted to the jury on a general verdict form.

**I.    The Remand Results establish that Sigma is entitled to judgment as a matter of law.**

    **A.    The customs laws and regulations give Commerce the sole authority to create, interpret, and apply the order here, and an FCA relator cannot alter Commerce's rulings.**

        **1.    The governing regulation provides that scope rulings clarifying ambiguous orders do not apply to entries made before the initiation of the inquiry.**

Island concedes, as it must, that the source of the "obligation to pay" at issue in this case is the 1992 Order, an antidumping duty order issued by Commerce. Ans. Br. 30 ("The China Order thus established Sigma's obligation to pay the government when bringing merchandise within the Order's scope into the United States."). Yet Island ignores the legal regime that not only gives Commerce the authority to issue the 1992 Order, but also governs the 1992 Order's scope and application. Island relies on the statement in § 351.225 that a scope ruling is a determination that a product has always been covered by the order, but cites an amended version of the regulation that did not take effect until November 4, 2021, 86 Fed. Reg. 52300, 52374 (Dep't Commerce Sept. 20, 2021)—well after Commerce had initiated the (k)(2) scope inquiry in this case. Island ignores that the applicable version of § 351.225 (2018) provides

that a clarified order will *not* apply to any entries made before the (k)(2) scope inquiry. Island's reading therefore amounts to an impermissible re-writing, and Commerce's decision in the Remand Results to follow the rule against application to pre-scope entries cannot be ignored.

Title 19 of the U.S. Code and its related regulations create a detailed and comprehensive customs legal regime that addresses, among other things: antidumping duties; the manner in which Commerce may issue orders imposing antidumping duties; the way that Commerce determines the scope of such orders; and penalties for entering merchandise into the commerce of the United States by means of a materially false document. *See* U.S.C., Title 19; *see also Wheeling-Pittsburgh Steel Corp. v. Mitsui & Co.*, 221 F.3d 924, 927–28 (6th Cir. 2000) ("Under Title VII, Congress set up a comprehensive administrative scheme in which the Department of Commerce [ ] and the United States International Trade Commission [ ] have been authorized to investigate alleged dumping practices and impose tariffs to offset unlawful price differences.") The U.S. Code also includes criminal prohibitions. *See, e.g.*, 18 U.S.C. § 545 (prohibiting smuggling and false customs documents).

The Supreme Court has noted that where there is an "intricate web" of statutes and regulations "both administrative and criminal" that create "an area where precisely targeted prohibitions are commonplace, and where more general prohibitions have been qualified by numerous exceptions," courts should be inclined to interpret the relevant statutes and regulations narrowly. *United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 409, 412 (1999). In such a field, a statute "that can linguistically be interpreted to be either a meat axe or a scalpel should reasonably be taken to be the latter." *Id.* at 412.

Under the applicable laws and regulations, if the scope of an antidumping duty order had to be clarified under subsection (k)(2), that order is not applied to entries predating the initiation of the (k)(2) scope inquiry. *See* Opening Br. 29–31, citing and discussing 19 C.F.R. § 351.225(l)(3) (2018); *see also Tai-Ao*, 983 F.3d at 495 ("The notice requirement reflects the broader due-process principle that before an agency may enforce an order or regulation by means of a penalty or monetary sanction, it must 'provide regulated parties fair warning of the conduct [the order or regulation] prohibits or requires.'") (citations omitted); *Sunpreme Inv. v. United States*, 946 F. 3d 1300, 1316 (Fed. Cir.

2020)(when Commerce rules that a product falls within the scope of an antidumping duty order, but there has been no previous suspension of liquidation, a new suspension may only begin on or after the date of initiation of the scope inquiry); *AMS Assoc.*, 737 F.3d at 1344 ("[W]hen Commerce 'clarifies' the scope of an existing antidumping duty order that has an unclear scope, the suspension of liquidation and imposition of cash deposits may not be *retroactive* but can only take effect 'on or after the date of initiation of the scope inquiry.'") (citing 19 C.F.R. § 351.225(l)(2)).

Thus, the applicable laws and regulations recognize that it is unfair to impose duties (much less fines or penalties) in matters where it takes several levels of analysis to determine if a product is within scope. Therefore, the governing regulation provides that the clarified order will ***not*** apply to entries made before a (k)(2) scope inquiry. *See* 19 C.F.R. § 351.225(l)(3) (2018).

### 2. Commerce did not apply the clarified order to pre-scope entries—whether liquidated or not—and Customs did not seek to restore liquidated entries under Section 1592.

The CIT ruled that the relevant antidumping duty order, the 1992 Order, was not clear enough for its meaning to be resolved under (k)(1), and thus Commerce had to perform a more involved (k)(2) scope

-9-

inquiry—the most onerous level of scrutiny. Moreover, when Commerce finished its (k)(2) inquiry, it concluded that it would instruct Customs to lift suspension of liquidation and to liquidate entries without assessing antidumping duties on entries *before* October 30, 2020, the day Commerce began the (k)(2) inquiry. 2-ER 238.

