**No. 22-55063**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

––––––––––––––––––

ISLAND INDUSTRIES, INC., Relator,
Plaintiff-Appellee,

UNITED STATES OF AMERICA, ex rel. ISLAND INDUSTRIES, INC.,
Plaintiff,

v.

SIGMA CORPORATION,
Defendant-Appellant,

VANDEWATER INTERNATIONAL, INC.; NEIL RUEBENS; ANVIL
INTERNATIONAL, LLC; SMITH COOPER INTERNATIONAL; ALLIED RUBBER &
GASKET COMPANY,
Defendants.

––––––––––––––––––

On Appeal from the United States District Court
for the Central District of California

––––––––––––––––––

## SUPPLEMENTAL BRIEF FOR THE UNITED STATES OF AMERICA AS
## AMICUS CURIAE SUPPORTING APPELLEE AND AFFIRMANCE

––––––––––––––––––

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

MICHAEL S. RAAB
CHARLES W. SCARBOROUGH
ANNA O. MOHAN
*Attorneys, Appellate Staff*
*Civil Division, Room 7533*
*U.S. Department of Justice*
*950 Pennsylvania Avenue, NW*
*Washington, DC 20530*
*(202) 514-3159*
*anna.mohan@usdoj.gov*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ............................................................................1

ARGUMENT ..............................................................................................................2

I.     *Universal Fruits* Was Wrongly Decided And Its Core Assumption Was Undermined When The CIT Correctly Held That It Lacks Jurisdiction Over Any FCA Actions ...........................................................................2

II.     *Universal Fruits* Should Not Be Extended To This Context Because *Qui Tam* Suits Initiated By Relators Are Not Suits Commenced By The United States..................................................................................................8

CONCLUSION ........................................................................................... 15

# TABLE OF AUTHORITIES

**Cases:**                                                                        **Page(s)**

*American Textile Mfrs. Inst., Inc. v. The Limited, Inc.,*
190 F.3d 729 (6th Cir. 1999) ............................................................ 10

*K Mart Corp. v. Cartier, Inc.,*
485 U.S. 176 (1988) ................................................................... 4, 12

*Nippon Miniature Bearing Corp. v. Weise,*
230 F.3d 1131 (9th Cir. 2000) ...................................................... 4, 5, 12

*Pentax Corp. v. Robison,*
125 F.3d 1457 (Fed. Cir. 1997) ......................................................... 6

*Rockwell Int'l Corp. v. United States,*
549 U.S. 457 (2007) ...................................................................... 9

*Seaside Realty Corp. v. United States,*
607 F. Supp. 1481 (Ct. Int'l Trade 1985) ............................................... 6

*United State v. Ahmad,*
213 F.3d 805 (4th Cir. 2000) ............................................................ 6

*United States v. Blum,*
858 F.2d 1566 (Fed. Cir. 1988) ......................................................... 6

*United States v. Duncan,*
693 F.2d 971 (9th Cir. 1982) ............................................................ 6

*United States v. Rose,*
570 F.2d 1358 (9th Cir. 1978) ........................................................... 6

*United States v. Universal Fruits & Vegetables Corp.,*
370 F.3d 829 (9th Cir. 2004) ................................................. 1, 2, 3, 4, 7, 14

*United States v. Universal Fruits & Vegetables Corp.,*
433 F. Supp. 2d 1351 (Ct. Int'l Trade 2006) ................................... 2, 3, 4, 14

*United States ex rel. Body v. Blue Cross & Blue Shield of Ala., Inc.*
156 F.3d 1098 (11th Cir. 1998) ......................................................... 7

*United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.,*
839 F.3d 242 (3d Cir. 2016) ............................................................ 10

*United States ex rel. Doe v. Staples, Inc.,*
773 F.3d 83 (D.C. Cir. 2014) ........................................................ 10

*United States ex rel. Drake v. Norden Sys., Inc.,*
375 F.3d 248 (2d Cir. 2004) .......................................................... 8

*United States ex rel. Eisenstein v. City of New York,*
556 U.S. 928 (2009) ............................................................. 12, 13

*United States ex rel. Felton v. Allflex USA, Inc.,*
989 F. Supp. 259 (Ct. Int'l Trade 1997) ............................ 10, 12, 14

*United States ex rel. Huangyan Imp. & Exp. Corp. v. Nature's Farm Prods., Inc.,*
370 F. Supp. 2d 993 (N.D. Cal. 2005) ............................................ 9

