No. 22-55063

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

UNITED STATES EX REL. ISLAND INDUSTRIES, INC.,

*Plaintiff-Appellee,*

v.

SIGMA CORPORATION,

*Defendant-Appellant,*

VANDEWATER INTERNATIONAL, INC.; NEIL RUEBENS; ANVIL INTERNATIONAL, LLC; SMITH COOPER INTERNATIONAL; ALLIED RUBBER & GASKET COMPANY,

*Defendants.*

On Appeal from the United States District Court
for the Central District of California
Case No. 2:17-cv-4393 (Hon. R. Gary Klausner)

## SUPPLEMENTAL BRIEF OF ISLAND INDUSTRIES, INC. REGARDING THE DISTRICT COURT'S JURISDICTION

Nicole A. Saharsky
Kelly B. Kramer
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
(202) 263-3000
*nsaharsky@mayerbrown.com*
*kkramer@mayerbrown.com*

Matthew H. Marmolejo
C. Mitchell Hendy
MAYER BROWN LLP
333 S. Grand Avenue, 47th Floor
Los Angeles, CA 90071
(213) 229-9500
*mmarmolejo@mayerbrown.com*
*mhendy@mayerbrown.com*

*Counsel for Plaintiff-Appellee Island Industries, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES...................................................................ii

INTRODUCTION.................................................................................1

ARGUMENT .......................................................................................2

I.    The District Court Had Jurisdiction Over this Action...................2

    A.    The District Court Had Jurisdiction Under 28 U.S.C.
§ 1331 And 28 U.S.C. § 1582 Does Not Apply ........................ 2

    B.    *Universal Fruits* Is Not To The Contrary.............................. 4

    C.    The Court Should Decline Sigma's Invitation to
Rewrite Section 1582 .......................................................... 10

    D.    *Yates* Gives No Reason To Question Jurisdiction Here ...... 14

CONCLUSION ................................................................................. 15

CERTIFICATE OF COMPLIANCE.................................................. 16

CERTIFICATE OF SERVICE............................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*U.S. ex rel. Cimino v. Int'l Bus. Machines Corp.,*
3 F.4th 412 (D.C. Cir. 2021) ............................................................ 7

*United States ex rel. Eisenstein v. City of N.Y.,*
556 U.S. 928 (2009) .................................................................. 12, 13

*U.S. ex rel. Felton v. Allflex U.S.A., Inc.,*
989 F. Supp. 259 (C.I.T. 1997) ......................................................... 10

*U.S. ex rel. Huangyan Imp. & Exp. Corp. v. Nature's Farm Prods.,*
370 F. Supp. 2d 993 (N.D. Cal. 2005) ...................................... 2, 9, 10

*K Mart Corp. v. Cartier, Inc.,*
485 U.S. 176 (1988) .................................................................. 2, 14

*LeBlanc v. United States,*
50 F.3d 1025 (Fed Cir. 1995) ............................................................ 2

*Mortgages, Inc. v. U.S. Dist. Court,*
934 F.2d 209 (9th Cir. 1991) ............................................................ 9

*Padash v. INS,*
358 F.3d 1161 (9th Cir. 2004) .......................................................... 11

*Trayco, Inc. v. United States,*
994 F.2d 832 (Fed. Cir. 1993) ......................................................... 14

*United States v. Mackby,*
261 F.3d 821 (9th Cir. 2001) ........................................................... 14

*United States v. Universal Fruits & Vegetables Corp.,*
370 F.3d 829 (9th Cir. 2004) (*Universal Fruits*) ........................ passim

*United States v. Universal Fruits & Vegetables Corp.,*
433 F. Supp. 2d 1351 (C.I.T. 2006) (*Universal Fruits II*)................ 3, 6

*U.S. ex rel. Vallejo v. Investronica, Inc.,*
  2 F. Supp. 2d 330 (W.D.N.Y. 1998)..................................................... 10

*Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens,*
  529 U.S. 765 (2000)........................................................................ 7, 11

