**Case No. 22-55063**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

ISLAND INDUSTRIES, INC., *et al.*,

*Plaintiff-Appellee,*

v.

SIGMA CORPORATION, *et al.*,

*Defendant-Appellant.*

---

On Appeal from the United States District Court
for the Central District of California
L.T. Case No. 2:17-cv-04393-RGK-KS

---

## SECOND SUPPLEMENTAL BRIEF
## OF APPELLANT SIGMA CORPORATION

---

Michael L. Yaeger
CARLTON FIELDS, P.A.
405 Lexington Avenue, 36th Floor
New York, New York 10174
Telephone: (212) 785-2577

Joseph H. Lang, Jr.
CARLTON FIELDS, P.A.
4221 W. Boy Scout Boulevard
Suite 1000
Tampa, Florida 33607
Telephone: (813) 229-4253

*Attorneys for Appellant
Sigma Corporation*

# TABLE OF CONTENTS

*Page*

TABLE OF CONTENTS.................................................................................i

TABLE OF AUTHORITIES .......................................................................ii

ARGUMENT .............................................................................................. 1

I.     Title 19 and its regulations create a detailed and comprehensive legal regime, which includes specific provisions to address customs fraud. ................................................. 1

II.    19 U.S.C. § 1592(d) establishes that Customs shall require that lawful duties be restored as a remedy for fraud. ..................... 4

III.   The specific statute, 19 U.S.C. § 1592, must prevail over the general statute, the False Claims Act, as the exclusive remedy for addressing customs fraud. ........................................................ 5

CONCLUSION........................................................................................... 15

FORM 8.  CERTIFICATE OF COMPLIANCE FOR BRIEFS............... 17

CERTIFICATE OF SERVICE ................................................................. 18

i

# <u>TABLE OF AUTHORITIES</u>

<i><u>Page</u></i>

## <u>Cases</u>

*Akiak Native Cmty. v. EPA,*
    625 F.3d 1162 (9th Cir. 2010) ...................................................... 7–8

*BNSF Ry. Co. v. Clark Cty., Washington,*
    11 F.4th 961 (9th Cir. 2021) ........................................................... 12

*Fritz v. United States*,
    535 F.2d 1192 (9th Cir. 1976) ................................................... 14–15

*Greene v. United States,*
    79 F.3d 1348 (2d Cir.1996) ............................................................. 9

*Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n,*
    453 U.S. 1 (1981) ............................................................................. 9

*Morton v. Mancari,*
    417 U.S. 535 (1974) ..................................................................... 7, 8

*Radzanower v. Touche Ross & Co.,*
    426 U.S. 148 (1976) ..................................................................... 7–8

*Swinomish Indian Tribal Community v. BNSF Railway Co.,*
    951 F.3d 1142 (9th Cir. 2020) ................................................... 11–12

*United States v. Universal Fruits and Vegetables Corp.*,
    370 F.3d 829 (9th Cir. 2004) ............................................... 13–14, 15

*Wheeling-Pittsburgh Steel Corp. v. Mitsui & Co.,*
    221 F.3d 924 (6th Cir. 2000) ..................................................... 9–10

## TABLE OF AUTHORITIES
(continued)

*Page*

**Statutes**

19 U.S.C. § 1504(a)(1) ................................................................. 3

19 U.S.C. § 1514................................................................... 4, 13

19 U.S.C. § 1514(a) ...................................................... 2–3, 4, 5, 13

19 U.S.C. § 1517................................................................... 6

19 U.S.C. § 1517(a)(5)(A) ........................................................ 6

19 U.S.C. § 1517(d)(1)(E) ........................................................ 6

19 U.S.C. § 1592.......................................................... *passim*

19 U.S.C. § 1592(c)(1) ........................................................... 6

19 U.S.C. § 1619(a) ............................................................ 4–5

19 U.S.C. § 1619(c) ............................................................ 4–5

28 U.S.C. § 1582................................................................ 2, 14, 15

31 U.S.C. § 3729(a)(1) .......................................................... 6

**Rules and Regulations**

19 C.F.R. § 159.1 (Jan. 14, 2011) ............................................ 3

19 C.F.R. § 351.225 (2018) .................................................... 15

**Other Authorities**

H.R. Rep. No. 95-621 (1977) ................................................. 1–2

# ARGUMENT

This Court's May 26, 2023, Order requests supplemental briefs addressing "whether 19 U.S.C. § 1592 provides the exclusive means for recovering antidumping duties that an importer has fraudulently evaded paying through false statements on customs forms, or whether the False Claims Act may also be used to recover such duties." The answer is that 19 U.S.C. § 1592 provides the exclusive means to recover liquidated antidumping duties.

