# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

ISLAND INDUSTRIES, INC., Relator,
Plaintiff-Appellee,

UNITED STATES OF AMERICA EX REL. ISLAND INDUSTRIES, INC.,
Plaintiff,

v.

SIGMA CORPORATION,
Defendant-Appellant,

VANDEWATER INTERNATIONAL, INC.; NEIL REUBENS; ANVIL
INTERNATIONAL, LLC; SMITH COOPER INTERNATIONAL; ALLIED RUBBER &
GASKET COMPANY,
Defendants.

On Appeal from the United States District Court
for the Central District of California

## SUPPLEMENTAL BRIEF FOR THE UNITED STATES OF AMERICA AS
## AMICUS CURIAE SUPPORTING APPELLEE AND AFFIRMANCE

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney General*

MICHAEL S. RAAB
CHARLES W. SCARBOROUGH
ANNA O. MOHAN
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7533*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue, NW*
  *Washington, DC 20530*
  *(202) 514-3159*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY .................................................................................1

ARGUMENT ................................................................................................................2

The Administrative Enforcement Scheme Established Under 19 U.S.C. § 1592
    Does Not Preclude FCA Actions Based on the Fraudulent Evasion of
    Antidumping Duties .................................................................................................2

CONCLUSION ............................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases:**                                                           **Page(s)**

*Akiak Native Cmty v. U.S. EPA,*
625 F.3d 1162 (9th Cir. 2010) ........................................................ 7

*American Textile Mfrs. Inst., Inc. v. The Limited, Inc.,*
190 F.3d 729 (6th Cir. 1999) ......................................................... 4

*Andrus v. Glover Constr. Co.,*
446 U.S. 608 (1980) .................................................................... 6

*BNSF Ry. v. Clark County,*
11 F.4th 961 (9th Cir. 2021) ......................................................... 4

*Brooks v. United States,*
64 F.3d 251 (7th Cir. 1995) ........................................................... 8

*City of Rancho Palos Verdes v. Abrams,*
544 U.S. 113 (2005) .................................................................... 9

*Cook County v. United States ex rel. Chandler,*
538 U.S. 119 (2003) .................................................................... 6

*Fritz v. United States,*
535 F.2d 1192 (9th Cir. 1976) ...................................................... 13

*Health & Hosp. Corp. of Marion Cty. v. Talevski,*
599 U.S. __, 2023 WL 3872515 (2023) ........................................... 9

*Hughes v. United States,*
899 F.2d 1495 (6th Cir.), *cert. denied,*
498 U.S. 980 (1990) .................................................................... 7

*K Mart Corp. v. Cartier, Inc.,*
485 U.S. 176 (1988) ................................................................... 12

*Middlesex Cty. Sewerage Auth. v. National Sea Clammers Ass'n,*
453 U.S. 1 (1981) ........................................................... 1, 8-9, 9

*Morton v. Mancari,*
417 U.S. 535 (1974).............................................................2-3, 10

*Nippon Miniature Bearing Corp. v. Weise,*
230 F.3d 1131 (9th Cir. 2000) ...................................................... 12

*Posadas v. National City Bank,*
296 U.S. 497 (1936)..................................................................2

*Radzanower v. Touche Ross & Co.,*
426 U.S. 148 (1976) ............................................................. 10

*Swinomish Indian Tribal Cmty. v. BNSF Ry.,*
951 F.3d 1142 (9th Cir. 2020) ........................................ 1, 2

*TRW Inc. v. Andrews,*
534 U.S. 19 (2001) ............................................................... 5

*United States v. Ahmad,*
213 F.3d 805 (4th Cir. 2000) .............................................. 8

*United States v. Batchelder,*
442 U.S. 114 (1979) ............................................................ 7

*United States v. Blue Cross & Blue Shield of Ala., Inc.,*
156 F.3d 1098 (11th Cir. 1998) .........................................12

*United States v. Borden Co.,*
308 U.S. 188 (1939)..............................................................2

*United States v. Cherry Hill Textiles, Inc.,*
112 F.3d 1550 (Fed. Cir. 1997) ....................................... 11

