No. 22-55063

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ISLAND INDUSTRIES, INC., Relator,
Plaintiff-Appellee,

UNITED STATES OF AMERICA ex rel. ISLAND INDUSTRIES, INC.,
Plaintiff,

v.

SIGMA CORPORATION,
Defendant-Appellant,

VANDEWATER INTERNATIONAL, INC.; NEIL RUEBENS; ANVIL INTERNATIONAL, LLC; SMITH COOPER INTERNATIONAL; ALLIED RUBBER & GASKET COMPANY,
Defendants.

Appeal from the United States District Court for the Central District of California
No. 2:17-CV-04393-RGK-KS (Hon. R. Gary Klausner)

## AMICUS CURIAE BRIEF OF THE ANTI-FRAUD COALITION SUPPORTING APPELLEE

Jacklyn DeMar
THE ANTI-FRAUD COALITION
1220 19th Street, NW, Suite 501
Washington, DC 20036
Tel: (202) 296-4826
jdemar@taf.org

Jonathan K. Tycko
Jaclyn S. Tayabji
TYCKO & ZAVAREEI LLP
2000 Pennsylvania Ave NW, Suite 1010
Washington, DC 20006
Tel: (202) 973-0900
jtycko@tzlegal.com
jtayabji@tzlegal.com

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, The Anti-Fraud Coalition ("TAF Coalition") states that it is a Delaware non-profit corporation that has 501(c)(3) tax status. It has no parent corporation and no stock owned by a publicly owned company. TAF Coalition represents no parties in this matter and has no pecuniary interest in its outcome. However, TAF Coalition has an institutional interest in the effectiveness and correct interpretation of the federal False Claims Act.

## TABLE OF CONTENTS

INTEREST OF AMICUS CURIAE ................................................................................ 1

SUMMARY OF THE ARGUMENT ............................................................................ 1

ARGUMENT ....................................................................................................................... 2

    1.    The FCA Reaches Customs Fraud And This Remedy is Not Incompatible with Customs Laws ................................................................ 2

    2.    The FCA Serves an Important Function of Thwarting Customs Fraud .. 4

        a.    Antidumping Duty Evasion Threatens the U.S. Economy ............. 4

        b.    The FCA Fills a Critical Enforcement Gap by Incentivizing Whistleblowers to Report Customs Fraud ......................................... 5

        c.    The Ninth Circuit's Interpretation of the FCA Has an Especially Significant Impact on Anti-Customs Fraud Enforcement in the U.S. ............................................................................................................ 7

CONCLUSION .................................................................................................................. 8

# TABLE OF AUTHORITIES

**Cases**

*Am. Textile Mfrs. Inst., Inc. v. Limited, Inc.*,
  190 F.3d 729 (6th Cir. 1999) ..................................................................................3

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) ............................................................................................2

*Morton v. Mancari*,
  417 U.S. 535 (1974) ................................................................................................3

*Swinomish Indian Tribal Cmty. v. BNSF Ry. Co.*,
  951 F.3d 1142 (9th Cir. 2020) ............................................................................ 2, 4

*U.S. ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*,
  839 F.3d 242 (3d Cir. 2016) ...................................................................................6

*U.S. ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*,
  608 F.3d 871 (D.C. Cir. 2010) ................................................................................3

*U.S. ex rel. Onnen v. Sioux Falls Indep. Sch. Dist.*,
  688 F.3d 410 (8th Cir. 2012) ..................................................................................3

**Statutes**

19 U.S.C. § 1592 ...............................................................................................*passim*

31 U.S.C. § 3729(a)(1)(G) ...................................................................................... 3

31 U.S.C. § 3729(b)(3) ............................................................................................ 3

**Legislative History**

S. Rep. 111-10 (2009) ............................................................................................. 3

S. Rep. No. 99-345 (1986) ...................................................................................... 5

**Other Authorities**

U.S. Att'y's Off., E. Dist. of Pa., *Multinational Industrial Engineering Company to Pay $22 Million to Settle False Claims Act Allegations of Evading Customs Duties* (Sept. 25, 2020), https://www.justice.gov/usao-edpa/pr/multinational-industrial-engineering-company-pay-22-million-settle-false-claims-act ............................................... 7

