**No. 22-55063**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ISLAND INDUSTRIES, INC., Relator,
Plaintiff-Appellee,

UNITED STATES OF AMERICA EX REL. ISLAND INDUSTRIES, INC.,
Plaintiff,

v.

SIGMA CORPORATION,
Defendant-Appellant,

VANDEWATER INTERNATIONAL, INC.; NEIL REUBENS; ANVIL INTERNATIONAL, LLC; SMITH COOPER INTERNATIONAL; ALLIED RUBBER & GASKET COMPANY,
Defendants.

On Appeal from the United States District Court
for the Central District of California

**SUPPLEMENTAL BRIEF FOR THE UNITED STATES OF AMERICA AS AMICUS CURIAE SUPPORTING APPELLEE AND AFFIRMANCE**

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney General*

MICHAEL S. RAAB
CHARLES W. SCARBOROUGH
ANNA O. MOHAN
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7533*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue, NW*
  *Washington, DC 20530*
  *(202) 514-3159*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................................1

ARGUMENT .................................................................................................................1

Sigma's Scienter Arguments Are Foreclosed by the Supreme Court's Decision
    in *SuperValu* ...................................................................................................1

CONCLUSION .............................................................................................................5

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Safeco Ins. Co. of Am. v. Burr*,
   551 U.S. 47 (2007) .................................................................................... 3

*United States v. Bourseau*,
   531 F.3d 1159 (9th Cir. 2008) ............................................................... 2, 5

*United States v. Mackby*,
   261 F.3d 821 (9th Cir. 2001) ................................................................. 2, 5

*United States ex rel. Schutte v. SuperValu Inc.*,
   143 S. Ct. 1391 (2023) ................................................................... 1, 3, 4, 5

**Statute:**

False Claims Act (FCA):
   31 U.S.C. § 3729(a)(1)(G) ........................................................................ 1
   31 U.S.C. § 3729(b)(1)(A)(i)-(iii) ............................................................. 1

**Legislative Material:**

S. Rep. No. 99-345 (1986) ............................................................................ 2

# INTRODUCTION

This Court invited the parties and the United States as amicus to file supplemental briefs on the impact of *United States ex rel. Schutte v. SuperValu Inc.*, 143 S. Ct. 1391 (2023), on this False Claims Act (FCA) case. As explained below, the Supreme Court's decision in *SuperValu* forecloses Sigma's scienter arguments.

# ARGUMENT

### SIGMA'S SCIENTER ARGUMENTS ARE FORECLOSED BY THE SUPREME COURT'S DECISION IN *SUPERVALU*

**A.** To be liable under the FCA, a person must have acted "knowingly"—that is, with "actual knowledge," "deliberate ignorance," or "reckless disregard of the truth or falsity" of its statements. 31 U.S.C. § 3729(a)(1)(G), (b)(1)(A)(i)-(iii). As explained (Island Answering Br. 66-71; U.S. Amicus Br. 19-20), there was ample evidence from which a jury could conclude that Sigma acted "knowingly" when it told U.S. Customs and Border Protection that its pipe fittings were not subject to antidumping duties. Evidence at trial revealed, for example, that Sigma described its products in customs forms as "steel couplings"— a product not covered by the antidumping order—while marketing them as "welded outlets." *See* 3-ER-425-29; 3-ER-507-08. The jury could infer from that discrepancy that Sigma was aware of the order and deliberately used terminology on its customs forms to obscure its application to the imported products.

The jury also could have found that, to the extent Sigma was unaware of the order at the time it imported the goods, *see* 4-ER-573-74, that was so only because

Sigma failed to conduct even rudimentary inquiries. An expert testified that responsible importers always search for and review potentially applicable antidumping orders. *See* 4-ER-723-25; 4-ER-727-28; 4-ER-731. And yet there were no records of Sigma conducting any such searches or consulting with customs experts. *See* 4-ER-573-76; 3-ER-491-94. At the very least, then, a jury could reasonably conclude that Sigma—aware of the risk that its products might be subject to duties—"'buried [its] head in the sand' and failed to make simple inquiries which would alert [it] that false claims [we]re being submitted." *United States v. Bourseau*, 531 F.3d 1159, 1168 (9th Cir. 2008) (quoting S. Rep. No. 99-345, at 21 (1986)) (Congress in defining "knowingly" intended to reach these ostrich-type situations); *see United States v. Mackby*, 261 F.3d 821, 828 (9th Cir. 2001) (defendant acted with at least reckless disregard where he "fail[ed] to inform" himself about requirements).

**B.** On appeal, Sigma pointed to no conflicting evidence suggesting that it believed—when it was importing its pipe fittings—that they were not subject to the antidumping order or even that the order was ambiguous. Rather, Sigma argued that the record evidence was all irrelevant because a defendant has a complete defense under the FCA if its conduct was consistent with an objectively reasonable view of the applicable requirements. *See* Sigma Opening Br. 39-43. Applying that standard, Sigma maintained that it could not have acted "knowingly" because the antidumping order is objectively ambiguous, and a reasonable person could interpret it as not applying to Sigma's pipe fittings. *See id.* at 42.