Island misunderstands the issue when it asserts that "by its terms" that paragraph of the Remand Results "does not affect Sigma, because all of Sigma's entries already have been liquidated." Ans. Br. 2–3; *see also id.* at 23. The Remand Results are relevant because they show that there is no obligation to pay antidumping duties on pre-inquiry entries— regardless of the liquidation status of those entries. If liquidation has been suspended, Commerce states it will instruct Customs to lift the suspension and liquidate the entries without antidumping duties. In contrast, entries that have already been liquidated are not mentioned in the Remand Results because antidumping duties were (properly) not assessed on such entries.

Moreover, without the provision for the restoration of duties in certain circumstances contained in 19 U.S.C. § 1592(d), liquidated entries would not be recoverable:

> Under the old [pre-1978] law there was no provision permitting collection of duties that were lost due to a section 592 violation. Once the entry was liquidated, the computation of duties was final and conclusive for all parties, including the United States, unless protested by the importer (an unlikely event in the context of a section 592 violation), voluntarily reliquidated by Customs, or reliquidated within two years if the entry had been fraudulent. Duties would therefore go uncollected if section 592 violations were discovered after these time periods had run. Section 592(d) was enacted to remedy this problem[.][2]

Kevin Kennedy, *Civil Penalty Proceedings Under Section 592 of the Tariff Act of 1930*, 10 Fordham Int'l L.J. 147, 199 (1986–1987).

Determinations about liquidation are final unless there are relevant exceptions enumerated in law. *See* 19 U.S.C. § 1514. Thus, all of the entries that have already been liquidated are not subject to an antidumping duty—unless, as discussed below, the Government had grounds to "restore" those duties under the circumscribed provisions of 19 U.S.C. § 1592(d), which of course it did not do here.

---

[2] Section 592 of the Tariff Act of 1930, amended by 19 U.S.C. § 1592 (1976), was superseded by section 110 of the Customs Procedural Reform and Simplification Act of 1978, Pub. L. No. 95-410, 92 Stat. 888, 893-97 (1978). Professor Kennedy refers to section 592 instead of section 110 "as this is how the legal community refers to the civil penalty provisions of 19 U.S.C. § 1592." 10 Fordham Int'l L.J. 147, 148 n.7.

    **3.    Commerce's decision in this case is not disturbed by Section 1592(d) and cannot be altered or avoided by an FCA claim.**

The clarified meaning of the order cannot be retroactively applied to entries before the (k)(2) inquiry—unless there is an express exception allowed for by Title 19. While Island cites 19 U.S.C. § 1592(d) as an applicable exception in this case, that provision does not address the FCA or create an "obligation to pay" that can be enforced under the FCA.

Section 1592(d) does not itself create an antidumping duty, tax, or fee, but instead creates a claim for the Government to "restore" an antidumping duty that already exists in circumscribed circumstances:

> Notwithstanding section 1514 of this title, if the United States has been deprived of lawful duties, taxes, or fees as a result of a violation of subsection (a), the Customs Service shall require that such lawful duties, taxes, and fees be restored, whether or not a monetary penalty is assessed.

19 U.S.C. § 1592(d). It creates a remedy, not an obligation to pay.

Similarly, subsection (a) of § 1592 does not create an obligation to pay; subsection (a) is violated by the making of a false statement. *See* 19 U.S.C. § 1592(a) ("no person, by fraud … may enter … any merchandise into the commerce of the United States by means of—(i) any document … which is material and false").

As one court in this Circuit observed when discussing potential obligations to pay, "the provision penalizing the making of false statements to the Customs Service, 19 USC § 1592, seems an especially inappropriate basis for a suit under the FCA." *U.S. ex rel. Huangyan Imp. & Exp. Corp. v. Nature's Farm Prod., Inc.*, 370 F. Supp. 2d 993, 1001 (N.D. Cal. 2005). That is because "not only is the penalty [in § 1592] contingent on government enforcement, but also liability only arises because of the false statement itself." *Id.*

The contingent aspect of the penalty in § 1592 prevents it from being a specific and current obligation to pay. *United States v. Bourseau*, 531 F.3d 1159, 1169 (9th Cir. 2008) ("[t]he obligation cannot be merely a potential liability: instead, in order to be subject to the penalties of the [FCA], a defendant must have had a present duty to pay money or property."); *United States ex rel. Hamilton v. Yavapai Cmty. Coll. Dist.*, No. CV-12-08193-PCT-PGR, 2015 WL 1522174, at *14 (D. Ariz. Apr. 2, 2015), *clarified on denial of reconsideration sub nom. United States Hamilton v. Yavapai Cmty. Coll. Dist.,* No. CV-12-08193-PCT-PGR, 2015 WL 6468211 (D. Ariz. Oct. 27, 2015) (quoting *U.S. ex rel. Vigil v. Nelnet, Inc.*, 639 F.3d 791, 801 (8th Cir. 2011)) (present duty to pay "must be a

specific, legal obligation ... in the nature of those that give rise to actions of debt at common law for money or things owed"). Thus, while antidumping duty orders create obligations under the FCA, section 1592 by itself does not. Section 1592 does not establish an "obligation to pay" independent of the antidumping order and the regulatory regime governing the antidumping order.