*United States ex rel. Kelly v. Boeing Co.,*
9 F.3d 743 (9th Cir. 1993) ................................................. 10-11, 11

*United States ex rel. Simoneaux v. E.I. duPont de Nemours & Co.,*
843 F.3d 1033 (5th Cir. 2016) ......................................................15

*United States ex rel. Sutton v. Double Day Office Servs., Inc.,*
121 F.3d 531 (9th Cir. 1997) .......................................................... 5

*United States ex rel. Tamanaha v. Furukawa Am., Inc.,*
445 F. App'x 992 (9th Cir. 2011) .................................................. 10

*United States ex rel. Vallejo v. Investronica, Inc.,*
2 F. Supp. 2d 330 (W.D.N.Y. 1998) .................................... 9-10, 12

*Vermont Agency of Natural Resources v. United States ex rel. Stevens,*
529 U.S. 765 (2000) ............................................................. 10, 11

*Yates v. Pinellas Hematology & Oncology, P.A.,*
21 F.4th 1288 (11th Cir. 2021) ......................................... 1, 11, 12

**Statutes:**

False Claims Act (FCA):
31 U.S.C. § 3729(a)(1) ................................................................. 5
31 U.S.C. § 3729(a)(1)(G) ............................................................ 5
31 U.S.C. § 3730(a) ..................................................................... 9

31 U.S.C. § 3730(b) ............................................................ 8, 9
31 U.S.C. § 3730(b)(1) ................................................ 8, 11, 12
31 U.S.C. § 3730(b)(2) ......................................................... 9
31 U.S.C. § 3730(b)(4)(A) .................................................... 9
31 U.S.C. § 3730(c)(1) ......................................................... 9
31 U.S.C. § 3730(c)(2)(A) ..................................................... 9
31 U.S.C. § 3730(c)(2)(B) ..................................................... 9
31 U.S.C. § 3730(d)(1) ......................................................... 9
31 U.S.C. § 3732(a) ............................................................. 7

18 U.S.C. § 542 .................................................................. 6

18 U.S.C. § 545 .................................................................. 6

18 U.S.C. § 1001 ................................................................ 6

19 U.S.C. § 1592 ................................................................ 6

28 U.S.C. § 1582 ..................................................... 4, 8, 9, 10, 12, 14

28 U.S.C. § 1582(1) ............................................................ 6

28 U.S.C. § 1582(3) .................................................... 2, 3, 5, 6, 7

28 U.S.C. § 2107(b) ........................................................... 13

## Rules:

Fed. R. App. P. 4(a)(1)(B) ................................................... 13

Fed. R. Civ. P. 3 ............................................................... 8

## Legislative Material:

S. Rep. No. 111-10 (2009) .................................................. 15

## Other Authority:

*Duty*, Black's Law Dictionary (11th ed. 2019) ...................... 5

iv

## INTRODUCTION AND SUMMARY

Relator Island Industries brought this False Claims Act (FCA) case against defendant Sigma Corporation, alleging that Sigma submitted false statements to the United States for the purposes of avoiding an obligation to pay antidumping duties owed on products it imported between 2010 and 2018. The United States declined to intervene, and the relator litigated the case for approximately three years, through trial. The jury returned a verdict against Sigma, and the district court entered final judgment, awarding $24,256,638.09 in damages and penalties. On appeal, the United States filed an amicus brief in support of the relator and arguing for affirmance of the district court's judgment because the United States has a substantial interest in the proper interpretation of the FCA, which is the government's primary tool to combat fraud involving federal programs and to recover damages from that fraud.

This Court ordered supplemental briefing on the question "whether the district court lacked subject-matter jurisdiction over this suit" under *United States v. Universal Fruits & Vegetables Corp.*, 370 F.3d 829 (9th Cir. 2004). Order, Jan. 23, 2023 (per curiam) (first citing *Universal Fruits*, 370 F.3d at 833-37; and then citing *Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1307 (11th Cir. 2021)). *Universal Fruits* does not require dismissal of this suit. In that case, the United States brought an FCA action against an importer based on the importer's use of fraud to evade antidumping duties it owed. This Court held that the action fell within the exclusive jurisdiction of the Court of International Trade (CIT)—and thus the district court lacked