*Yates v. Pinellas Hematology & Oncology, P.A.,*
  21 F.4th 1288 (11th Cir. 2021) ................................................ 1, 14, 15

## Statutes, Regulations, and Rules

28 U.S.C. § 1331 ..................................................................................... 2

28 U.S.C. § 1582 .......................................................................... *passim*

28 U.S.C. § 2404 ................................................................................... 13

28 U.S.C. § 2412 ..................................................................................... 8

31 U.S.C. § 3729 ..................................................................................... 3

31 U.S.C. § 3730 .......................................................................... *passim*

Fed. R. Civ. P. 3 ................................................................................ 4, 12

## Other Authorities

Black's Law Dictionary (11th ed. 2019) .................................................. 4

# INTRODUCTION

On January 23, 2023, the Court directed the parties and the United States to file briefs addressing whether the district court lacked subject-matter jurisdiction in light of *United States v. Universal Fruits & Vegetables Corp.*, 370 F.3d 829, 832–37 (9th Cir. 2004) (*Universal Fruits*), and *Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1307 (11th Cir. 2021). Island submits this brief in response to that order.

*Universal Fruits* held that 28 U.S.C. § 1582 grants the Court of International Trade (CIT) exclusive jurisdiction over False Claims Act (FCA) actions to recover customs duties that are "commenced by the United States." 370 F.3d at 833–34 (quoting 28 U.SC. § 1582). That decision does not apply here, because this action was commenced by Island, a private relator. Sigma urges this Court to deem Island to be the same as the United States for purposes of Section 1582. But that would conflict with Section 1582's plain language, many provisions in the FCA, and decisions of the Supreme Court. And nothing in the Eleventh Circuit's decision in *Yates* is to the contrary; that case did not address what it means for an action to be "commenced by the United States."

1

## ARGUMENT

## I. The District Court Had Jurisdiction Over this Action

### A. The District Court Had Jurisdiction Under 28 U.S.C. § 1331 And 28 U.S.C. § 1582 Does Not Apply

District courts have jurisdiction over "civil actions arising under the . . . laws . . . of the United States." 28 U.S.C. § 1331. Actions under the FCA qualify because they are civil actions brought under a federal statute. *See U.S. ex rel. Huangyan Imp. & Exp. Corp. v. Nature's Farm Prods.*, 370 F. Supp. 2d 993, 997 (N.D. Cal. 2005) ("Generally, the district courts have federal question jurisdiction under 28 USC § 1331 over suits under the FCA.").[1]

The only way that the district court here would not have subject-matter jurisdiction is if some other court had exclusive jurisdiction over the case. *See K Mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 182–83 (1988). Sigma now contends that the CIT has exclusive jurisdiction under 28 U.S.C. § 1582 because this FCA case involves a failure to pay antidumping duties (a type of customs duty). Section 1582 provides that

---

[1]    Indeed, the Federal Circuit (whose precedents are binding on the CIT) has suggested that *qui tam* actions commenced by relators may be filed *only* in federal district court. *See LeBlanc v. United States*, 50 F.3d 1025, 1031 (Fed Cir. 1995) (citing 31 U.S.C. § 3732(a)).

the CIT "shall have exclusive jurisdiction of any civil action which arises out of an import transaction and which is commenced by the United States . . . (3) to recover customs duties." 28 U.S.C. § 1582.

Under Section 1582, four conditions must be met for the CIT to have exclusive jurisdiction: (1) the case must be a "civil action"; (2) the action must "arise[] out of an import transaction"; the (3) the action must be one "commenced by the United States"; and (4) the action must be one to "recover customs duties." *Universal Fruits*, 370 F.3d at 833–34.