## I.   Title 19 and its regulations create a detailed and comprehensive legal regime, which includes specific provisions to address customs fraud.

Congress enacted a comprehensive customs legal regime it codified in, *inter alia*, Title 19 of the U.S. Code. (Reply Br. at 7–8). That legal framework encompasses antidumping duties and the manner in which the Department of Commerce ("Commerce") may issue orders imposing antidumping duties; the mechanisms used by Commerce to determine the scope of such orders; and the specific remedies and penalties for entering merchandise into the commerce of the United States by means of a materially false document. Indeed, Congress embraced uniformity within the comprehensive customs legal regime and intended customs-

related penalties to apply uniformly across all Customs districts. *See* H.R. Rep. No. 95-621, at 15 (1977) ("In any case of fraudulent violation of section 592(a), the maximum penalty retained is the domestic value of the merchandise. It is the intention of your committee that Customs will follow a standard formula in determining 'domestic value', and ***that this formula will be applied correctly and uniformly in all Customs districts***.") (Emphasis supplied.)

One important aspect of this comprehensive framework, and a way to ensure the uniformity Congress desired, is the grant of exclusive jurisdiction (in Title 28) to the Court of International Trade ("CIT") over civil actions to recover customs duties. Specifically, 28 U.S.C. § 1582 confers upon the CIT "exclusive jurisdiction of any civil action which arises out of an import transaction and which is commenced by the United States—. . . . (3) to recover customs duties."

Another important aspect of the legal framework concerns the concept of liquidation. Simply put, Congress identified liquidation as being a critically important event. In particular, Congress directed that liquidations are "final and conclusive upon all persons (including the United States…)," barring an applicable express exception. 19 U.S.C. §

1514(a). "Liquidation means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1 (Jan. 14, 2011). "Unless an entry of merchandise for consumption is extended" by CBP "or suspended as required by statute or court order . . . an entry of merchandise for consumption not liquidated within 1 year from . . . the date of entry of such merchandise [or several other events not applicable here] . . . shall be deemed liquidated at the rate of duty, value, quantity, and amount of duties asserted by the importer of record." 19 U.S.C. § 1504(a)(1).

The district court made a fundamental error when it framed the inquiry as whether the regulations on liquidation "limit" the False Claims Act ("FCA") and implicitly disparaged the liquidation process as a mere "regulatory scheme" that cannot "limit a statute that Congress passed." (Opening Br. at 32). The district court ignored that it was Congress itself that decided liquidation was "final and conclusive upon all persons (including the United States…)," barring an applicable express exception. 19 U.S.C. § 1514(a). Congress was neither subtle nor ambiguous in its choice of language. ***In this case, all relevant entries have been liquidated***. *See* Doc. 192 at 1 (PDF 2 of 13).

**II.    19 U.S.C. § 1592(d) establishes that Customs shall require that lawful duties be restored as a remedy for fraud.**

Congress did not overlook the possible need for the United States Customs and Border Protection ("Customs" or "CBP") to restore lawful duties in the case of fraud. Rather, Congress created a specific exception to the "final and conclusive" nature of liquidation set forth in 19 U.S.C. § 1514(a). Specifically, Congress enacted 19 U.S.C. § 1592(d) for this exact purpose, which provides that ***"Notwithstanding section 1514 of this title***, if the United States has been deprived of lawful duties, taxes, or fees as a result of a violation of subsection (a), the Customs Service shall require that [they] be restored, whether or not a monetary penalty is assessed." 19 U.S.C. § 1592(d) (emphasis supplied).

Therefore, Congress specifically addressed situations where importers knowingly violate obligations to pay antidumping duties. Through the enactment of 19 U.S.C. § 1592(d), Congress struck a considered balance between the "final and conclusive" nature of liquidation and the need to allow the Government to restore duties and collect penalties in the event of fraud. Importers are therefore *not* immune from liability where they knowingly violate obligations to pay antidumping duties. (Reply Br. at 14–15). Further, like the FCA, Title 19

provides its own provision for awards to third-parties who inform the federal government of fraud. *See* 19 U.S.C. § 1619(a), (c) (informers can receive awards in "an amount that does not exceed 25 percent of the net amount so recovered," but the amount awarded "may not exceed $250,000 for any case.") Of course, but for the specific exception from 19 U.S.C. § 1514(a) directing the restoration of duties in 19 U.S.C. § 1592(d), liquidated entries would not be recoverable. (Reply Br. at 10–11).