*United States v. Duncan,*
693 F.2d 971 (9th Cir. 1982) .............................................. 8

*United States v. General Dynamics Corp.,*
19 F.3d 770 (2d Cir. 1994) ................................................. 3

*United States v. Neifert-White Co.,*
390 U.S. 228 (1968).............................................................6

*United States v. Rose,*
570 F.2d 1358 (9th Cir. 1978) ........................................... 8

*United States v. Rule Indus. Inc.,*
878 F.2d 535 (1st Cir. 1989) .............................................. 8

*United States v. Sherman & Sons Co.,*
237 U.S. 146 (1915).............................................................12

*United States ex rel. A+ Homecare, Inc. v. Medshares Mgmt. Grp., Inc.,*
   400 F.3d 428 (6th Cir. 2005) ....................................................................12

*United States ex rel. Bahrani v. Conagra, Inc.,*
   465 F.3d 1189 (10th Cir. 2006) ................................................................. 4

*United States ex rel. Barajas v. United States,*
   258 F.3d 1004 (9th Cir. 2001) .................................................................. 5

*United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.,*
   839 F.3d 242 (3d Cir. 2016) ..................................................................... 4

*United States ex rel. Onnen v. Sioux Falls Indep. Sch. Dist. No. 49-5,*
   688 F.3d 410 (8th Cir. 2012) ................................................................ 3, 8

*United States ex rel. Roby v. Boeing Co.,*
   302 F.3d 637 (6th Cir. 2002) ...................................................................12

*United States ex rel. Simoneaux v. E.I. duPont de Nemours & Co.,*
   843 F.3d 1033 (5th Cir. 2016) ................................................................. 4

*United States ex rel. Sutton v. Double Day Office Servs.,*
   121 F.3d 531 (9th Cir. 1997) ................................................................ 3, 8

*United States ex rel. Tamanaha v. Furukawa Am., Inc.,*
   445 F. App'x 992 (9th Cir. 2011) ............................................................. 4

**Statutes:**

Enforce and Protect Act of 2015:
   19 U.S.C. § 1517 ..................................................................................... 10
   19 U.S.C. § 1517(b) ................................................................................ 10
   19 U.S.C. § 1517(c)-(d) ....................................................................... 10-11
   19 U.S.C. § 1517(h) ................................................................................ 11

False Claims Act (FCA):
   31 U.S.C. § 3729(a)(1) ........................................................................... 13
   31 U.S.C. § 3729(a)(1)(G) ........................................................................ 2
   31 U.S.C. § 3729(b)(3) ......................................................................... 2, 4
   31 U.S.C. § 3729(d) ................................................................................. 5
   31 U.S.C. § 3730(a)-(b) ........................................................................... 2
   31 U.S.C. § 3730(c)(5) .......................................................................... 5, 7
   31 U.S.C. § 3730(e)(3) .......................................................................... 5, 6

False Claims Amendments Act of 1986,
    Pub. L. No. 99-562, § 2, 100 Stat. 3153, 3153
    (codified at 31 U.S.C. § 3729(a)(1)(G)) ..................................3

Fraud Enforcement and Recovery Act of 2009,
    Pub. L. No. 111-21, § 4, 123 Stat. 1617, 1623
    (codified at 31 U.S.C. § 3729(b)(3)) ...................................4

Pub. L. No. 95-410, § 110(a), 92 Stat. 888, 893 (1978) ..................................3