U.S. Customs and Border Prot., *Antidumping and Countervailing Duty Enforcement Actions and Compliance Initiatives: FY 2019* (Nov. 13, 2020), https://www.dhs.gov/sites/default/files/publications/cbp_-_antidumping_and_countervailing_duty_enforcement_actions_-_fy19.pdf ............... 4

iii

U.S. Customs and Border Prot., *Antidumping and Countervailing Duty Enforcement Actions and Compliance Initiatives: FY 2020* (Aug. 11, 2021), https://www.dhs.gov/sites/default/files/2021-12/antidumping_and_countervailing_duty_enforcement.pdf ........................................4

U.S. Customs and Border Prot., *Priority Trade Issue: Antidumping and Countervailing Duties*, https://www.cbp.gov/trade/priority-issues/adcvd (last modified Apr. 5, 2023) ........................................................................................................................4

U.S. Dep't of Just., *Bassett Mirror Company Agrees to Pay $10.5 Million to Settle False Claims Act Allegations Relating to Evaded Customs Duties* (Jan. 16, 2018), https://www.justice.gov/opa/pr/bassett-mirror-company-agrees-pay-105-million-settle-false-claims-act-allegations-relating ..............................................................6

U.S. Dep't of Just., *California-Based Z Gallerie LLC Agrees to Pay $15 Million to Settle False Claims Act Suit Alleging Evaded Customs Duties* (Apr. 27, 2016), https://www.justice.gov/opa/pr/california-based-z-gallerie-llc-agrees-pay-15-million-settle-false-claims-act-suit-alleging .................................................................. 6, 7

U.S. Dep't of Just., *Japanese-Based Toyo Ink and Affiliates in New Jersey and Illinois Settle False Claims Allegation for $45 Million* (Dec. 17, 2012), https://www.justice.gov/opa/pr/japanese-based-toyo-ink-and-affiliates-new-jersey-and-illinois-settle-false-claims-allegation ..............................................................6

U.S. Dep't of Transp., *2023 Port Performance Freight Statistics Program: Annual Report to Congress*, *available at* https://rosap.ntl.bts.gov/view/dot/65990 .....................................8

Pursuant to F.R.A.P 29, TAF Coalition submits this brief in support of Appellee Island Industries. Appellee consents and Appellant does not consent to this filing.[1]

## INTEREST OF AMICUS CURIAE

TAF Coalition is a non-profit public interest organization dedicated to combating fraud against the Government and protecting public resources through public-private partnerships. TAF Coalition is committed to preserving effective anti-fraud legislation. The organization has worked to educate the public and the legal community about the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, and provided testimony to Congress about ways to improve the FCA. It regularly participates in litigation as *amicus curiae*. TAF Coalition is supported by *qui tam* relators and their counsel, by membership dues and fees, and by private donations. TAF Coalition is the 501(c)(3) arm of Taxpayers Against Fraud, which was founded in 1986.

## SUMMARY OF THE ARGUMENT

The United States is one of the world's largest importers. With hundreds of millions of dollars at stake ever year, the importance of the Government's ability to detect fraud and recoup fraudulently evaded customs duties cannot be overstated.

This Court's May 26, 2023, Order asks whether 19 U.S.C. § 1592 is "the exclusive means for recovering antidumping duties that an importer has fraudulently evaded

---

[1] No party's counsel authored this brief in whole or in part. No person other than amicus and its counsel contributed any money intended to fund preparing or submitting this brief.

1

paying through false statements on customs forms." It is not. The FCA is a complementary enforcement mechanism when an importer knowingly defrauds the Government by filing a false statement to evade duties, including antidumping duties.

*First*, in 2009 Congress amended the FCA to expand liability under the so-called "reverse false claims" provision, and did so with the explicit, stated intent of assuring that knowing evasion of customs duties was covered by the statute.