2

The Supreme Court considered—and rejected—those same arguments in *United States ex rel. Schutte v. SuperValu*. As here, the defendants in *SuperValu* argued that they could not have the requisite knowledge under the FCA because an objectively reasonable person could have interpreted the requirement they purportedly violated (a Medicare/Medicaid billing requirement) to permit their conduct. 143 S. Ct. 1391, 1398-99 (2023). The Court rejected that argument, explaining that "[t]he FCA's scienter element refers to [the defendant's] knowledge and subjective beliefs—not to what an objectively reasonable person may have known or believed." *Id.* at 1399.

Like Sigma (Opening Br. 39-42), the defendants in *SuperValu* attempted to draw support from the Supreme Court's earlier decision in *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007). The *SuperValu* Court rejected those attempts "twice over." 143 S. Ct. at 1402. First, the Court observed that "*Safeco* interpreted a different statute, the [Fair Credit Reporting Act], which had a different *mens rea* standard, '"willfully"'" and that the decision tied its interpretation to that statute's particular text. *Id.* Second, the Court explained that "*Safeco* did not purport to set forth the purely objective safe harbor that [the defendants] invoke[d]." *Id.* Instead, *Safeco* acknowledged that the "common law of recklessness *contain*[s] an objective standard because it encompasse[s] actions involving 'an unjustifiably high risk of harm that is *either* known *or* so obvious that it should be known.'" *Id.* at 1402-03 (quoting *Safeco*, 551 U.S. at 68). The *SuperValu* Court made clear that *Safeco* never suggested

3

that we should "look to legal interpretations that [defendants] did not believe or have reason to believe at the time they submitted their claims." *Id.* at 1403.

**C.** In its supplemental brief, Sigma argues that the *SuperValu* Court's reasoning is limited to cases where the defendant "had actual contemporaneous knowledge" that its claims were false. Sigma Third Suppl. Br. 3. The Court nowhere adopted that limitation. To the contrary, the Court acknowledged that the FCA "encompass[es] three mental states:" "actual knowledge," "deliberate ignorance," and "recklessness." 143 S. Ct. at 1399-1400. And the Court emphasized that each of those standards, "[o]n their face and at common law, … focus primarily on what [defendants] thought and believed." *Id.* at 1400. "[T]he term 'actual knowledge' refers to whether a person is 'aware of' information," while "the term 'deliberate ignorance' encompasses defendants who are aware of a substantial risk that their statements are false, but intentionally avoid taking steps to confirm the statement's truth or falsity," and "the term 'reckless disregard' similarly captures defendants who are conscious of a substantial and unjustifiable risk that their claims are false, but submit the claims anyway." *Id.* at 1400-01 (quotation marks omitted). In short, that an objectively reasonable person might interpret a requirement as permitting certain conduct "does not by itself preclude a finding of scienter" under any of the FCA's three mental states, which include but are not limited to "actual knowledge." *Id.* at 1402.

Sigma's efforts to rely on footnote 5 of the Court's opinion are similarly misplaced. That footnote acknowledges the possibility that a defendant might be

4

liable if he "act[s] in the face of an unjustifiably high risk of illegality that was so obvious that it should have been known," even if there is no evidence that he was subjectively aware of that risk. 143 S. Ct. at 1401 n.5. The Court did "not consider how (or whether) that objective form of 'recklessness' relates to the FCA" because it was unnecessary to decide the case. *Id.* The Court thus left intact existing FCA precedent, which holds that a defendant can be held liable under the FCA if he recklessly disregards objectively obvious facts indicating a high likelihood that his claim or statement is false. *See Bourseau*, 531 F.3d at 1167-68 (affirming liability in similar circumstances); *Mackby*, 261 F.3d at 828 (same). And Sigma cannot escape liability by maintaining that while it never even saw the antidumping order, a different defendant who *did* learn of the order could reasonably have interpreted it to permit Sigma's conduct. *See* Sigma Reply Br. 31-32. *SuperValu* forecloses that argument by establishing that "we do not look to legal interpretations that [defendants] did not believe or have reason to believe at the time they submitted their claims." 143 S. Ct. at 1403. In any event, here the jury could conclude—based on Sigma's failure to undertake any inquiry into whether its products were subject to duties and its differing description of its products in its marketing and customs forms—that Sigma was, at the very least, aware of a substantial risk that its statements were false. *See supra* pp. 1-2.

## CONCLUSION

This Court should conclude that the Supreme Court in *United States ex rel. Schutte v. SuperValu* rejected the scienter arguments Sigma advanced in this case.

5

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney*
  *General*

MICHAEL S. RAAB
CHARLES W. SCARBOROUGH
/s/ *Anna O. Mohan*
ANNA O. MOHAN
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7533*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue, NW*
  *Washington, DC 20530*
  *(202) 514-3159*
  *anna.mohan@usdoj.gov*

July 2023

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of this Court's June 9, 2023 Order because it does not exceed 5 pages in length, excluding the items exempted by Federal Rule of Appellate Procedure 32(f). This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Garamond 14-point font, a proportionally spaced typeface.

                                            *s/ Anna O. Mohan*
                                            ANNA O. MOHAN

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

*s/ Anna O. Mohan*
ANNA O. MOHAN