To be sure, courts have held that Section 1592(d) creates a claim that is "judicially enforceable" by the Government. *United States v. Blum*, 858 F.2d 1566, 1569 (Fed. Cir. 1988); *United States v. Universal Fruits and Vegetables Corp.*, 370 F.3d 829, 835 (9th Cir. 2004) ("*Blum* itself involved an action initiated in the CIT, reflecting the fact that, while § 1592 sets forth an administrative mechanism for attempts to introduce merchandise into the United States by fraud or negligence, it also contains a provision that allows the Government to bring a § 1592 action in the CIT.").

Importers are therefore *not* immune from liability where they knowingly violate obligations to pay antidumping duties. To the contrary, that's what § 1592(d) is for. It is a remedial mechanism for fraud. It

directs Customs to pursue those duties, and other subsections of 1592 allow for penalties.

But the mere existence of § 1592(d) does not disturb or negate Commerce's decision in the Remand Results. Nor does the mere potential for a § 1592(d) claim provide an independent basis for an FCA relator to avoid a CIT decision requiring a (k)(2) inquiry, or to avoid the rule in § 351.225(l)(3) against applying a clarified order to pre-scope entries. Section 1592(d) just gives the Government the right to pursue the cause of action that it creates in appropriate circumstances, and the Government did not even attempt to pursue that cause of action here. The Government's inaction is consistent with the CIT's holding that the scope of the antidumping order was ambiguous and Commerce's consequent decision to limit application of the clarified order to imports entered on or after October 30, 2020, as required by § 351.225(l) (2018).

The Government misses the point when it argues that "exhaustion requirements" under "other administrative or judicial schemes" "do not affect the scope of liability or extent of damages under the False Claims Act." Gov't Amicus Br. 17. Sigma does not assert that the Government must exhaust administrative remedies in order to bring a claim under

§ 1592. Indeed, as noted above, § 1592 is judicially enforceable. The point is that neither the FCA nor 1592 create an "obligation to pay," and that the scope of liability under an FCA claim rests upon the nature of the "obligation to pay" at issue.

Here, the "obligation to pay" is created and defined in the manner prescribed by Title 19 and its associated regulations. It is derived from the 1992 Order and the regulations and rulings of the Commerce Department under Title 19 that govern the 1992 Order, which include the Remand Results. The source of the obligation to pay is not only the antidumping duty order but also "the attendant regulatory framework authorizing and implementing the assessment and collection of such antidumping duties." *Huangyan*, 370 F. Supp. 2d at 1000. A claim based on the antidumping order governed by the Remand Results cannot ignore the effect of the Remand Results.

The FCA does not override the detailed and comprehensive customs legal regime created by Title 19. *See Jones v. St. Louis–San Francisco Ry. Co.*, 728 F.2d 257, 262 (6th Cir.1984)("[W]e are mindful that where two or more statutes deal with the same subject, they are to be read *in pari materia* and harmonized, if possible."); *Wheeling-Pittsburgh Steel Corp.*,

-16-

221 F.3d at 926 ("A frequently stated principle of statutory construction is that when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies. When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode."); *see also Universal Fruits and Vegetables Corp.*, 370 F.3d at 835 ("The reverse false claims provision of the FCA cannot be said to accomplish the same task" of creating an exception to the CIT's exclusive jurisdiction "as the[]provisions" in 18 U.S.C. § 542 and 545 "because it lacks the customs-specific language found in 18 U.S.C. §§ 542 and 545."). Instead, the FCA claim here *relies upon* the legal regime created by Title 19.

### 4. An importer cannot avoid paying duties, or penalties, just by requesting a scope inquiry or proceeding through liquidation.

Regarding the effect of seeking a scope ruling, Island and the Government misstate Sigma's position. *See* Ans. Br. 40; Gov't Amicus Br. 18. In reality, an importer cannot avoid paying duties, or penalties, just by requesting a scope inquiry. And the Government's argument that "Sigma's view" would "create a gaping hole in the government's ability to combat fraud" because all importers have to do is somehow have "their

lies remain undetected through the administrative liquidation period," Gov't Amicus Br. 18, is also false. In appropriate circumstances, if antidumping duties are owed and the statute of limitations has not run, the Government has a cause of action to pursue payment of those duties under 19 U.S.C. § 1592(d).

In analyzing a potential § 1592(d) action, however, Customs must consider the existing legal landscape. That is, the courts have recognized that Commerce has the authority to apply a scope ruling retroactively when the scope language is clear. *See*, *e.g.*, *AMS Assoc.*, 737 F.3d at 1344. "To hold otherwise would permit importers to potentially avoid paying antidumping duties on past imports by asserting unmeritorious claims that their products fall outside the scope of the original order." *Id.*

Commerce originally issued a scope ruling under § 351.225(k)(1) (2018). If Commerce's (k)(1) scope ruling had been upheld by the CIT, it would have applied retroactively and prevented importers from avoiding payment of antidumping duties, which the Government could have pursued on liquidated entries under 19 U.S.C. § 1592(d). But that is not what happened. The CIT held that Commerce's (k)(1) scope ruling was unreasonable because the antidumping order was ambiguous, and

ordered Commerce to conduct a formal scope inquiry under § 351.225(k)(2). Consequently, Commerce limited application of its affirmative scope ruling in the Remand Results to imports of the products entered on or after initiation of its (k)(2) scope inquiry. The legal consequence of Commerce's decision, which was affirmed by the CIT, is that Sigma did not improperly avoid payment of antidumping duties on its imports. Sigma did not have "adequate notice" that the order applied until October 30, 2020.