jurisdiction—because the action was "commenced by the United States[] … to recover customs duties," 28 U.S.C. § 1582(3). After the case was transferred, the CIT concluded that it did not, in fact, have jurisdiction over the suit. *See United States v. Universal Fruits & Vegetables Corp.*, 433 F. Supp. 2d 1351 (Ct. Int'l Trade 2006). As the CIT correctly recognized, an FCA action does not seek to recover "customs duties" a defendant owes by virtue of having imported a product; rather, an FCA action imposes liability in the form of damages and penalties for a defendant's fraud on the government. At the very least, there is no basis for extending *Universal Fruits* to this context because this suit was commenced by a relator, not the United States, and thus fails to satisfy a threshold requirement of § 1582(3). Accordingly, this Court should hold that the district court had subject-matter jurisdiction over this suit.

## ARGUMENT

**I.** *Universal Fruits* **Was Wrongly Decided And Its Core Assumption Was Undermined When The CIT Correctly Held That It Lacks Jurisdiction Over Any FCA Actions**

A. In *United States v. Universal Fruits & Vegetables Corp.*, 370 F.3d 829 (9th Cir. 2004), the United States filed an FCA action against the defendant in district court, alleging that the defendant fraudulently avoided paying customs duties on the goods it imported. *See id.* at 832. On appeal, this Court held that the district court lacked subject-matter jurisdiction over the suit. The Court observed that, under 28 U.S.C. § 1582(3), the CIT has "exclusive jurisdiction of any civil action which arises out of an import transaction and which is commenced by the United States[] … to recover

2

customs duties." 28 U.S.C. § 1582(3). The United States' FCA action was one "to recover customs duties" and so fell within the CIT's exclusive jurisdiction, the Court reasoned, because "at least part of the government's damages," if it prevailed, would "be 'customs duties,' namely the antidumping tariffs it claim[ed the defendant] fraudulently evaded." *Universal Fruits*, 370 F.3d at 835-36. The Court rejected the government's argument that the relief sought constituted "damages" under the FCA arising from the defendant's fraud, rather than "customs duties" owed in connection with an importation. *See id.* at 835-36.

The Court recognized that "the question of [the CIT's] jurisdiction to entertain FCA cases" was for the CIT (and the Federal Circuit) "to resolve." *Universal Fruits*, 370 F.3d at 836 n.13. Accordingly, the Court "direct[ed] the district court to transfer the case to the CIT so that the CIT c[ould] determine the question of its own jurisdiction." *Id.* at 836-37 (internal quotation marks omitted). The Court made clear, however, that it did not believe its decision would "operate[] effectively to preclude the government from employing the reverse false claims provision of the FCA in seeking to recover fraudulently evaded customs duties." *Id.* at 836 n.13. And the Court "decline[d] to address the question whether a *qui tam* relator could bring a reverse FCA action involving customs duties in the district courts." *Id.* at 837 n.14.

After the case was transferred, the CIT unequivocally held that FCA actions do not fall within its exclusive jurisdiction under 28 U.S.C. § 1582(3). *See United States v. Universal Fruits & Vegetables Corp.*, 433 F. Supp. 2d 1351 (Ct. Int'l Trade 2006). The

CIT concluded that an FCA action is not one "to recover customs duties," observing that "the relief granted under the FCA is for damages and civil penalties with no reference to [customs] duties." *Id.* at 1355. Because "a plain reading of the FCA does not provide for the recovery of any duties," the CIT concluded that the government's claims did not fall within the plain meaning of § 1582(3). *Id.*

B. The CIT's holding undermined a core assumption of this Court's decision in *Universal Fruits*: that the CIT would conclude it had jurisdiction over customs-related FCA actions and thus the government would not be "effectively … preclude[d]" from "employing the reverse false claims provision of the FCA in seeking to recover fraudulently evaded customs duties." *Universal Fruits*, 370 F.3d at 836 n.13. The CIT, moreover, was correct to hold that district courts, not the CIT, have jurisdiction over customs-related FCA actions.

Contrary to Sigma's suggestion (Sigma Suppl. Br. 7-9), when Congress enacted 28 U.S.C. § 1582, it did not "commit to the [CIT]'s exclusive jurisdiction *every* suit … challenging customs-related laws and regulations." *K Mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 188 (1988); *see Nippon Miniature Bearing Corp. v. Weise*, 230 F.3d 1131, 1135 (9th Cir. 2000). In fact, Congress considered and "reject[ed] bills that would have implemented such a categorical approach," choosing instead to adopt a scheme that "delineat[ed] precisely the particular customs-related matters over which the [CIT] would have exclusive jurisdiction." *K Mart*, 485 U.S. at 188; *see Nippon Miniature Bearing*, 230 F.3d at 1138. Thus, the question this Court and the CIT faced in *Universal*

4

*Fruits* was whether an FCA action falls within the "precise contours" of the CIT's jurisdictional grant under 28 U.S.C. § 1582(3). *Nippon Miniature Bearing*, 230 F.3d at 1137.