At a minimum, the third condition for jurisdiction under Section 1582 is not met here because this lawsuit was commenced by Island—an FCA relator—and not the United States.[2] The phrase "commenced by

---

[2]     The fourth condition for jurisdiction is also not met because Island's FCA action against Sigma is not a civil action "to recover customs duties." 28 U.S.C. § 1582(3). The FCA is about deterring and remedying fraud perpetuated on the United States, and the cause of action does not depend on the subject matter of that fraud. This is reflected in the FCA's damages provision, which does not refer to "customs duties," but refers to a civil penalty set by Congress "plus 3 times the amount of damages which the Government sustains because of the act of" the violator. 31 U.S.C. § 3729(a)(1)(G). As the CIT explained when it concluded that it did not have jurisdiction to hear the *Universal Fruits* action after it was transferred to that court, "a plain reading of the FCA does not provide for the recovery of any duties, customs or otherwise." *United States v. Universal Fruits & Vegetables Corp.*, 433 F. Supp. 2d 1351, 1355 (C.I.T. 2006) (*Universal Fruits II*). In other words, the CIT found that the fact that the measure of damages turned on the amount of evaded

the United States" refers to cases in which the United States initiates the action by filing a complaint. *See Commencement of an action*, Black's Law Dictionary (11th ed. 2019) ("The time at which judicial or administrative proceedings begin, typically with the filing of a formal complaint."); Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."). Here, this complaint was filed by Island, a private company, *see* 2-ER-252–77, not the United States. Thus, by its plain terms, Section 1582 does not apply.

### B. *Universal Fruits* Is Not To The Contrary

In *Universal Fruits*, this Court held that an FCA suit brought by the United States to recover antidumping duties is within the exclusive jurisdiction of the CIT under 28 U.S.C. § 1582(3). After a years-long investigation, the United States "filed suit against Universal, alleging that . . . Universal had filed false customs documents indicating that South Korea, rather than China, was the origin of the garlic it was

---

antidumping duties does not transform this FCA action (seeking damages on top of mandatory civil penalties) into an action "to recover customs duties." Island recognizes that this Court held to the contrary in *Universal Fruits*. But it respectfully submits that *Universal Fruits* was wrongly decided and, in a case when it applies (not so, here), should be reconsidered by the *en banc* Court.

importing." 370 F.3d at 832. Universal moved to dismiss the complaint, arguing that the case fell within the exclusive jurisdiction of the CIT. *Id.* This Court agreed. *Id.* at 836–37.

This Court recognized that "Congress did not commit to the Court of International Trade's exclusive jurisdiction *every* suit . . . challenging customs-related law." 370 F.3d at 833 (quoting *K Mart Corp.*, 485 U.S. at 188). But the Court determined that the CIT had exclusive jurisdiction over that FCA case because all of the conditions set out in Section 1582 were met. *Id.* at 834–36. It was undisputed that the case was a civil action that arose out of an import transaction commenced by the United States; the parties' only dispute was about whether the action was one "to recover customs duties." *Id.* at 833–34. Universal argued that it was such an action because "the measure of the government's damages is essentially a tally of the duties it claims Universal owed multiplied by three"; the government argued that the suit was one "to recover damages and statutory penalties based on [Universal's] fraud." *Id.* at 834 (internal quotation marks omitted). The Court agreed with Universal, reasoning that the "reality" is that if the government succeeded "at least part of the government's damages will be 'customs duties.'" *Id.* at 835.

This Court remanded with instructions to transfer the case to the CIT. 370 F.3d at 837. The CIT subsequently held that it did *not* have jurisdiction over the case under Section 1582, explaining that "a plain reading of the FCA does not provide for the recovery of any duties, customs or otherwise"; instead, "the FCA provides for three times the amount of damages the government sustains . . . plus civil penalties." *Universal Fruits II,* 433 F. Supp. 2d at 1355. Thus, as the law now stands, the United States cannot file FCA actions relating to customs duties in either the CIT or in any district court in the Ninth Circuit.

*Universal Fruits* does not apply here because this is not an FCA case "commenced by the United States." In *Universal Fruits*, the complaint was filed by the United States; there was no private relator involved. 370 F.3d at 832. Accordingly, the parties agreed that the action was one "commenced by the United States" within the meaning of Section 1582. *Id.* at 833. Here, by contrast, the action was filed by a private relator under the FCA's *qui tam* provisions. 2-ER-252–77. As many provisions in the FCA make clear, a private relator simply is not the same party as the United States. That critical difference makes *Universal Fruits* and Section 1582 inapplicable here. *See* 370 F.3d at 837 n.14

(Court declining to decide whether its decision applies to suits brought by *qui tam* relators).