## III. The specific statute, 19 U.S.C. § 1592, must prevail over the general statute, the False Claims Act, as the exclusive remedy for addressing customs fraud.

The FCA is irreconcilable with the comprehensive customs legal regime created by Title 19. In this case, the relevant entries have been liquidated, which liquidation is "final and conclusive" unless Congress provides an exception. Congress provided such a limited exception in 19 U.S.C. § 1592(d), but it has never created a similar exception in the FCA. A party cannot use the FCA to restore duties, even when it does so under the guise of seeking FCA damages.

Certain provisions of 19 U.S.C. § 1592, along with other sections of Title 19, make clear that the comprehensive customs enforcement scheme is both more specific than, and irreconcilable with, the FCA. Most

notably, under § 1592, liability for fraud is limited to "the ***domestic*** value of the merchandise" (19 U.S.C. § 1592(c)(1) (emphasis supplied)), whereas liability under the FCA does not directly tie to or address importation. *See* 31 U.S.C. § 3729(a)(1).

Moreover, the Enforce and Protect Act, 19 U.S.C. § 1517, which was enacted in 2015, authorizes CBP to conduct investigations when CBP receives an allegation from a private party or a referral from a federal agency that merchandise is entering the customs territory of the United States through "evasion"—the act of entering merchandise into the customs territory by means of a document or act that results in an antidumping duty being reduced or not being applied. *See* 19 U.S.C. § 1517(a)(5)(A). If CBP ultimately determines that evasion has occurred, it may take a variety of actions, including "initiating proceedings under section 1592 . . ." 19 U.S.C. § 1517(d)(1)(E). Congress made no reference to the False Claims Act in this enactment.

In such circumstances, the relevant case law confirms that the more specific statutory regime (19 U.S.C. § 1592) prevails over the general statutory regime (the False Claims Act).

In *Morton v. Mancari,* 417 U.S. 535 (1974), the Supreme Court confronted an apparent conflict between the Indian Reorganization Act of 1934 and the Equal Employment Opportunity Act of 1972. The appellees, non-Indian Government employees, filed a class action and claimed that the "Indian Preference Statutes" were repealed by the 1972 Equal Employment Opportunity Act. *Id.* at 539. The Supreme Court disagreed and upheld the more specific act. "Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Id.* at 550–51. Likewise here, Title 19 creates a specific rule of finality and a narrow exception to that specific rule under 19 U.S.C. § 1592(d). The FCA, a general law, cannot be used to upset that carefully crafted and comprehensive customs legal regime.

This Court applied the same rule in *Akiak Native Cmty. v. EPA,* 625 F.3d 1162 (9th Cir. 2010). There, this Court faced an argument that the Clean Water Act should not be interpreted to repeal the Alaskan National Interest Lands Conservation Act's subsistence protection mandates because the CWA was argued to be a statute of general application and ANILCA was asserted to be a specific statute. This Court

disagreed not because it preferred a general enactment to a more specific one, but precisely because it found that the CWA was more specific.

> The Supreme Court made the distinction between general and specific statutes in *Morton,* however, by noting that the Indian preference statute was specific because it "appl[ied] to a very specific situation," while the Indian Reorganization Act was of "general application." Here, the CWA is the more specific statute with regard to the transfer of the NPDES permitting program because it lists specific criteria for the EPA to consider when evaluating a state program application for transfer of authority, while ANILCA does not address either the transfer from the EPA to a state or the NPDES program as a whole.

*Id.* at 1173 (internal citation omitted).

Likewise, in *Radzanower v. Touche Ross & Co.,* 426 U.S. 148 (1976), the Supreme Court resolved a conflict between the venue provisions of the National Bank Act and the Securities Exchange Act of 1934. It again ruled in favor of the more specific enactment: "It follows under the general principles of statutory construction discussed above that the narrowly drawn, specific venue provision of the National Bank Act must prevail over the broader, more generally applicable venue provision of the Securities Exchange Act." *Id.* at 158. Just as "[t]he 1934 Act was enacted primarily to halt securities fraud, not to regulate banks," *id.* at 157, the FCA was enacted primarily to combat fraud generally, not to regulate the

comprehensive customs legal regime. *See Greene v. United States,* 79 F.3d 1348, 1355 (2d Cir. 1996) ("When two statutes are in conflict, that statute which addresses the matter at issue in specific terms controls over a statute which addresses the issue in general terms, unless Congress has manifested a contrary aim.").