18 U.S.C. § 542 ...................................................... 8

18 U.S.C. § 545 ...................................................... 8

18 U.S.C. § 1001 ..................................................... 7

19 U.S.C. § 1514 .................................................... 11

19 U.S.C. § 1514(a) ................................................. 11

19 U.S.C. § 1514(c)-(e) ............................................. 11

19 U.S.C. § 1592 ................................................ 1, 2, 14

28 U.S.C. § 1582 ............................................. 11, 12, 13

28 U.S.C. § 1582(3) .................................................. 13

**Legislative Material:**

S. Rep. No. 111-10 (2009) ...................................... 2, 3-4, 4

## INTRODUCTION AND SUMMARY

In this False Claims Act (FCA) case, the Court directed the parties and amicus the United States of America to prepare supplemental briefs on the question "whether 19 U.S.C. § 1592 provides the exclusive means for recovering antidumping duties that an importer has fraudulently evaded paying through false statements on customs forms, or whether the False Claims Act may also be used to recover such duties." Order (May 26, 2023) (per curiam) (first citing *Middlesex Cty. Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 20-21 (1981); and then citing *Swinomish Indian Tribal Cmty. v. BNSF Ry.*, 951 F.3d 1142, 1156 (9th Cir. 2020)).

An importer that knowingly evades antidumping duties may be liable under section 3729(a)(1)(G) of the FCA, regardless of whether an action would also be available under 19 U.S.C. § 1592. The FCA's text makes clear that Congress intended it to operate alongside administrative enforcement schemes as an important tool for remedying fraud against the government. Federal courts accordingly have rejected the argument that the FCA is impliedly preempted by other statutory or administrative remedies. The FCA's history, moreover, confirms that Congress intended it to apply specifically to fraudulent efforts to avoid payment of customs duties. Nothing in section 1592 or the other customs laws suggests an intent to abrogate those considered judgments.

# ARGUMENT

## THE ADMINISTRATIVE ENFORCEMENT SCHEME ESTABLISHED UNDER 19 U.S.C. § 1592 DOES NOT PRECLUDE FCA ACTIONS BASED ON THE FRAUDULENT EVASION OF ANTIDUMPING DUTIES

**A.** The reverse false claims provision of the FCA authorizes the Attorney General or a private person to "bring a civil action," 31 U.S.C. § 3730(a)-(b), against "any person" who knowingly makes a false statement to conceal, avoid, or decrease "an obligation to pay … money … to the Government," *id.* § 3729(a)(1)(G). "[O]bligation" is defined broadly as an "established duty, whether or not fixed, arising from," among other things, "statute or regulation." *Id.* § 3729(b)(3). Congress has explained that this definition encompasses not only "fixed liquidated obligations such as judgments" but also "fixed, unliquidated obligations such as tariffs on imported goods." S. Rep. No. 111-10, at 14 (2009). The FCA thus plainly applies to importers who knowingly make or use false statements to avoid paying customs duties. The question this Court has posed is whether the availability of remedies for similar misconduct under 19 U.S.C. § 1592 displaces or preempts the FCA.

The answer is no. It is settled that "[r]epeals by implication are not favored." *Swinomish Indian Tribal Cmty. v. BNSF Ry.*, 951 F.3d 1142, 1156 (9th Cir. 2020) (quoting *Posadas v. National City Bank*, 296 U.S. 497, 503 (1936)). For one statute to displace another, "[t]he intention of the legislature … 'must be clear and manifest.'" *Id.* (quoting *United States v. Borden Co.*, 308 U.S. 188, 198 (1939)). Otherwise, "it is the duty of the courts[] … to regard each as effective." *Id.* (quoting *Morton v. Mancari*, 417

U.S. 535, 551 (1974)).  Applying those principles, courts of appeals, including this

Court, have refused to find that FCA actions are impliedly precluded by the

administrative enforcement schemes established in other statutes.  *See, e.g.*, *United*

*States ex rel. Onnen v. Sioux Falls Indep. Sch. Dist. No. 49-5*, 688 F.3d 410, 414-15 (8th

Cir. 2012) ("[C]omplex regime of regulatory sanctions" in Higher Education Act did

not preclude FCA action); *United States v. General Dynamics Corp.*, 19 F.3d 770, 774-75

(2d Cir. 1994) (FCA actions may proceed where the conduct alleged would also

constitute a violation of the Anti-Kickback Act); *United States ex rel. Sutton v. Double*

*Day Office Servs.*, 121 F.3d 531, 533-35 (9th Cir. 1997) (rejecting assertion that the

Service Contract Act bars FCA liability for falsely certifying compliance with the Act's

provisions).