*Second*, the FCA serves an important function to thwart customs fraud and fills a critical gap in anti-fraud enforcement efforts by incentivizing whistleblowers to come forward with information about fraud. The country will lose significant revenue if the FCA is no longer an available customs enforcement mechanism, and for the Ninth Circuit to eliminate this mechanism would be particularly harmful given how much of the country's importing activity takes place through ports located within this Circuit.

## ARGUMENT

1. <u>**The FCA Reaches Customs Fraud And This Remedy is Not Incompatible with Customs Laws**</u>

"When confronted with two Acts of Congress allegedly touching on the same topic, this Court is not at 'liberty to pick and choose among congressional enactments' and must instead strive 'to give effect to both.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018) (quoting *Morton v. Mancari*, 417 U.S. 535, 551 (1974)); *see also Swinomish Indian Tribal Cmty. v. BNSF Ry. Co.*, 951 F.3d 1142, 1156 (9th Cir. 2020). Here, the FCA, extends broadly to all efforts to defraud the Government, including by avoiding an

obligation to pay the Government. 31 U.S.C. § 3729(a)(1)(G). An obligation includes any "established duty, whether or not fixed, arising . . . from a fee-based or similar relationship, [or] from statute or regulation." 31 U.S.C. § 3729(b)(3). Section 1592 of title 19 provides a remedy for false statements regarding imports that is not dependent upon the Government having been deprived of any duties. Those remedies are not incompatible. Indeed, in many contexts the FCA overlaps with a statutory scheme concerning a specific subject matter. *See, e.g.*, *U.S. ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 608 F.3d 871, 886 (D.C. Cir. 2010) (Foreign Assistance Act not incompatible with FCA); *U.S. ex rel. Onnen v. Sioux Falls Indep. Sch. Dist.*, 688 F.3d 410, 415 (8th Cir. 2012) (education funding scheme does not preclude FCA enforcement).

Moreover, here Congress clearly intended for the FCA to co-exist alongside 19 U.S.C. § 1592 as a remedy against customs fraud. In 2009, Congress enacted the Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, 123 Stat. 1617 (2009). The Senate Report demonstrates the amendment to the FCA was meant to reject jurisprudence that made it more difficult for relators or the Government to use the FCA to recover evaded customs duties. *See* S. Rep. 111-10, at 14 n.10 (2009) (discussing *Am. Textile Mfrs. Inst., Inc. v. Limited, Inc.*, 190 F.3d 729 (6th Cir. 1999), and making clear the Committee's understanding that the case was wrongly decided). When considering whether to explicitly reference customs duties as an "obligation" giving rise to FCA liability, the Committee determined it was unnecessary because the proposed amendment already covered failure to pay customs duties. S. Rep. 111-10, at 14 n.10

3

("[C]ustoms duties clearly fall within the new definition of the term 'obligation' absent an express reference and any such specific language would be unnecessary.").

The legislative history makes clear that Congress intended the FCA to reach knowing customs duty evasion. Both the FCA and 19 U.S.C. § 1592 should be given effect as complementary remedies. *See Swinomish Indian Tribal Cmty.*, 951 F.3d at 1156.

## 2. The FCA Serves an Important Function of Thwarting Customs Fraud

### a. Antidumping Duty Evasion Threatens the U.S. Economy

The U.S. imposes antidumping duties to "level the playing field for U.S. companies injured by . . . unfair trade practices."[2] But the Government can only achieve this specific goal to the extent the regulatory scheme is enforced. The Government has long recognized that antidumping duty enforcement constitutes a "high-risk area[] threatening the U.S. economy and the health and safety of the American people."[3]

The harm from antidumping duty evasion has grown tremendously in recent years. U.S. Customs and Border Protection ("CBP") identified $20.4 million in antidumping and countervailing duties owed to the Government in 2019.[4] However, in

---

[2] U.S. Customs and Border Prot., *Priority Trade Issue: Antidumping and Countervailing Duties*, https://www.cbp.gov/trade/priority-issues/adcvd (last modified Apr. 5, 2023).