In addition, the 2022 form of the regulation regarding scope inquiries gives Commerce the authority to apply the 1992 Order to pre-inquiry entries:

> If the Secretary determines it is appropriate to do so, the Secretary may...at the Secretary's discretion, direct the Customs Service to begin the suspension of liquidation ...***at an alternative date***."

19 C.F.R. § 351.225(l)(2)(iii)(B) (2021) (emphasis added). The applicable version of the regulation extant in 2018 did not provide the Secretary the authority to choose "an alternative date," but the regulation has since been amended. In other words, in a new case, Commerce could rule differently than it did here.

In sum, an importer's decision to seek a scope inquiry did not, and does not, create immunity from the payment of antidumping duties, and Sigma has never claimed it did. The Government had the ability to bring a claim under § 1592 at all relevant times if it determined it was authorized in these circumstances and it chose not to bring such a claim.

**B.** **As a matter of law, the Government did not sustain any damages because there is, and was, no obligation to pay pre-scope inquiry duties.**

The Remand Results establish that Sigma had no "obligation to pay" duties on pre-scope inquiry entries, and therefore the Government has no recoverable damages.

That Sigma's pre-scope entries have already been liquidated makes Island's damages argument weaker, not stronger. If the Government had determined that a § 1592(d) action was warranted in these circumstances, it might have pursued that (it did not do so). But in the absence of such an action, liquidation is final and the Government cannot collect anti-dumping duties on those entries.

Commerce's decision not to order the assessment of antidumping duties on entries before October 30, 2020 – the day Commerce began the

19 C.F.R § 351.225(k)(2) scope inquiry – excludes those antidumping duties from Commerce's damages.

## II. Sigma's statements that no antidumping duties were owed were objectively reasonable and Sigma is also entitled to judgment as a matter of law on that basis.

As anticipated by Sigma's Opening Brief, Island attempts to avoid the *Safeco* objective reasonableness standard altogether by focusing instead on an alternative basis for upholding the jury's verdict. To do this, Island departs from the principle of parallelism in its briefing and addresses the alternative basis for liability before grappling with the import of the *Safeco* decision. In this brief, Sigma maintains parallelism with its Opening Brief and with the Government's *amicus* brief.

### A. Island's assertions that Sigma failed to preserve its *Safeco* argument are wrong and miss the point.

Sigma asserts, *as a matter of law*, that it could not act "knowingly" because its actions were consistent with an objectively reasonable interpretation of the 1992 Order, and it was not warned away from that interpretation by any authoritative guidance. For that reason, Island's theory of liability based on Sigma's statements that no antidumping duties were owed should not have been submitted to the jury.

In its brief, Island largely avoids Sigma's argument that the objective reasonableness standard should have been applied as a matter of law and instead dilates on perceived insufficiencies in Sigma's proposed jury instruction on objective reasonableness. This misses the point, as jury instructions should not be implicated in this appeal because the *Safeco* objective reasonableness issue should have been decided as a matter of law before trial. The CIT already determined that the 1992 Order was ambiguous and confirmed that the Sprink-let scope ruling was non-binding. *Vandewater*, 476 F. Supp. 3d at 1360–61.

Though irrelevant, Island's argument that the proposed jury instruction was erroneous rests on mischaracterizations of the proposed instruction and the history of this case. The district court failed to decide the legal question on ambiguity and stated that objective reasonableness was a jury issue. *United States v. Vandewater Int'l, Inc.,* No. 2:17-cv-04393, 2020 WL 4372115, *10 (C.D. Cal. June 23, 2020). Sigma prepared a proposed instruction accordingly. The proposed instruction directly addressed the factual issue of whether Sigma was warned away from its view, asking the jury to "analyze whether a reasonable person could have interpreted the antidumping duty order in that way ***based on the***

*information available at the time*." 2-ER 96 (emphasis added). Contrary to Island's assertion that the proposed instruction "completely omitted" the factual question, (Ans. Br. 59), it *necessarily* asks whether Sigma was warned away; if information available at the time did warn Sigma, the interpretation might not have been reasonable.

There was thus no basis to exclude Sigma's proposed instruction, and Island's reliance on *Nationwide Transport Finance* is misplaced. In that case, the plaintiff's jury instructions "may have been correct statements of the law," but the court separately held that the law in question did not impose legal obligations on the defendant, rendering the instructions irrelevant. *Nationwide Transp. Fin. v. Cass Info. Sys. Inc.*, 523 F.3d 1051, 1057, 1063 (9th Cir. 2008). Finally, Sigma never agreed that the proposed instruction was erroneous — Sigma's Opening Brief merely agreed that the court should have decided objective reasonableness. *See* Ans. Br. 59; Opening Br. 45–46.