The CIT correctly concluded that it does not. Section 1582(3) vests the CIT with jurisdiction over actions arising out of import transactions that are commenced by the United States to "recover customs duties." 28 U.S.C. § 1582(3). A customs-related FCA action does not seek to recover customs duties—that is, the "tax[es] levied on [the] imported … commodity," *Duty*, Black's Law Dictionary (11th ed. 2019). Rather, it seeks to recover statutory damages and penalties based upon the defendant's fraud, *see* 31 U.S.C. § 3729(a)(1).[1] Liability in the FCA context does not arise from the importation of goods subject to a duty but rather from the fraudulent act of concealing or avoiding the monetary obligation. *Cf. United States ex rel. Sutton v. Double Day Office Servs., Inc.*, 121 F.3d 531, 534 (9th Cir. 1997) (holding FCA action not preempted by the Service Contract Act because "[t]he FCA attaches liability to the claim for payment, not to the underlying activity").

Courts accordingly have distinguished for jurisdictional purposes between claims to recover duties based upon the act of importation and claims to recover civil penalties for false statements or fraudulent schemes to avoid payment during the

---

[1] Violators of the FCA are "liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, [as adjusted for inflation] …, plus 3 times the amount of damages which the Government sustains." 31 U.S.C. § 3729(a)(1)(G).

importation. Jurisdiction for the latter is not determined by the "customs duties" provision, 28 U.S.C. § 1582(3), but by other jurisdictional provisions. For example, 19 U.S.C. § 1592 authorizes the government to recover civil penalties for misrepresentations during importation, and those claims are litigated in the CIT pursuant to 28 U.S.C. § 1582(1), not § 1582(3). *See United States v. Blum*, 858 F.2d 1566, 1568-69 (Fed. Cir. 1988) (distinguishing claims for penalties under § 1592(c) and claims for duties under § 1592(d)); *Pentax Corp. v. Robison*, 125 F.3d 1457, 1462 (Fed. Cir. 1997) (describing "28 U.S.C. §§ 1582(1) & (3) (1994)" as "permit[ting] the court to hear the government's claims for [§] 1592(c) penalties and [§] 1592(d) duties").

Other remedies may be pursued only in the district courts. If, for instance, the United States chooses to pursue a civil forfeiture remedy under 18 U.S.C. § 545, based upon customs fraud, the action is brought in the district courts rather than in the CIT. *See United State v. Ahmad*, 213 F.3d 805, 809-10 (4th Cir. 2000); *see also Seaside Realty Corp. v. United States*, 607 F. Supp. 1481, 1482-83 (Ct. Int'l Trade 1985). Similarly, if the United States pursues criminal penalties under either the customs-specific fraud provision, 18 U.S.C. § 542, *see United States v. Rose*, 570 F.2d 1358 (9th Cir. 1978), or the general criminal fraud statute, 18 U.S.C. § 1001, *see United States v. Duncan*, 693 F.2d 971, 975 (9th Cir. 1982), the criminal prosecution takes place in district court. Likewise, civil remedies under the general civil fraud statute—the FCA—are not controlled by the "customs duties" provision in 28 U.S.C. § 1582(3). Indeed, the FCA specifies that a suit under that act must be filed in "any judicial district in which the

defendant … can be found, resides, transacts business, or in which any act proscribed by [§] 3729 occurred." 31 U.S.C. § 3732(a).

As this Court observed in *Universal Fruits*, the extent of harm to the government—i.e., the damages—in a customs-related FCA case generally will be calculated based upon the amount of the duty avoided. 370 F.3d at 835-36; *see* Sigma Suppl. Br. 2. But that does not mean that FCA damages are the same as "customs duties." And it does not distinguish customs cases from the other situations in which FCA suits have been upheld against arguments that available administrative remedies were exclusive. For instance, FCA liability in the Medicare context requires a showing that the claim for payment was inappropriate under the Medicare Act and a determination of what the correct amount of reimbursement would have been (for purposes of calculating damages). Yet, as the Eleventh Circuit has held, such a suit does not "arise under" the Medicare Act because liability depends upon the showing of fraud, not merely an incorrect payment. *United States ex rel. Body v. Blue Cross & Blue Shield of Ala., Inc.* 156 F.3d 1098, 1105-06 (11th Cir. 1998) (FCA action does not arise under Medicare Act because it is based on submission of fraudulent statement, not the underlying statute).