"An FCA action may be commenced in one of two ways." *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 769 (2000). The United States may commence an FCA case by filing a civil action. *Id.* (citing 31 U.S.C. § 3730(a)). Or "a private person (the relator) may bring a qui tam civil action for the person and for the United States Government against the alleged false claimant." *Id.* (citing 31 U.S.C. § 3730(b)(1); internal quotation marks omitted). The relevant statute clearly distinguishes between the plaintiffs in those two types of cases, specifying that the first is brought by "the Attorney General," 31 U.S.C. § 3730(a), and that the second is brought by "a person," *id.* § 3730(b) (subsection title refers to "Actions by Private Persons").

When a private person initiates an FCA action, he or she must follow a specific statutory process. "To commence a qui tam action under the FCA, a relator files his complaint under seal . . . ." *U.S. ex rel. Cimino v. Int'l Bus. Machines Corp.*, 3 F.4th 412, 415 (D.C. Cir. 2021) (citing 31 U.S.C. § 3730(b)(2)). Next, the relator must serve the United States with a "copy of the complaint and written disclosure of substantially all

material evidence and information" supporting the allegations. 31 U.S.C. § 3730(b)(2). The United States then has an opportunity to investigate the claims and determine whether to intervene. *Id.* § 3730(b)(2). If the government intervenes, it assumes "primary responsibility for prosecuting the action," *id.* § 3730(c)(1); if not, the relator has "the right to conduct the action," *id.* § 3730(c)(3). An FCA action brought by the United States does not go through these initial steps (because the government has already investigated the allegations). *Id.* § 3730(a).

Just as the FCA provides different procedures at the beginning of a case depending on who brought the action, so too at the end. A prevailing defendant might be entitled to recover certain expenses, but the FCA adopts different standards depending on who brought the suit. In FCA cases "brought . . . by the United States," the defendant can obtain "fees and other expenses" unless the Court finds that "the position of the United States was substantially justified or that special circumstances make an award unjust." 31 U.S.C. § 3730(g) (incorporating 28 U.S.C. § 2412(d)). On the other hand, in cases brought by a relator, a prevailing defendant can recover attorneys' fees from the relator, only if the court "finds that the claim of the person bringing the action was clearly

8

frivolous, clearly vexatious, or brought primarily for purposes of harassment." 31 U.S.C. § 3730(d)(4).

Those provisions of the FCA reflect "a dichotomy between 'private persons' (i.e., relators) and 'the Government.'" *Huangyan Imp. & Exp. Corp.*, 370 F. Supp. 2d at 997. "[I]n the FCA, the relator is referred to as 'the person *bringing* the action' or 'the person *initiating* the action,'" while the United States "'may elect to *intervene* and *proceed* with the action." *Id.* A lawsuit "can only be commenced once." *Id.* In a *qui tam* suit, even if the United States later intervenes in the lawsuit, that does not make it one "commenced" by the United States. *Id.* Instead, "the relator commences the suit," and "whatever the United States may later do, it does not also commence the suit." *Id.*

Here, Island "commenced" this action by filing the complaint. The United States has not intervened in the lawsuit. 5-ER-1068 (Dkt. Entry No. 28); *see also* Br. of Appellant Sigma Corp. 13, 18; Reply Br. of Appellant Sigma Corp. 2. (Even if it did, the relator would "remain[ ] as a qui tam plaintiff," *Mortgages, Inc. v. U.S. Dist. Court,* 934 F.2d 209, 210 (9th Cir. 1991), and would remain the party that "commenced" the case.) The United States filed a statement of interest in the district court, *see*

5-ER-1078 (Dkt. Entry No. 254), and an *amicus* brief in this Court, *see* Br. for the United States (Dkt. Entry No. 38). But both those activities occurred after Island "commenced" this lawsuit, and they do not change the fact that Island is the party that originally brought the suit by filing the complaint.