Similarly, in *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1 (1981), the Supreme Court addressed the question whether "the remedial devices provided in a particular Act are sufficiently comprehensive [such that] they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." *Id.* at 20. In that case, the Supreme Court concluded that the comprehensive enforcement mechanisms available in the Federal Water Pollution Control Act and the Marine Protection, Research, and Sanctuaries Act of 1972 made it "hard to believe that Congress intended to preserve the § 1983 right of action when it created so many specific statutory remedies. . . ." *Id.* The Court concluded that "the existence of these express remedies demonstrates not only that Congress intended to foreclose implied private actions but also that it intended to supplant any remedy that otherwise would be available under § 1983." *See Wheeling-*

*Pittsburgh Steel Corp. v. Mitsui & Co.*, 221 F.3d 924, 926 (6th Cir. 2000) ("A frequently stated principle of statutory construction is that when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies. When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.").

So too here. The customs legal regime provides specific remedies to the Government to combat fraud and restore proper antidumping duties. The comprehensive nature of the regime "makes it hard to believe that Congress intended" to allow individual relators to enforce customs laws when the Government has chosen not to do so. Indeed, at oral argument, Judge Friedland observed that "[i]t seems like 1592 exists and is more specific and seems to speak to this and there's a way that they can be brought" and asked "why can we jump to the False Claims Act and not use 1592 instead?" (Jan. 10, 2023, Oral Argument video at 46:30). Judge Friedland also noted an "intuitive plausibility about [Sigma's] obligation argument," (Jan. 10, 2023, Oral Argument video at 48:13), given that (i) Commerce decided, based on its own regulations, that it cannot retroactively order the assessment of antidumping duties on the products

at issue imported before October 30, 2020; (ii) the Government has not pursued an action under 19 U.S.C. § 1592(d); and (iii) the Government has not intervened in this case. Judge Watford also asked about the additional remedy in this case that Commerce has initiated: the actual refund of cash deposits made. (Jan. 10, 2023, Oral Argument video at 49:48). In these circumstances, it is indeed "hard to believe that Congress intended," 453 U.S. at 20, the oddity of allowing "a relator to say we still think the money is owed and we are collecting it." (Jan. 10, 2023, Oral Argument video at 48:35).

To be sure, a court should not seek to amplify a conflict between two statutes. In *Swinomish Indian Tribal Community v. BNSF Railway Co.*, 951 F.3d 1142 (9th Cir. 2020), this Court addressed an argument that the Interstate Commerce Commission Termination Act (ICCTA) preempted an earlier easement agreement between BNSF Railway Co. and the Swinomish Indian Tribal Community. Specifically, "BNSF contend[ed] . . . the ICCTA preempts the Agreement, the underlying federal common law, the Treaty of Point Elliott, and Indian Right of Way Act." *Id.* at 1151. This Court cited a guiding principle for deciding that case as follows: "To the extent two federal laws appear to conflict, we attempt to harmonize

them." *Id.* at 1156. In the circumstances presented in that case, this Court concluded that "[h]armonizing the Indian Right of Way Act and the ICCTA in this way does not unreasonably interfere with the purposes of the ICCTA, with the authority of the STB, or with rail transportation." *Id.* at 1160.

But some statutory conflicts cannot be harmonized, and when they arise one law must give way to the other. This Court concluded as much just one year after *Swinomish* when it refused to apply that decision to reach a similar result. Rather, in *BNSF Ry. Co. v. Clark Cty., Washington*, 11 F.4th 961 (9th Cir. 2021), this Court explained that *Swinomish* did not apply because, this time, the statute in conflict with the ICCTA was not as specific. The statute in *Swinomish*, the IRWA, "contains specific language about tribal rights to grant rights-of-way," and related regulations "expressly provide that it applies to railroads." *Id.* at 972**.** Moreover, the ICCTA "explicitly sought to minimize" its impact on statutes like the IRWA by providing that " '[n]othing in this title shall absolve the United States from any responsibility to Indians and Indian tribes.' " *Id.* In contrast, the statute in *BNSF*, the Gorge Act, "lack[ed] similarly specific language." *Id.*

-12-

In this case, of course, Congress has evinced no intent in the FCA or its amendments to disrupt the carefully crafted and comprehensive customs legal regime. On its face, 19 U.S.C. § 1514(a) provides that liquidations are "final and conclusive" on all parties, including the United States. By its plain terms, 19 U.S.C. § 1592(d) provides a limited exception to the finality of the liquidation provision contained in 19 U.S.C. § 1514. Had Congress wanted to expand this exception to include recovery under the False Claims Act, it would have made that intent clear by including similar language in the False Claims Act. It did not.