The same result follows here.  There is no evidence, let alone clear and

manifest evidence, that Congress intended in section 1592 to preclude FCA actions

based on knowing evasion of antidumping duties.  To the contrary, after section 1592

was enacted in its modern form, *see* Pub. L. No. 95-410, § 110(a), 92 Stat. 888, 893

(1978), Congress amended the FCA to add the reverse false claims provision at issue

here.  *See* False Claims Amendments Act of 1986, Pub. L. No. 99-562, § 2, 100 Stat.

3153, 3153 (codified at 31 U.S.C. § 3729(a)(1)(G)).  And Congress later amended the

definition of "obligation" in that provision, specifically to make clear that it covers

fraudulent efforts to conceal, avoid, or decrease "tariffs on imported goods."  S. Rep.

No. 111-10, at 14; *see* Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, § 4, 123 Stat. 1617, 1623 (codified at 31 U.S.C. § 3729(b)(3)).

Prior to those amendments, some courts had held that importers could not be liable under the FCA for submitting false entry documents to avoid customs duties because the precise amount of the duties was not fixed at the time of importation. *See American Textile Mfrs. Inst., Inc. v. The Limited, Inc.*, 190 F.3d 729, 736 (6th Cir. 1999). *But see United States ex rel. Bahrani v. Conagra, Inc.*, 465 F.3d 1189, 1201-02 (10th Cir. 2006) (amount of obligation need not be precisely determined). Congress rejected that interpretation, clarifying that "'obligation' means an established duty, whether or not fixed, arising from … statute or regulation." 31 U.S.C. § 3729(b)(3). As the accompanying Senate Report explained, Congress even considered including a reference to "customs duties" in the text of the FCA but decided it was unnecessary because "customs duties clearly fall within the new definition" of obligation. S. Rep. 111-10, at 14 n.10. Based on this history, several courts of appeals have correctly recognized that "failure to pay customs duties … can give rise to an FCA claim." *United States ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*, 843 F.3d 1033, 1039-40 (5th Cir. 2016).[1]

---

[1]*See also United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242, 254-55 (3d Cir. 2016) (same); *United States ex rel. Tamanaha v. Furukawa Am., Inc.*, 445 F. App'x 992, 993 (9th Cir. 2011) (unpublished); *cf. BNSF Ry. v. Clark County.*, 11 F.4th 961, 971-72 (9th Cir. 2021) (Indian Right of Way Act not abrogated by Interstate Commerce Act, which creates a federal scheme for regulating railroads,

*Continued on next page.*

Other provisions of the FCA support this conclusion.  Section 3730(c)(5), for example, expressly contemplates that administrative schemes might address the conduct underlying an FCA action and authorizes the government to "elect to pursue its claim through any alternate remedy available …, including any administrative proceeding to determine a civil money penalty."  31 U.S.C. § 3730(c)(5); *see United States ex rel. Barajas v. United States*, 258 F.3d 1004, 1010-11 (9th Cir. 2001) (observing that section 3730(c)(5) "places no restrictions on the alternate remedies the government might pursue").

Moreover, when Congress wanted to restrict the availability of FCA actions in particular areas, it did so explicitly.  For example, the FCA specifies an exclusion for "claims, records, or statements made under the Internal Revenue Code of 1986."  31 U.S.C. § 3729(d).  It likewise bars certain *qui tam* actions, including those "based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party."  *Id.* § 3730(e)(3).  These specified exceptions indicate Congress's ability to narrow the scope of FCA liability when it wants to do so, and its intent to so narrow FCA liability only in the specified circumstances.  *See TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001) ("Where Congress explicitly enumerates certain exceptions to a general prohibition,

_____

because Right of Way Act contained language about tribal rights to grant rights-of-way and had been applied to railroads for decades), *cited at* Sigma Second Suppl. Br. 12.

additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." (quoting *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-17 (1980)). Otherwise, as the capacious language of the statute indicates, Congress intended in the FCA "to reach all types of fraud, without qualification, that might result in financial loss to the Government." *Cook County v. United States ex rel. Chandler*, 538 U.S. 119, 129 (2003) (quoting *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968)).