[3] *See* U.S. Customs and Border Prot., *Antidumping and Countervailing Duty Enforcement Actions and Compliance Initiatives: FY 2020* (Aug. 11, 2021), at 2, https://www.dhs.gov/sites/default/files/2021-12/antidumping_and_countervailing_duty_enforcement.pdf.

[4] *See* U.S. Customs and Border Prot., *Antidumping and Countervailing Duty Enforcement Actions and Compliance Initiatives: FY 2019* (Nov. 13, 2020), at 2,

2021, just two years later, CBP identified over *$280 million* in antidumping and countervailing duties owed to the Government in 2020 and the first quarter of 2021.[5]

Hundreds of millions of dollars are at stake every year when importers fraudulently evade antidumping duties, underscoring the importance of the enforcement mechanisms designed to detect and thwart that fraud.

### b. **The FCA Fills a Critical Enforcement Gap by Incentivizing Whistleblowers to Report Customs Fraud**

The FCA is meant to "encourage any individual knowing of Government fraud to bring that information forward," in recognition that "only a coordinated effort of both the Government and the citizenry will decrease this wave of defrauding public funds." S. Rep. No. 99-345, at 2 (1986).

The Third Circuit, applying the 2009 FCA amendments to custom duties, recognized that this purpose is paramount in the context of the country's enormous trade volume. The Government is resource-constrained and cannot detect every instance of fraud at the border:

> [T]he possibility of reverse false claims liability in such circumstances makes sense in the context of the larger import/export regulatory scheme created by Congress. Because of the government's inability to inspect every shipment entering the United States, an importer may have an

---

https://www.dhs.gov/sites/default/files/publications/cbp_-_antidumping_and_countervailing_duty_enforcement_actions_-_fy19.pdf.

[5] *See* U.S. Customs and Border Prot., *Antidumping and Countervailing Duty Enforcement Actions and Compliance Initiatives: FY 2020* (Aug. 11, 2021), at 3, https://www.dhs.gov/sites/default/files/2021-12/antidumping_and_countervailing_duty_enforcement.pdf.

incentive to decline to mention that its goods are mismarked on the assumption that mismarking will not be discovered.

*U.S. ex rel. Customs Fraud Investigs., LLC. v. Victaulic Co.*, 839 F.3d 242, 255 (3d Cir. 2016).

Several large customs fraud settlements under the FCA have been the direct result of *qui tam* relators alerting the Government to evasion of antidumping duties:

- **U.S. ex rel. Dickson v. Toyo Inc. Mfr. Co., Ltd. et al., No. 09-CV-438 (W.D.N.C.):** Japan-based companies and affiliated U.S. entities agreed to pay $45 million to resolve allegations that they knowingly failed to pay antidumping and countervailing duties on printing inks by misrepresented the country of origin on documents presented to CBP.[6]

- **U.S. ex rel. Wells v. Bassett Mirror Co. et al., No. 4:13-CV-000165 (S.D. Ga.):** A home furnishings importer and U.S. furniture retailer collectively agreed to pay $25.5 million to resolve allegations that they misclassified or conspired to misclassify wooden bedroom furniture imported from the People's Republic of China as non-bedroom furniture to avoid paying a 216% antidumping duty.[7]

---

[6] *See* U.S. Dep't of Just., *Japanese-Based Toyo Ink and Affiliates in New Jersey and Illinois Settle False Claims Allegation for $45 Million* (Dec. 17, 2012), https://www.justice.gov/opa/pr/japanese-based-toyo-ink-and-affiliates-new-jersey-and-illinois-settle-false-claims-allegation.

[7] *See* U.S. Dep't of Just., *Bassett Mirror Company Agrees to Pay $10.5 Million to Settle False Claims Act Allegations Relating to Evaded Customs Duties* (Jan. 16, 2018), https://www.justice.gov/opa/pr/bassett-mirror-company-agrees-pay-105-million-settle-false-claims-act-allegations-relating; U.S. Dep't of Just., *California-Based Z Gallerie LLC Agrees to Pay $15 Million to Settle False Claims Act Suit Alleging Evaded Customs Duties* (Apr. 27, 2016), https://www.justice.gov/opa/pr/california-based-z-gallerie-llc-agrees-pay-15-million-settle-false-claims-act-suit-alleging.