In any event, Sigma was entitled to have the jury instructed on an issue the jury was expected to decide. *See White v. Ford Motor Co.,* 312 F.3d 998, 1012 (9th Cir. 2002); *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir. 2002). Here, the district court failed to instruct the jury about the

*Safeco* objective reasonableness standard or the issues it was to consider when applying this standard. Island's argument that Sigma did not object to the jury instructions omits crucial facts: the record reflects that the district court did not hold a charge conference and the court did not give the parties the required opportunity to object to the court's instructions. *See* Fed. R. Civ. P. 51(b)(2) (the court "must give the parties an opportunity to object on the record and out of the jury's hearing before the instructions and arguments are delivered"). In these circumstances, the court's decisions about final jury instructions should be considered to be a determinative ruling. *See* Fed. R. Civ. P. 51(d)(1)(b).

## B. Island's argument is at odds with every circuit that has ruled on *Safeco*'s applicability to the FCA.

It is not surprising that Island seeks to avoid having this Court address the *Safeco* objective reasonableness standard. Every circuit that has ruled on the issue, including this Court, has determined that the *Safeco* standard applies to the FCA. *U.S. ex rel. McGrath v. Microsemi Corp.*, 690 F. App'x 551, 552 (9th Cir. 2017); *U.S. ex rel. Schutte v. SuperValu Inc.*, 9 F.4th 455, 459 (7th Cir. 2021); *U.S. ex rel. Streck v. Allergan, Inc.*, 746 F. App'x 101, 106 (3d Cir. 2018); *U.S. ex rel. Donegan v. Anesthesia Assocs. of Kan. City, PC*, 833 F.3d 874, 879–80 (8th Cir.

-24-

2016); *U.S. ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 290–91 (D.C. Cir. 2015); *see also Olhausen v. Arriva Med., LLC*, No. 21-10366, 2022 WL 1203023 (11th Cir. Apr. 22, 2022) (following *Purcell*); *U.S. ex rel. Proctor v. Safeway, Inc.*, 30 F.4th 649 (7th Cir. 2022) (following *Schutte*); *see generally U.S. ex rel. Harman v. Trinity Indus., Inc.*, 872 F.3d 645, 657–58 & n.39 (5th Cir. 2017) (citing *Safeco* and explaining "strong" argument that "reasonable interpretation of any ambiguity inherent in a regulation belies the scienter necessary" under the FCA).[3] "As it stands, no circuit has held *Safeco* inapplicable to the FCA." *Schutte*, 9 F.4th at 466.

Nonetheless, in an effort to stem the tide of authority, Island and the Government attempt to create cloudiness where there is none. They suggest that *U.S. ex rel. Phalp v. Lincare Holdings, Inc.*, 857 F.3d 1148 (11th Cir. 2017), is to the contrary. Not so. The Seventh Circuit has explained that "*Phalp* did not reject *Safeco*—it did not even cite *Safeco*." *Schutte*, 9 F.4th at 465. The Eleventh Circuit observed that scienter "can

---

[3] Sigma cited the Fourth Circuit's decision in *U.S. ex rel. Sheldon v. Allergan Sales, LLC*, 24 F.4th 340, 348 (4th Cir. 2022), in its Opening Brief. Since that time, the *en banc* Fourth Circuit vacated that decision. Yet, it affirmed the district court's decision dismissing the complaint by an equally divided court. *See U.S. ex rel. Sheldon v. Allergan Sales, LLC*, 49 F.4th 873 (4th Cir. 2022) (*en banc*).

exist even if a defendant's interpretation is reasonable," provided the defendant had "actual knowledge of a different authoritative interpretation." 857 F.3d at 1155. That "is not inconsistent with *Safeco*." *Schutte*, 9 F.4th at 465. The Eleventh Circuit recently cited *Phalp* in applying *Safeco* in the FCA context, holding that a relator "cannot show that [the defendant] had the requisite scienter" where the defendant applied "an objectively reasonable interpretation of the rules." *Olhausen*, 2022 WL 1203023 at *2.

Island and the Government also argue that *Halo Electronics, Inc. v. Zimmer, Inc.*, 579 U.S. 93 (2016), casts doubt on the *Safeco* analysis. Again, not so. *Halo* addressed the Patent Act, an entirely different statutory scheme. In *Halo*, the Supreme Court declined to apply *Safeco* to the Patent Act. "The reasons informing [*Halo*] do not apply here." *Schutte*, 9 F.4th at 467. Unlike the Patent Act, the FCA clearly limits liability to claims that are made knowingly. *Halo* "did not walk back *Safeco* or adopt a new standard for objective recklessness." *Id.* Indeed, it reaffirmed the applicability of *Safeco* when a statute requires proof of "a knowing or reckless violation," stating that a "showing of bad faith [i]s

not relevant absent a showing of objective recklessness." *Halo*, 579 U.S. at 106 n.*.

Finally, Island and the Government disagree with this Court's holding in *McGrath*. In *McGrath*, this Court affirmed a ruling of the district court *dismissing* a relator's FCA complaint under Federal Rules of Civil Procedure 8(a) and 9(b). This Court relied upon *Safeco* in affirming the dismissal.