In short, this Court's decision in *Universal Fruits* was flawed at the time it was issued and has subsequently been undermined. No other courts of appeals have endorsed this Court's analysis of 28 U.S.C. § 1582(3), and this Court has not addressed it since.

7

**II.**    ***Universal Fruits* Should Not Be Extended To This Context Because *Qui Tam* Suits Initiated By Relators Are Not Suits Commenced By The United States**

Although the government believes *Universal Fruits* was wrongly decided, the government recognizes that the decision is binding on this panel unless and until it is overruled by the en banc court. Even still, *Universal Fruits* does not require dismissal of this suit, which was initiated and litigated by a relator, not the United States, and thus fails to satisfy a threshold requirement of 28 U.S.C. § 1582.

Section 1582, by its terms, applies only to a "civil action … which is commenced by the United States." 28 U.S.C. § 1582. The Federal Rules of Civil Procedure establish that a "civil action is commenced by filing a complaint with the court." Fed. R. Civ. P. 3. And in the case of a *qui tam* suit under the FCA, a relator, not the United States, files the complaint and thus "commences" the civil action. *See United States ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 251 (2d Cir. 2004) ("A relator commences a false claim action by filing the complaint under seal and giving the government an opportunity to intervene.").

The FCA's *qui tam* provisions reflect this distinction between a relator's role in commencing a *qui tam* action and the government's role in deciding whether to proceed with that action. The FCA authorizes a "private person[]" (i.e., *qui tam* relator) to "bring a civil action for a violation of [the FCA]." 31 U.S.C. § 3730(b), (b)(1). Once the *qui tam* complaint is "served on the Government," the Government can decline to intervene (which it frequently does) or "[t]he Government may elect to

8

intervene[,] … proceed with," *id.* § 3730(b)(2), "conduct[]," *id.* § 3730(b)(4)(A), and "prosecut[e]" the action, *id.* § 3730(c)(1). Either way, the FCA consistently refers to the *qui tam* relator as the person who "brought" or "initiated" the action in the first instance. *See, e.g., id.* § 3730(d)(1) ("If the Government proceeds with an action *brought* by a person under subsection (b), such person shall" receive a portion of any award (emphasis added)); *id.* § 3730(c)(2)(A), (B) (If the Government intervenes, the Government "may dismiss" or "settle the action … notwithstanding the objections of the person *initiating* the action" (emphasis added)). The FCA's text thus supports the conclusion that an FCA action "brought" by a relator is not "commenced by the United States." *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 477 (2007) ("The statute thus … draws a sharp distinction between actions brought by the Attorney General under § 3730(a) and actions brought by a private person under § 3730(b).").[2]

For these reasons, district courts have consistently held that a *qui tam* FCA action that relates to customs duties does not fall within the CIT's exclusive jurisdiction under 28 U.S.C. § 1582. *See United States ex rel. Huangyan Imp. & Exp. Corp. v. Nature's Farm Prods., Inc.*, 370 F. Supp. 2d 993, 997-98 (N.D. Cal. 2005) (intervened); *United States ex rel. Vallejo v. Investronica, Inc.*, 2 F. Supp. 2d 330, 334

---

[2] Contrary to Sigma's suggestion, this analysis does not "fail[] to account for the statutory language addressing the Attorney General's bringing suit," Sigma Suppl. Br. 11. The Attorney General, of course, "may bring a civil action" under the FCA. 31 U.S.C. § 3730(a). But the statute's *qui tam* provisions independently authorize a "private person[]" to "bring" an FCA action "for the person and for the United States Government." *Id.* § 3730(b), (b)(1).