This Court's holding in *Universal Fruits* therefore does not apply here. Under the plain text of Section 1582, this is not a suit "commenced by the United States" and so the district court had jurisdiction over the case. Accordingly, for that reason, every court that has addressed the question—including the CIT itself—has held that relator-initiated FCA actions fall outside Section 1582. *See Huangyan Imp. & Exp. Corp.*, 370 F. Supp. 2d at 998; *U.S. ex rel. Vallejo v. Investronica, Inc.*, 2 F. Supp. 2d 330, 334 (W.D.N.Y. 1998); *U.S. ex rel. Felton v. Allflex U.S.A., Inc.*, 989 F. Supp. 259, 260 (C.I.T. 1997).

## C. The Court Should Decline Sigma's Invitation to Rewrite Section 1582

Apparently recognizing that Island (not the United States) commenced this litigation, Sigma asks this Court to "deem" this relator-initiated action "to be an action commenced by the United States," because a relator "acts as both an agent of the United States and as a

10

partial assignee of the United States." Supp. Br. of Appellant Sigma Corp. (Supp. Br.) at 3. The Court should decline that invitation because it would do great violence to the text of Section 1582 and the FCA.

As noted, many provisions of the FCA expressly distinguish between cases brought by relators and cases brought by the United States. Holding that an FCA case brought by a relator is actually one brought by the United States would rewrite those provisions and blur the distinction between the two types of cases. That would go against the statutory text, especially Sections 3730(a) and (b), which separately refer to actions brought by "the Attorney General" and by "[p]rivate [p]ersons." 31 U.S.C. 3730(a)-(b); *see Padash v. INS*, 358 F.3d 1161, 1170–71 (9th Cir. 2004) (Court should not interpret a statute "in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous"; brackets omitted). It also would diverge from the Supreme Court's recognition that "[a]n FCA action may be commenced in one of two ways." *Vt. Agency of Nat. Res.*, 529 U.S. at 769.

That a relator brings a *qui tam* suit "in the name of the Government," 31 U.S.C. § 3730(b), does not make a *qui tam* suit one "commenced by" the government. In a *qui tam* suit, the party filing the

complaint is the relator, not the United States, 31 U.S.C. § 3730(b), and the filing of the complaint is the action that "commence[s]" the lawsuit, Fed. R. Civ. P. 3. A *qui tam* suit is brought on behalf of the United States, but the United States is not the party that actually filed the action.

The Supreme Court made that point in *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933 (2009). In that FCA case, a *qui tam* relator filed the complaint and then the United States declined to intervene in the action. *Id.* at 930. The Supreme Court held that the United States was not a "party" for purposes of the time limit for filing an appeal. *Id.* at 930–31. The Court explained that even though the United States is a "real party in interest" in an FCA suit, that does not make it a "party"; it simply means that its "interests may be represented in litigation by another." *Id.* at 930, 934–35. That same logic applies here. A *qui tam* suit is brought *on behalf of* the United States, but it is not commenced *by* the United States.

Sigma contends that *Eisenstein* is irrelevant because it is about "appellate timing and Government intervention." Supp. Br. 11. That misses the point, which is that the Supreme Court recognized that even when the United States intervenes and becomes a party in an FCA case

(which has not happened here), the relator remains a party with interests independent from the United States. Sigma claims that this relator-initiated case is "in reality, an action 'commenced by the United States'" because a relator is "both an agent of the United States as well as a partial assignee who 'stands in the shoes' of the United States." Supp. Br. 5. But *Eisenstein* makes clear that the fact that a *qui tam* relator is representing the interests of the United States does not equate it to the United States or make it a mere "agent" of the United States.