It bears emphasis that this Court has already determined that allowing the Government to recast alleged unpaid antidumping duties as "damages" under the FCA would make the "exclusive jurisdiction" Congress enacted in the specific and comprehensive customs legal regime a "virtual nullity":

> Even accepting the government's characterization of its FCA claim against Universal as one for "damages," the fact remains that, should it prevail in its action, at least part of the government's damages will be "customs duties," namely the antidumping tariffs it claims Universal fraudulently evaded. Allowing the government to alter this reality by incorporating "customs duties" into "damages" runs counter to the principle that a party "may not, by creatively framing [its] complaint, circumvent a congressional grant of jurisdiction ... A congressional grant of exclusive jurisdiction

cannot be so easily circumvented." Furthermore, ***if the government could bring an FCA claim in district court whenever a party fraudulently withholds customs duties, then the exclusive jurisdiction over actions to recover customs duties in all such instances would become a virtual nullity: The government could simply recast the withheld duties as damages and proceed in district court under the FCA***.

*United States v. Universal Fruits and Vegetables Corp.*, 370 F.3d 829, 835–36 (9th Cir. 2004) (emphasis supplied; internal citations and footnotes omitted).

Tellingly, in *Fritz v. United States*, 535 F.2d 1192 (9th Cir. 1976), this Court confronted a claim for overpayment of customs duties brought under the general Tucker Act, 28 U.S.C. § 1346, in the district court. This Court acknowledged that "[t]here is no question but that Fritz's claim for a refund of his excess customs payment falls within the literal language of this statute." *Id.* at 1193. Nonetheless, this Court determined that "[t]he broad provisions of the Tucker Act must be construed in conjunction with 28 U.S.C. § 1582(a)," which vested exclusive jurisdiction over such customs matters with the Customs Court. *Id.* This Court resolved the conflict in favor of the Customs Court, noting that in so doing it was following precedent: "***Repeatedly, the courts of this and other circuits have held that the jurisdiction of the Customs Court is***

-14-

*exclusive and that, notwithstanding the broad, all-encompassing language of statutes such as 28 U.S.C. § 1346(a)(2), the district courts have no jurisdiction over matters which 28 U.S.C. § 1582(a) confides exclusively to the Customs Court*." *Id.* at 1194 (emphasis supplied). That reasoning squarely applies in this case to Island's efforts to collect antidumping duties as damages through the FCA.

## CONCLUSION

The authorities cited in the briefing to date all point to the same result: the judgment cannot stand. The applicable version of § 351.225 (2018) provides that a clarified order will *not* apply to any entries made before the (k)(2) scope inquiry. Thus, there is no obligation to ground an action under the FCA, especially given that the relevant entries have been liquidated. Moreover, the logical extension of this Court's holding in *Universal Fruits and Vegetables Corp.* instructs that this type of claim exists, if at all, only within the exclusive jurisdiction of the CIT. Finally, the FCA cannot be used to evade the specific customs legal regime established by Congress and the "final and conclusive" nature of liquidation by overriding the specific limitations enunciated in Title 19. The specific and comprehensive customs legal regime must prevail.

Date: June 12, 2023   Respectfully submitted,

<u>s/ *Joseph H. Lang, Jr.*</u>
Joseph H. Lang, Jr.
CARLTON FIELDS, P.A.
4221 W. Boy Scout Boulevard
Suite 1000
Tampa, Florida 33607
Telephone: (813) 229-4253
Facsimile: (813) 229-4133
jlang@carltonfields.com

Michael L. Yaeger
CARLTON FIELDS, P.A.
405 Lexington Avenue, 36th Floor
New York, New York 10174
Telephone: (212) 785-2577
Facsimile: (212) 785-5203
myaeger@carltonfields.com

*Attorneys for Appellant*
*Sigma Corporation*

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
## FORM 8.  CERTIFICATE OF COMPLIANCE FOR BRIEFS

**9th Cir. Case Number**    22-55063

I am the attorney or self-represented party.

**This brief contains 3,164 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[X] complies with the length limit designated by court order dated May 26, 2023.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** s/ *Joseph H. Lang, Jr.*　　**Date:** June 12, 2023

-17-

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: June 12, 2023

CARLTON FIELDS, P.A.

s/ *Joseph H. Lang, Jr.*
Joseph H. Lang, Jr.

*Attorneys for Appellant*
*Sigma Corporation*