**B.** Sigma does not address the text or history of the FCA. Instead, Sigma argues that the FCA's general anti-fraud provisions are irreconcilable with, and so necessarily displaced by, section 1592's more specific customs-law enforcement scheme. *See* Sigma Second Suppl. Br. 5-15.

The FCA and the customs-law enforcement schemes, however, are plainly capable of co-existence. Indeed, as explained, the FCA provides explicit instructions on how to harmonize its provisions with other administrative schemes. *See supra* p. 5. When the government already has initiated an action under another enforcement scheme, like section 1592, a private person cannot then pursue an FCA action based on the same allegations or transactions. *See* 31 U.S.C. § 3730(e)(3) ("In no event may a person bring an action under subsection (b) which is based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party."). If the private person initiates the FCA action first, the government can elect to pursue its claim through the FCA, or through an administrative proceeding under section 1592, which

may constitute an alternative remedy. *See id.* § 3730(c)(5). But when, as here, the government has never initiated any other proceeding based on the same conduct and a private person initiates an FCA action in which the government declines to intervene, nothing precludes the private person from pursuing the FCA action to a judgment. The FCA, in other words, is the more specific statute when it comes to determining how to navigate these parallel enforcement mechanisms. *See Akiak Native Cmty v. U.S. EPA*, 625 F.3d 1162, 1173 (9th Cir. 2010) (concluding that the Clean Water Act, despite being a statute of general application, was more specific for purposes of a particular process because it provided explicit instructions governing that process), *cited at* Sigma Second Suppl. Br. 7-8.

There is nothing anomalous about Congress's decision to offer the government a choice between different remedial mechanisms. It is well-established that when a defendant's fraudulent conduct violates several statutes, the government can take legal action under any of those laws. *Cf. United States v. Batchelder*, 442 U.S. 114, 125 (1979) (prosecutors have discretion to "proceed under" or "charge under" various statutes based on the same conduct). For example, in the criminal context, a defendant who makes false statements to the Department of Labor may be criminally prosecuted under the Labor-Management Reporting and Disclosure Act of 1959, which has a particular anti-fraud provision, or under the more general criminal catch-all false statements statute, 18 U.S.C. § 1001. *See Hughes v. United States*, 899 F.2d 1495, 1499 (6th Cir.), *cert. denied*, 498 U.S. 980 (1990). And in the customs-fraud context in

particular, the government has pursued civil forfeiture remedies under 18 U.S.C.

§ 545, *see United States v. Ahmad*, 213 F.3d 805, 809-10 (4th Cir. 2000), as well as

criminal penalties under 18 U.S.C. § 542 and the general false statements statute, *see*

*United States v. Rose*, 570 F.2d 1358, 1359 (9th Cir. 1978); *United States v. Duncan*, 693

F.2d 971, 975 (9th Cir. 1982).  It is thus unsurprising that in the FCA context, too,

courts routinely permit FCA actions to proceed even when an enforcement

mechanism is also available under another statute.  *See, e.g., Onnen*, 688 F.3d at 415

("Congress intended to allow the government to choose among a variety of remedies,

both statutory and administrative, to combat fraud." (quotation marks omitted));

*United States v. Rule Indus. Inc.*, 878 F.2d 535, 536 (1st Cir. 1989) (action could have

been brought under Buy American Act); *Brooks v. United States*, 64 F.3d 251, 253-54

(7th Cir. 1995) (per curiam) (affirming both FCA judgment and imposition of

administrative penalties under Department of Agriculture regulations).[2]

For similar reasons, the analysis here is fundamentally different from the

analysis in *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1

---

[2] Contrary to Sigma's suggestion (Second Suppl. Br. 5-6), an administrative enforcement scheme does not preclude an FCA action simply because it may afford different recoveries.  Parallel enforcement mechanisms frequently authorize remedies distinct from the FCA, and courts nonetheless have allowed those actions to proceed. *See, e.g., Onnen*, 688 F.3d at 414 (FCA action not precluded despite the fact that the Higher Education Act made "comprehensive administrative remedies and sanctions available to the government"); *Sutton*, 121 F.3d at 534-35 (emphasizing different recoveries under FCA and Service Contract Act as a reason why FCA action was not precluded).