- ***U.S. ex rel. Johnson v. Linde AG,* No. 17-cv-1012 (E.D. Pa.):** A multinational corporation headquartered in Germany and its U.S. subsidiary agreed to pay more than $22.2 million to resolve allegations that they knowingly made false statements on documents presented to CBP to avoid paying customs duties.[8]

In these and other cases, CBP officials such as Commissioner Gil Kerlikowske applaud the FCA as a complementary avenue to detect and thwart customs fraud:

> The [FCA] reinforces CBP's existing authorities and tools to collect and investigate public allegations of duty evasion improving the overall effectiveness and enforcement of CBP law enforcement actions concerning illicit trade activity, specifically in the area of antidumping and countervailing duty evasion schemes.[9]

### c. The Ninth Circuit's Interpretation of the FCA Has an Especially Significant Impact on Anti-Customs Fraud Enforcement in the U.S.

Were the Ninth Circuit to hold the FCA is not an available remedy for customs duty evasion, this would have an enormous impact on the Government's enforcement efforts, given the significance of ports within this Circuit. Los Angeles and Long Beach are the two busiest ports in the country based on the quantity of containers passing

---

[8] *See* U.S. Att'y's Off., E. Dist. of Pa., *Multinational Industrial Engineering Company to Pay $22 Million to Settle False Claims Act Allegations of Evading Customs Duties* (Sept. 25, 2020), https://www.justice.gov/usao-edpa/pr/multinational-industrial-engineering-company-pay-22-million-settle-false-claims-act.

[9] U.S. Dep't of Just., *California-Based Z Gallerie LLC Agrees to Pay $15 Million to Settle False Claims Act Suit Alleging Evaded Customs Duties* (Apr. 27, 2016), https://www.justice.gov/opa/pr/california-based-z-gallerie-llc-agrees-pay-15-million-settle-false-claims-act-suit-alleging (quoting CBP Commissioner Gil Kerlikowske).

7

through, and five of the top ten busiest ports by this measure are located within the Ninth Circuit: Los Angeles; Long Beach; Oakland; Tacoma; and Seattle.[10]

Given the likelihood that customs cases would be heard in the Ninth Circuit, that Court's interpretation of the FCA will have a particularly significant impact on the country's efforts to detect and thwart customs fraud. Accordingly, this Court should be particularly reticent about adopting a novel and unprecedented reading of the FCA that will adversely impact the Government's enforcement efforts.

## CONCLUSION

The Court should hold that 19 U.S.C. § 1592 is not the exclusive remedy to recover antidumping duties and that the FCA may also be used for this purpose.

---

[10] *See* U.S. Dep't of Transp., *2023 Port Performance Freight Statistics Program: Annual Report to Congress*, at 12, *available at* https://rosap.ntl.bts.gov/view/dot/65990.

8

Dated: June 26, 2023                                    Respectfully submitted,

/s/ *Jonathan K. Tycko*

| | |
|---|---|
| Jacklyn DeMar | Jonathan K. Tycko |
| THE ANTI-FRAUD | Jaclyn S. Tayabji |
| COALITION | TYCKO & ZAVAREEI LLP |
| 1220 19th Street, NW, Suite 501 | 2000 Pennsylvania Ave NW, |
| Washington, DC 20036 | Suite 1010 |
| (202) 296-4826 | Washington, DC 20006 |
| jdemar@taf.org | Tel: (202) 973-0900 |
| | jtycko@tzlegal.com |
| | jtayabji@tzlegal.com |

9

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 22-55063

I am the attorney or self-represented party.

**This brief contains** 2,166 **words**, including ____ words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

⦿ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  ☐ it is a joint brief submitted by separately represented parties.
  ☐ a party or parties are filing a single brief in response to multiple briefs.
  ☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated ____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Jonathan K. Tycko  **Date** 06/26/2023
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

Form 8  Rev. 12/01/22