Island and the Government posit that this Court did not address the *Halo* decision in *McGrath*. As explained above, there was no reason to address *Halo*. They also argue that *McGrath* is inconsistent with prior precedent in this Circuit and cite *U.S. ex rel. Oliver v. Parsons Co.*, 195 F.3d 457 (9th Cir. 1999), as an example. Yet, that case pre-dates *Safeco* and has been overtaken by this Court's more recent decisions citing *Safeco*. *See U.S. ex rel. Swoben v. United Healthcare*, 848 F.3d 1161, 1178 (9th Cir. 2016); *McGrath*, 690 F. App'x at 552.

Finally, the Government cites *United States v. Chen*, 402 F. App'x 185, 188 (9th Cir. 2010), as authority for disregarding *McGrath*. The *Chen* Court did not cite *Safeco* and it does not appear that the *Safeco* standard was implicated there.

**C.** ***Safeco*'s objective reasonableness standard applies in this case.**

The *Safeco* objective reasonableness standard precludes liability as a matter of law for Sigma's statements that no duties were owed in this case. The CIT determined that the 1992 Order was ambiguous. *See Vandewater*, 476 F. Supp. 3d at 1360. The CIT also stated that the additional "sources Commerce relied upon as dispositive (the King Scope Ruling, the petition language, and the language from the ITC sunset review) do not really tell the court anything about the inclusion of steel branch outlets within the scope of the Order." *Id.* at 1362. The CIT therefore remanded for a full (k)(2) inquiry into the scope of the 1992 Order. Nevertheless, Island and the Government argue that Sigma somehow should have divined the scope of the 1992 Order when even the CIT could not.

Because the CIT determined that the scope of the 1992 Order was ambiguous and called for a remand for a (k)(2) scope proceeding, different interpretations of the 1992 Order were objectively reasonable. To counter that obvious conclusion, Island attempts to frame the need for a thorough (k)(2) scope hearing as merely a perfunctory exercise. It focuses on the CIT's observation that the Sprink-let scope ruling seemed "dispositive"

-28-

and suggests that the remand was simply to allow Commerce to go through the motions of writing a better order that relied on the Sprink-let scope ruling. The record, however, does not support that portrayal of the proceedings.

In fact, the CIT's actual reasoning and ruling led to a remand for a full (k)(2) scope hearing because the scope of the 1992 Order was not plain or amenable to a (k)(1) scope determination. Then, on remand, Commerce notably did not base its (k)(2) scope determination on the Sprink-let scope ruling, citing it only in the background section of the Remand Results and proceeding to conduct a full (k)(2) analysis without regard to that order. That is not surprising, as Commerce originally stated that the Sprink-let scope ruling was non-binding. Doc. 167-20 at 16 (PDF 17 of 18); 5-ER 1010.

Therefore, the ambiguity in the scope of the 1992 Order identified by the CIT is by itself a sufficient basis for an objectively reasonable interpretation that duties were not owed on the imports at issue.

Island and the Government also attempt to change *Safeco*'s *objective* reasonableness standard into a *subjective* reasonableness standard. In doing so, they recite record evidence bearing on Sigma's

state of mind at the time it made the statements that no duties were owed on the imported products. But that record evidence is irrelevant to the proper application of an objective reasonableness standard and their arguments turn an objective standard on its head.

*Safeco* expressly rejected the argument that a defendant's subjective beliefs are relevant where there is an objectively reasonable interpretation of an ambiguous law: "Where ... the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator." *Safeco*, 551 U.S. at 70 n.20. "Congress could not have intended [to impose liability on] those who followed an interpretation that could reasonably have found support in the courts, whatever their subjective intent may have been." *Id.* "To the extent that [respondents] argue that evidence of subjective bad faith can support a willfulness finding even when the company's reading of the statute is objectively reasonable, their argument is unsound." *Id.* This rule makes perfect sense in the FCA context. If the law is unclear, "[a] defendant might

suspect, believe, or intend to file a false claim, but it cannot know that its claim is false." *Schutte*, 9 F.4th at 468.

In turn, the application of the objective reasonableness standard does not unfairly undermine the FCA or unduly prejudice the Government. Purported concerns that such a standard incents post-hoc inventions of reasonable interpretations of laws or regulations are overblown and speculative.

A defendant may not invoke an objectively unreasonable interpretation of the law. Nor may a defendant invoke an objectively reasonable interpretation of the law that is contradicted by authoritative guidance. And *Safeco* does not bar liability for factually, as opposed to legally, false claims by a defendant. The floodgates are not open. But the *Safeco* standard does require regulators to speak clearly before quasicriminal treble damages for noncompliance with ambiguous provisions could be implicated. *See Purcell*, 807 F.3d at 291.

As emphasized above, the test is *objective* reasonableness. But given Island's suggestion (without record citation) that the "whole reason" Sigma "lied" was to avoid antidumping duties, (Ans. Br. 52), a

-31-

few sentences in response to the idea that Sigma had a subjective fraudulent intent are warranted here.

To that end, Island presented no evidence that Sigma had actual contemporaneous knowledge that the 1992 Order covered these products. It argued only that Sigma *should have known* its products would be considered butt-weld pipe fittings. Indeed, in testimony that Island acknowledges and embraces, Sigma's witnesses stated that they were unaware of the 1992 Order and the Sprink-let scope ruling until 2018. (Ans. Br. 67–68, 71; 3-ER 484; 4-ER 667–68). Sigma apparently was not alone in its lack of actual knowledge: Island sued four other companies in the same complaint for similar conduct at the time.