(W.D.N.Y. 1998) (declined).  The CIT likewise has concluded that it lacks jurisdiction over such suits because they are "'commenced by' the private actor, not the Government."  *United States ex rel. Felton v. Allflex USA, Inc.*, 989 F. Supp. 259, 263 (Ct. Int'l Trade 1997).  And other courts of appeals have decided appeals involving *qui tam* FCA actions arising out of customs duties, without considering whether the district courts lacked subject-matter jurisdiction under 28 U.S.C. § 1582.  *See American Textile Mfrs. Inst., Inc. v. The Limited, Inc.*, 190 F.3d 729, 737 (6th Cir. 1999) (dismissing customs-related FCA *qui tam* claim on the merits); *United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242 (3d Cir. 2016) (reversing dismissal without leave to amend of customs-fraud *qui tam* complaint); *United States ex rel. Tamanaha v. Furukawa Am., Inc.*, 445 F. App'x 992, 993 (9th Cir. 2011) (allowing *qui tam* FCA proceeding alleging undervaluation of imported merchandise for the purpose of evasion of customs duties to move forward); *United States ex rel. Doe v. Staples, Inc.*, 773 F.3d 83, 84 (D.C. Cir. 2014) (dismissing action on other jurisdictional grounds under public disclosure bar).

Sigma offers no contrary authority (and the government is not aware of any) concluding that an FCA suit initiated by a relator is "commenced by the United States" for purposes of 28 U.S.C. § 1582.  Instead, Sigma urges this Court to disregard these decisions based on a mischaracterization of the Supreme Court's holding in *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765 (2000), and this Court's holding in *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743 (9th Cir.

1993). *See* Sigma Suppl. Br. 3-4, 10-11. In *Stevens*, the Supreme Court held that a *qui tam* relator has Article III standing to bring an FCA claim. *See* 529 U.S. at 771-77. In reaching that conclusion, the Court observed that a relator is in some respects acting as an "agent" of the United States but ultimately made clear that the FCA also "gives the relator himself an interest *in the lawsuit*, and not merely the right to retain a fee out of the recovery." *Id.* at 772; *see* 31 U.S.C. § 3730(b)(1) (a private person brings a civil action "for the person and for the United States Government"). The Court also applied the doctrine that "the assignee of a claim has standing to assert the injury in fact suffered by the assignor," 529 U.S. at 773, but emphasized that a *qui tam* relator sues only as "a *partial* assignee of the United States," *id.* at 773 n.4; *see id.* at 773 ("The FCA can reasonably be regarded as effecting a partial assignment of the Government's damages claim."). Similarly, in *Kelly*, this Court noted that a relator "effectively stands in the shoes of the government," 9 F.3d at 748, but did so only in passing dicta before reaching the same holding as the Supreme Court in *Stevens*. As these cases recognize, a relator acts at least in part on his own behalf in pursing an FCA claim, and thus a relator-initiated suit is not the same as a suit commenced by the United States.

It is likewise irrelevant that, in other contexts, courts have applied to *qui tam* suits limitations that also apply to United States-initiated FCA actions. *Contra* Sigma Suppl. Br. 5-7. In *Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288 (11th Cir. 2021), for example, the Eleventh Circuit held that damages and statutory penalties

11

awarded in a *qui tam* action are subject to the Eighth Amendment's prohibition on excessive fines. *Id.* at 1308. The court recognized that this prohibition "applies only to payments imposed by the United States" but concluded that a *qui tam* recovery was such a payment because "all monetary awards in FCA qui tam actions … are mandated by the FCA, a federal law enacted by Congress" and because the United States is the "real party in interest" in FCA actions. *Id.* at 1308-10.

The Eleventh Circuit's analysis is inapplicable here. Congress's imposition of treble damages and statutory penalties via the FCA might mean that those fees are imposed by the United States, but it has no bearing on the question whether a particular FCA action was "commenced by the United States," the only question in this case. Nor does the fact that FCA actions are brought, in part, on behalf of the United States require a different result here. *See Investronica*, 2 F. Supp. 2d at 334; *Felton*, 989 F. Supp. at 263. Jurisdiction in a customs-related case "turns on the precise contours of the exclusive jurisdiction provided to the CIT." *Nippon Miniature Bearing*, 230 F.3d at 1137; *K Mart*, 485 U.S. at 188. And the precise contours of § 1582 specify that the CIT's jurisdiction extends only to suits "commenced by the United States," 28 U.S.C. § 1582, not to suits "brought in the name of the Government" or "for the United States" by a private person, 31 U.S.C. § 3730(b)(1).