The bottom line is that the statutory text simply does not support Sigma's position. Sigma essentially asks this Court to rewrite Section 1582 to say: "The [CIT] shall have exclusive jurisdiction of any civil action which arises out of an import transaction and which is commenced by *or on behalf of* the United States." But if that is what Congress intended, it would have said so. Indeed, Congress used that formulation in other statutes, but not in Section 1582. *See, e.g.*, 28 U.S.C. § 2404 ("A civil action for damages commenced by or on behalf of the United States or in which it is interested shall not abate on the death of a defendant . . ."). "To depart from the words Congress chose would infect the courts with the same jurisdictional confusion that Congress intended

to cure." *K Mart Corp.*, 485 U.S. at 189; *see also Trayco, Inc. v. United States*, 994 F.2d 832, 836–37 (Fed. Cir. 1993) (strictly applying Section 1582's grant of exclusive jurisdiction).  Indeed, in *K Mart* and *Trayco,* the Supreme Court and the Federal Circuit both rejected the policy argument that Sigma makes here, Supp. Br. 7, about how Congress supposedly wanted the CIT to have jurisdiction over all customs-related actions.  *See K Mart Corp.*, 485 U.S. at 188; *Trayco, Inc.*, 994 F.2d at 836.

### D.    *Yates* Gives No Reason To Question Jurisdiction Here

The Eleventh Circuit's decision in *Yates* does not undermine jurisdiction here.  In that case, the court held that penalties assessed in a *qui tam* FCA action could violate the Eighth Amendment's Excessive Fines Clause.  21 F.4th at 1308.  The Court explained that the Excessive Fines Clause "applies only to payments imposed by the United States (or the States) and payable to it (or them)."  *Id.*   The Court concluded that both are true in a non-intervened FCA action, because the penalties "are mandated by the FCA, a federal law enacted by Congress," and "[i]n a non-intervened action, the United States generally receives 70-75 percent of the recovery."  *Id.* ; *see also United States v. Mackby*, 261 F.3d 821, 830 (9th Cir. 2001) (reaching the same conclusion).

14

*Yates* says nothing about whether a non-intervened FCA action is one "commenced by the United States." And nothing in its logic suggests that a case brought by a private relator should be treated as one brought by the United States. The key question there was whether the FCA penalties were "imposed by the United States." 21 F.4th at 1308. They were because the penalties are imposed under the FCA, a federal statute; the "imposed by" analysis did not turn at all on who brought the lawsuit. *Id.* at 1308–09. Although *Yates* noted that, in a *qui tam* action, the relator is "filing suit on behalf of the United States," *id.* at 1309, the relator—not the United States—is still the one who "commenced" the case by filing the complaint. Thus, nothing in *Yates* calls into question the plain reading of Section 1582 as inapplicable to *qui tam* FCA suits.

## CONCLUSION

The district court had subject-matter jurisdiction, and this Court should affirm its judgment.

Respectfully submitted,

s/ *Kelly B. Kramer*

<table>
<tr><td>Nicole A. Saharsky</td><td>Matthew H. Marmolejo</td></tr>
<tr><td>Kelly B. Kramer</td><td>C. Mitchell Hendy</td></tr>
<tr><td>MAYER BROWN LLP</td><td>MAYER BROWN LLP</td></tr>
<tr><td>1999 K Street, NW</td><td>333 S. Grand Avenue, 47th Floor</td></tr>
<tr><td>Washington, DC 20006</td><td>Los Angeles, CA 90071</td></tr>
<tr><td>(202) 263-3000</td><td>(213) 229-9500</td></tr>
<tr><td>nsaharsky@mayerbrown.com</td><td>mmarmolejo@mayerbrown.com</td></tr>
<tr><td>kkramer@mayerbrown.com</td><td>mhendy@mayerbrown.com</td></tr>
</table>

*Counsel for Plaintiff-Appellee Island Industries, Inc.*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of this Court's January 23, 2023 Order because it does not exceed 15 pages in length.

This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

/s/ *Kelly B. Kramer*

*Counsel for Plaintiff-Appellee*
*Island Industries, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that all participants in this case are registered CM/ECF users and that, on February 21, 2023, service of the foregoing brief was accomplished electronically via the Court's CM/ECF system.

/s/ *Kelly B. Kramer*

*Counsel for Plaintiff-Appellee*
*Island Industries, Inc.*