(1981). *Contra* Sigma Second Suppl. Br. 9. There, the Court held that Congress "intended to supplant any remedy that otherwise would be available under § 1983" when it created a comprehensive scheme for the enforcement of two environmental laws. *Middlesex*, 453 U.S. at 19-21. Section 1983, unlike the FCA, does not create a freestanding cause of action for remedying fraud perpetrated against the government. Instead, section 1983 establishes a private remedy "to vindicate federal individual rights" that are "'secured by'" other laws. *Health & Hosp. Corp. of Marion Cty. v. Talevski*, 599 U.S. __, 2023 WL 3872515, at *11 n.13 (2023) (quotation marks omitted). Because section 1983 "merely provides a civil cause of action to remedy some otherwise defined" individual right, the Supreme Court has explained that the canon against implied repeal is inapplicable; the question is only whether "the rights created by a later statute 'may be asserted within the *remedial* framework' of the earlier one." *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 120 n.2 (2005) (quotation marks omitted). In any event, even in the section 1983 context, the Court recently emphasized that the "comprehensiveness" of an administrative enforcement mechanism is not sufficient to find preclusion. *Talevski*, 2023 WL 3872515, at *12. Section "1983 can play its textually prescribed role as a vehicle for enforcing [individual] rights, even alongside a detailed enforcement regime that also protects those interests, so long as § 1983 enforcement is not "'incompatible'" with Congress's handiwork." *Id.*

The other Supreme Court cases Sigma cites (Second Suppl. Br. 6-8) are likewise inapposite. In each of those cases, the Court construed a specific statutory rule as a limited exception to a more general rule to avoid nullifying the specific rule. In *Radzanower v. Touche Ross & Co.*, 426 U.S. 148 (1976), for example, the National Bank Act mandated that all suits against national banks be filed in the district where the bank was established, while the Securities Exchange Act permitted the filing of a suit in any district where the violation occurred or where the bank did business. *Id.* at 152-53. And in *Morton v. Mancari*, the Indian Reorganization Act accorded preferential treatment to Indians in Bureau of Indian Affairs hiring, while the Equal Employment Opportunity Act prohibited discrimination on the basis of race in federal employment. 417 U.S. at 544-47. Here, by contrast, the FCA's provisions do not nullify section 1592; the two enforcement schemes serve as complementary mechanisms for combating fraud against the government. *See supra* pp. 6-8.

Sigma's efforts to manufacture a conflict with other provisions of the customs laws are similarly unavailing. The Enforce and Protect Act of 2015 (EAPA) (cited at Sigma Second Suppl. Br. 6) only underscores that Congress intended to preserve the FCA as a tool for combatting fraud in the customs context. That statute, codified at 19 U.S.C. § 1517, gives U.S. Customs and Border Protection (CBP) additional tools to investigate evasion of antidumping and countervailing duties. *See* 19 U.S.C. § 1517(b) (authorizing CBP to investigate allegations by interested parties or other government agencies that an importer is evading antidumping or countervailing duties); *see id.*

§ 1517(c)-(d) (authorizing CBP to determine that evasion has occurred and pursue enforcement mechanisms). Congress explicitly stated, however, that the use of these additional tools under EAPA does not "preclude any individual or entity from proceeding, or otherwise affect or limit the authority of any individual or entity to proceed, with any civil, criminal, or administrative investigation or proceeding pursuant to any other provision of Federal or State law." *Id.* § 1517(h). Congress thus made clear that it did not intend to limit the availability of other existing mechanisms for enforcing against evasion of antidumping duties.

Nor do the protest procedures in 19 U.S.C. § 1514 or the grant of jurisdiction to the Court of International Trade (CIT) in 28 U.S.C. § 1582 impact the availability of an FCA action. *Contra* Sigma Second Suppl. Br. 2-3, 4-5, 13-15.