Moreover, Sigma offered testimony about its significant processes for determining whether antidumping duties may be owed. (4-ER 694–95). The record reflects that Sigma was subject to a standard audit by Customs in the relevant time period and was given an acceptable risk rating (the highest rating available) in that focused assessment, which looked at Sigma's "internal control over compliance with applicable CBP regulations, laws, and regulations." (4-ER 744–48).

Island and the Government also argue that Sigma was "warned away" by authoritative guidance. That is incorrect. As a matter of law, neither the Sprink-let scope ruling nor the 1992 Order provides the type of authoritative guidance that is required under *Safeco* and its progeny.

Commerce views the Sprink-let scope ruling as non-binding. It reaffirmed that view in the Remand Results by not relying on that order in its analysis. It is nonsensical to assert that Sigma should have been warned away by an order that Commerce views as "non-binding" and refused to rely upon in conducting its (k)(1) or (k)(2) scope analyses.

To qualify as authoritative guidance, an agency must be required to provide "fair notice of conduct that is forbidden or required," *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012), before imposing treble damages under the FCA that are essentially punitive in nature. *See, e.g.*, *Schutte*, 9 F.4th at 471 ("*Safeco* suggests that authoritative guidance must have a high level of specificity"); *Proctor*, 30 F.4th at 660 (same); *U.S. ex rel. Complin v. N.C. Baptist Hosp.*, 818 F. App'x 179, 184 n.6 (4th Cir. 2020) ("non-precedential and non-binding" administrative

tribunal decision "is not enough to warn a regulated defendant away" (quoting *Purcell*, 807 F.3d at 290)).[4]

In turn, the 1992 Order itself cannot serve as authoritative guidance to warn away, as it is the very order that the CIT determined was ambiguous and required a (k)(2) scope inquiry. In its Opening Brief, Sigma explained how the invocation of the 1992 Order as authoritative guidance to warn away would be circular. (Opening Br. 44). Island ignores that point.

As also noted in the Opening Brief, the issue whether a defendant has been "warned away" may be determined as a matter of law. In reality, the district court itself essentially ruled on this issue as a matter of law when it denied Sigma's Rule 50(b) motion. Because the jury was never instructed on this issue and therefore never had the opportunity to specifically consider it, the district court actually decided the issue.

---

[4] Island's embrace of trial testimony from one of Sigma's officers regarding his reaction to the Sprink-let scope ruling in 2018 (years after the fact) sheds no light on whether that order constitutes authoritative guidance. (*See* Ans. Br. 71).

**III.   Sigma's description of its products did not create a viable basis for liability under the FCA and, in the alternative, the product misdescription theory cannot sustain the final judgment under this Court's law relating to general verdicts.**

Sigma asserts that its Rule 50(b) motion also should have been granted on Island's alternative theory of liability that Sigma's description of its products in its entry packets created FCA liability. At a minimum, the judgment should be reversed and the case remanded for a new trial because the jury was presented with an invalid legal theory (related to Sigma's statements that no duties were owed) as well as the alternative product misdescription theory before returning a general verdict.

Island's arguments that its alternative theory of liability saves the verdict and that the general verdict is of no moment are both misguided.

**A.   Sigma's Rule 50(b) motion should have been granted on the basis that no reasonable jury could have found falsity, scienter, or materiality in relation to Sigma's description of its products in its duty entry packets.**

Sigma carefully adhered to Customs' requirements in completing its duty entry packets. Island does not dispute that Sigma used the proper HTS code (7307.99.5045) in Box 28 of Form 7501, following authoritative guidance from the Form 7501 instructions and the Star Pipe ruling. And although Sigma acknowledged that welded outlets and

steel couplings are different products, *see* 4-ER 656, it used the description it did in an effort to comply with Customs' instructions. *See* 4-ER 671–73. Sigma's careful efforts to add product descriptions compliant with instructions from Customs do not transform the entry packets into false statements.

Island casually dismisses Sigma's compliance with the Customs codes and forms because it says its focus is not on Sigma's proper application of the HTS codes, but rather on Sigma's use of the term "steel couplings" in the entry packets.

Yet, in response to Sigma's argument that the term "steel couplings" was actually taken from the words used in the headings in the HTS, which headings do not contain the concept or choice of "welded outlets," (5-ER 1058; *see* 4-ER 671–73), Island says that its expert discredited that explanation. But a review of that cited testimony, 4-ER-733–34, reveals that the witness did not comment on the general headings on the top of the HTS pages at issue. Rather, she testified as to the abbreviations used on Form 7501.

The Star Pipe ruling establishes that the products at issue fall under HTS code 7307.99.5045, the exact code Sigma used, and *not* the

HTS code for butt-weld fittings. 5-ER 1012. It blinks reality to ignore this decision not to classify these products as butt-weld fittings when evaluating whether sufficient evidence exists that Sigma knowingly made a false statement in describing its products.