Characterizing all *qui tam* FCA actions as "commenced by the United States" would also be anomalous in light of the Supreme Court's decision in *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928 (2009). There, the United States

12

declined to intervene in a *qui tam* FCA action. *See id.* at 930. The relator nonetheless argued that he was entitled to the extended 60-day appeal deadline that applies when the United States is a "party" to an action, *see* Fed. R. App. P. 4(a)(1)(B); 28 U.S.C. § 2107(b), because the United States was a real party in interest and would receive a portion of any recovery. *See Eisenstein*, 556 U.S. at 934. The Supreme Court rejected that argument, explaining that "Congress' choice of the term 'party' in Rule 4(a)(1)(B) and § 2107(b), and not the distinctive phrase, 'real party in interest,' indicates that the 60-day time limit applies only when the United States is an actual 'party' in *qui tam* actions—and not when the United States holds the status of 'real party in interest.'" *Id.* at 935. Similarly here, Congress's choice of the phrase "commenced by the United States" in § 1582, and not the distinctive phrase "brought for" or "in the name of" the United States, indicates that the CIT has exclusive jurisdiction only when the United States actually "commences" the suit—not when it is commenced by a relator on behalf of the United States.

That reasoning does not exalt form over substance, Sigma Suppl. Br. 7; it simply recognizes, as the *Eisenstein* Court did, that a court cannot "ignore the [statute]'s text" when it "hinges the applicability" of a particular provision on a requirement that is not satisfied, *Eisenstein*, 556 U.S. at 936-37. Nor is it reading *Eisenstein* "out of context," Sigma Suppl. Br. 11-12, to observe that the Supreme Court's application of the 30-day appeal deadline for private civil actions to relator-

13

initiated FCA actions makes little sense if all FCA actions are "commenced by the United States."

Finally, Sigma incorrectly suggests that distinguishing between relator- and United States-initiated FCA actions would create a "fractionalized" approach to judicial review inconsistent with Congress's intent in enacting 28 U.S.C. § 1582. *See* Sigma Suppl. Br. 7-9. As explained, the government does not believe the CIT has jurisdiction over *any* FCA actions—regardless of who initiates them—because they are not actions to recover customs duties. *See supra* pp. 4-7. At a minimum, however, this Court cannot ignore § 1582's text, which vests jurisdiction in the CIT only if the action is "commenced by the United States," 28 U.S.C. § 1582.

Sigma, moreover, fails to grapple with the implications of its own theory. As Sigma recognizes (Sigma Suppl. Br. 12-13), the CIT already has held that it lacks jurisdiction over FCA actions, regardless of whether they are initiated by the United States or a relator. *See Universal Fruits*, 433 F. Supp. 2d at 1355 (United States-initiated action); *Felton*, 989 F. Supp. at 263 (*qui tam* action). If this Court accepts Sigma's invitation to extend *Universal Fruits* and hold that district courts also lack jurisdiction over both customs-related *qui tam* suits and suits initiated by the United States, it will effectively create a customs-related exception to the FCA within this circuit. This Court did not believe it was creating such an exception in *Universal Fruits*, *see* 370 F.3d at 836 n.13, and may well have reached a different result if it had anticipated that the CIT would disagree with its reasoning. To recognize such an exception would also be

14

flatly inconsistent with congressional intent, as Congress deliberately amended the FCA in 2009 to make clear that the statute applies to fraud arising from a failure to pay "tariffs on imported goods." S. Rep. No. 111-10, at 14 (2009); *id.* at 14 n.10 ("[T]he Committee believes that customs duties clearly fall within the new definition of the term 'obligation' … ."); *see United States ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*, 843 F.3d 1033, 1040 (5th Cir. 2016) ("[F]ailure to pay customs duties on mismarked goods can give rise to an FCA claim.").

## CONCLUSION

This Court should hold that the district court had jurisdiction over this suit.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney*
    *General*

MICHAEL S. RAAB
CHARLES W. SCARBOROUGH
 /s/ *Anna O. Mohan*
ANNA O. MOHAN
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7533*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue, NW*
  *Washington, DC 20530*
  *(202) 514-3159*

February 2023

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of this Court's January 23, 2023

Order because it does not exceed 15 pages in length. This brief also complies with

the typeface and type-style requirements of Federal Rule of Appellate Procedure

32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Garamond 14-

point font, a proportionally spaced typeface.


*s/ Anna O. Mohan*
ANNA O. MOHAN

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

_s/ Anna O. Mohan_
ANNA O. MOHAN