Section 1514 establishes a process that importers must follow to challenge CBP decisions related to entry, liquidation, or reliquidation of merchandise that are adverse to the importer, *see* 19 U.S.C. § 1514(c)-(e), and provides that unless the importer files a protest "in accordance with" those procedures, any CBP decision is "final and conclusive upon all persons (including the United States and any officer thereof)." *Id.* § 1514(a). That Congress imposed finality on the administrative process to provide importers with a definitive time period to challenge the government's duty assessment is not clear and manifest evidence that Congress intended to limit the government's ability to prosecute fraud. *Cf. United States v. Cherry Hill Textiles, Inc.*, 112 F.3d 1550, 1554 (Fed. Cir. 1997) (explaining that "an importer who is subjected to a reliquidation

11

based on a charge of fraud is not relegated to the protest and appeal mechanism" because "a charge of fraud must be proved in court, and not simply through the administrative process" (citing *United States v. Sherman & Sons Co.*, 237 U.S. 146, 157, 158 (1915)). Indeed, courts have declined to hold that rules that facilitate the routine collection of payments via "administrative mechanism[s]" limit the "remedial mechanism for fraud" established in the FCA. *United States ex rel. A+ Homecare, Inc. v. Medshares Mgmt. Grp., Inc.*, 400 F.3d 428, 456 (6th Cir. 2005) (FCA recovery not limited by Medicare Act's administrative procedures for accounting for underpayments); *cf. United States ex rel. Roby v. Boeing Co.*, 302 F.3d 637, 641-46 (6th Cir. 2002) (FCA recovery not limited by regulatory cap on contract damages); *United States v. Blue Cross & Blue Shield of Ala., Inc.*, 156 F.3d 1098, 1105-06 (11th Cir. 1998) (FCA action not affected by relator's inability to proceed under administrative framework established by the Medicare Act).

As to the jurisdictional grant in 28 U.S.C. § 1582, the government explained in its first supplemental brief (at 4-7) that Congress deliberately rejected a categorical approach that would have assigned all customs-related issues to the CIT, choosing instead to adopt a scheme that "delineat[ed] precisely the particular customs-related matters over which the [CIT] would have exclusive jurisdiction." *K Mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 188 (1988); *see Nippon Miniature Bearing Corp. v. Weise*, 230 F.3d 1131, 1138 (9th Cir. 2000). One such matter is an action arising out of an import transaction that is "commenced by the United States[] … to recover customs duties."

28 U.S.C. § 1582(3). A customs-related FCA action, however, does not seek to recover customs duties; it seeks to recover statutory damages and penalties under the FCA based upon the defendant's fraud, *see* 31 U.S.C. § 3729(a)(1). And, at the very least, section 1582 does not apply where, as here, a relator, not the United States, commences the action. *See* U.S. First Suppl. Br. 8-15. Sigma's reliance on *Fritz v. United States*, 535 F.2d 1192 (9th Cir. 1976), *see* Sigma Second Suppl. Br. 14-15, does not change that analysis—that case stands only for the proposition that an action is under the CIT's exclusive jurisdiction when it falls within the plain terms of 28 U.S.C. § 1582, which this action does not.

**CONCLUSION**

This Court should hold that an action is available under the FCA when an importer fraudulently evades antidumping duties, regardless of whether an action would also be available under 19 U.S.C. § 1592.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney*
*General*

MICHAEL S. RAAB
CHARLES W. SCARBOROUGH
 /s/ Anna O. Mohan
ANNA O. MOHAN
*Attorneys, Appellate Staff*
*Civil Division, Room 7533*
*U.S. Department of Justice*
*950 Pennsylvania Avenue, NW*
*Washington, DC 20530*
*(202) 514-3159*
*anna.mohan@usdoj.gov*

June 2023

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of this Court's May 26, 2023 Order because it does not exceed 15 pages in length. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Anna O. Mohan*
ANNA O. MOHAN

**CERTIFICATE OF SERVICE**

I hereby certify that on June 26, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

*s/ Anna O. Mohan*
ANNA O. MOHAN