**B.   Island's product misdescription theory cannot sustain the final judgment under this Court's law relating to general verdicts.**

Island's theory that Sigma made a false statement that no antidumping duties were due and owing should have been rejected as a matter of law under the *Safeco* objective reasonableness standard. For that reason, that invalid theory of liability should not have been presented to the jury. Thus, even if Island's alternative theory of liability based upon product misdescription was sufficient to survive judgment as a matter of law (it was not), the use of a general verdict form in this case necessitates a new trial.

Island argues otherwise and cites *McCord v. Maguire*, 873 F.2d 1271 (9th Cir.), *amended*, 885 F.2d 650 (9th Cir. 1989). Island is wrong. *McCord* does not provide the correct legal rubric for this situation. Here, one legally invalid theory of liability and one valid theory of liability were submitted to the jury. A general verdict form was used. In contrast,

-37-

*McCord* addresses the situation where two (or more) valid theories of liability are submitted to the jury and there is insufficient evidence to support one (or more) of those theories.

The correct legal rubric is set forth by this Court in *Counts v. Burlington Northern R. Co.*, 952 F.2d 1136 (9th Cir. 1991). *Counts* was a FELA case where the validity of the plaintiff's release was the only issue to be tried in the first phase of trial. In its FELA claim, however, the plaintiff asserted multiple different theories why the release was invalid. The jury returned a general verdict that the release was invalid. This Court reversed for a new trial because there were errors of law in submitting certain of the plaintiff's theories to the jury.

Specifically, this Court explained as follows:

> Generally, where there is an error of law in submitting one of a number of theories to the jury, the general jury verdict is tainted because it is impossible for the reviewing court to determine with certainty whether the theory upon which the jury based its verdict is a proper theory. *Sunkist Growers, Inc. v. Winckler & Smith Citrus Products Co.,* 370 U.S. 19, 29–30, 82 S.Ct. 1130, 1136, 8 L.Ed.2d 305 (1962); *Kern v. Levolor Lorentzen, Inc.,* 899 F.2d 772, 777 (9th Cir.1990).

952 F.2d at 1140.

This Court then explained that it would use the *Traver v. Meshriy,* 627 F.2d 934 (9th Cir. 1980), factors, as Sigma outlined in the Opening

-38-

Brief, to determine whether to exercise its discretion to avoid reversing for a new trial. And contrary to Island's argument that Sigma failed to preserve this argument, this Court held that "the failure of Burlington to request a special verdict in this case does not affect the appealability of this issue. This issue involves legal claims rather than factual claims and does not involve the sufficiency of the evidence or calculation of damages." *Id.*

Island ignores the *Counts* rubric and tries to fit this case into the *McCord* rubric. But it does not fit. Sigma's argument is that the theory of liability based upon statements that no duties were owed should never have been submitted to the jury because that theory was precluded as a matter of law by the *Safeco* objective reasonableness standard. Island's argument assumes that two valid factual theories of liability were submitted to the jury and that the sufficiency of the evidence for one of those theories is at issue. That is not the situation here and *McCord* is inapposite.

Because it focuses on the wrong paradigm, Island says little about the application of the *Traver* factors in this case, limiting itself to a footnote in that regard. Although Island says that there was no

significant potential for confusion of the jury, it does not address any of Sigma's arguments that the potential for jury confusion was in fact exceedingly high. For the reasons stated in the Opening Brief, this Court should exercise its discretion to, at a minimum, order a new trial.

## IV.  If the Court of International Trade reverses or vacates the Remand Results, the final judgment should be vacated.

The CIT has now sustained the Remand Results. Sigma has appealed that decision. The arguments made in the Opening Brief in this section apply likewise to Sigma's appeal in the Court of Appeals for the Federal Circuit.

## <u>CONCLUSION</u>

For the foregoing reasons, the Judgment of the District Court should be reversed. The case should be remanded for entry of judgment in favor of Sigma. At a minimum, a new trial should be ordered.

Date: October 24, 2022

Respectfully submitted,

s/ *Joseph H. Lang, Jr.*
Joseph H. Lang, Jr.
CARLTON FIELDS, P.A.
4221 W. Boy Scout Boulevard
Suite 1000
Tampa, Florida 33607
Telephone: (813) 229-4253
Facsimile: (813) 229-4133
jlang@carltonfields.com

Michael L. Yaeger
CARLTON FIELDS, P.A.
405 Lexington Avenue, 36th Floor
New York, New York 10174
Telephone: (212) 785-2577
Facsimile: (212) 785-5203
myaeger@carltonfields.com

*Attorneys for Appellant*
*Sigma Corporation*

-41-

## UNITED STATES COURT OF APPEALS
### FOR THE NINTH CIRCUIT
### FORM 8.  CERTIFICATE OF COMPLIANCE FOR BRIEFS

**9th Cir. Case Number**    22-55063

I am the attorney or self-represented party.

**This brief contains 8,222 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[X] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [X] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** s/ *Joseph H. Lang, Jr.*        **Date:**    October 24, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: October 24, 2022

CARLTON FIELDS, P.A.

s/ *Joseph H. Lang, Jr.*
Joseph H. Lang, Jr.

*Attorneys for Appellant*
*Sigma Corporation*

-43-